UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

KIM PATRICK, and AG, a minor, by and
through his Parent and Next Friend, KIM
PATRICK,

PLAINTIFFS,

-against-

SUCCESS ACADEMY CHARTER SCHOOLS,
INC.; SUCCESS ACADEMY PROSPECT
HEIGHTS; SYDNEY SOLOMON in her
individual and official capacity as Principal of
Success Academy Prospect Heights; LAMAE
DE JONGH, in her individual and official
capacity as Managing Director of Schools
Success Academy Charter Schools; SAMUEL
COLE, in his individual and official capacity as
Board Chairperson, Success Academy Charter
Schools-NYC Board of Trustees; and
CATHERINE SHAINKER, in her individual and
official capacity as Board Member, Success
Academy Charter Schools-NYC Board of
Trustees,

DEFENDANTS.

Civil Action No.

**COMPLAINT AND
DEMAND FOR
JURY TRIAL**

---

Plaintiffs KIM PATRICK and AG, by his Parent and Next Friend KIM PATRICK

and their attorneys, for their complaint, allege as follows:

**PRELIMINARY STATEMENT**

1.     This action arises out of Defendants' continuous discrimination and

retaliation against AG, a seven-year-old student with a disability, by taking measures to

1

pressure him to leave Success Academy Prospect Heights, including subjecting him and his family to numerous illegal suspensions, repeatedly calling his parents to pick him up at school or to stay at school with him, and removing him or threatening to remove him by ambulance to the hospital emergency room ("EMS"ing) when no medical necessity existed.

2.        Because of these actions, AG has been denied educational access and services at Success Academy Prospect Heights.   AG has not received the education he is entitled to, and he continues to suffer irreparable harm to his educational and emotional development by being repeatedly suspended and illegally barred from attending school.

3.        Only three (3) months into this school year, AG has already been excluded from school for at least twenty-seven (27) days without appropriate due process. AG and his parents remain at risk as the patterns and practices summarized above and described below persist because he currently attends Success Academy Prospect Heights.

4.        In order to safeguard AG's right to attend school and receive the special education services to which he is entitled, Plaintiffs brings this action to compel Defendants to comply with the United States Constitution, the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), the Individuals with Disabilities Education Act ("IDEA"), the New York State Constitution, and the New York State Education Law.   Plaintiffs seek a preliminary and permanent injunction mandating such compliance, damages, and related relief, as well as attorneys' fees and litigation costs under 42 U.S.C. § 1988.

2

## JURISDICTION AND VENUE

5.        This Court has jurisdiction over the subject matter of this lawsuit pursuant to 28 U.S.C. § 1331 and §§ 1343(a)(3) and (4) and 1337, and 42 U.S.C. § 1983.

6.        This court has supplemental jurisdiction over state claims pursuant to 28 U.S.C. §1367.

7.        Declaratory and injunctive relief are authorized by 28 U.S.C. § 2201(a) and Rules 57 and 65 of the Federal Rules of Civil Procedure.

8.        Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## PARTIES

9.        Plaintiff AG is a seven-year-old child residing in Brooklyn, New York. AG is a child with a disability, as that term is defined in 20 U.S.C. § 1401(3) and 29 U.S.C. § 705(20). By reason of AG's disability, he requires special education and related services.

10.        Plaintiff Kim Patrick also known as Kim Richardson ("Ms. Patrick") is the parent of minor child AG and resides in Brooklyn.   Ms. Patrick was at all times mentioned herein the parent of AG and his Next Friend, in whose custody and care he resides in Brooklyn, New York.

11.        Defendant Success Academy Charter Schools, Inc. ("Success Academy") is a non-profit corporation organized under the laws of the State of Delaware. Success Academy schools are governed by one educational corporation, which provides management and administrative support to schools within its network. It manages and oversees a large network of charter schools throughout New York City. Success Academy

3

receives federal and state funding to provide educational services to the students enrolled in its schools. The principal place of business is located at 95 Pine Street, 6th Floor, New York, New York.

12.     Success Academy Prospect Heights is a charter school in the network operated by Success Academy Charter Schools, Inc. The school is located at 760 Prospect Place, Brooklyn, New York. To the extent that Success Academy Prospect Heights is a separate corporate entity, it is controlled and operated by Success Academy.

13.     Defendant Sydney Solomon is an employee and agent of Success Academy and/or Success Academy Prospect Heights. Sydney Solomon has been the Principal of Success Academy Prospect Heights during all times relevant to this complaint.

14.     Defendant LaMae de Jongh is an employee and agent of Success Academy. LaMae de Jongh has been the Managing Director of Schools of Success Academy during all times relevant to this complaint.

15.     Defendant Samuel Cole is an agent of Success Academy.   Samuel Cole has been the Board Chairperson of Schools of Success Academy during all times relevant to this complaint.

16.     Defendant Catherine Shainker is an agent of Success Academy.   Catherine Shainker has been a Board Member of Success Academy during all times relevant to this complaint.

## JURY DEMAND

17.     Plaintiffs demand trial by jury in this action on each and every one of their claims.

4

## LEGAL FRAMEWORK

### *United States Constitution*

18.    The Fourteenth Amendment to the United States Constitution protects individuals from deprivation of life, liberty or property without due process.

19.    The due process clause also protects the property interest of children in their legitimate entitlement to a public education.

20.    One of the liberties protected by the due process clause is the fundamental right of parents to make decisions concerning the care, custody and control of their children, including the right to authorize and direct the medical care given to their children.

21.    The due process clause protects the fundamental liberty interest of both parents and children not to be forcibly separated from each other, even temporarily, without due process.

22.    The Fourth Amendment to the United States Constitution is made applicable to the states by the Fourteenth Amendment and provides that persons shall not be subject to unreasonable searches and seizures.

### *Section 1983*

23.    Section 1983 establishes a private cause of action against any person who acts under color of state law to deprive individuals of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States.   42 U.S.C. §1983.

### *Rehabilitation Act*

24.    The Rehabilitation Act of 1973 prohibits discrimination on the basis of disability in programs receiving federal financial assistance. 29 U.S.C. §701 *et seq.*

5

25.     Section 504 of the Rehabilitation Act, codified at 29 U.S.C. §794, mandates that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

26.     The definition of "individual with a disability" for the purposes of Section 504 is cross-referenced to the definition found in the ADA: an individual with a disability is a person with a physical or mental impairment that substantially limits one or more major life activities of such individual; with a record of such an impairment; or who is regarded as having such an impairment. 42 U.S.C. §12102(1).

27.     34 C.F.R. § 104.33(a) requires that recipients of federal funds who operate elementary or secondary schools must "provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap."

28.     Under 34 C.F.R. § 104.33(d), a recipient "may not exclude any qualified handicapped person from a public elementary or secondary education."

29.     Under 34 C.F.R. § 104.34(a), a recipient "shall provide for the education of each qualified handicapped person in its jurisdiction with persons who are not handicapped to the maximum extent appropriate to the needs of the handicapped person. A recipient shall place a handicapped person in the regular educational environment operated by the recipient unless it is demonstrated by the recipient that the education of the person in the regular environment with the use of supplementary aids and services cannot be achieved

6

satisfactorily."

*Americans with Disabilities Act*

30.     Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12131
*et seq.*, prohibits discrimination based upon disability by public entities.

31.     Pursuant to 42 U.S.C. §12132, it is unlawful for a qualified individual with
a disability, by reason of such disability, to be excluded from participation in or denied the
benefits of the services, programs, or activities of a public entity, or subjected to
discrimination by any such entity.

32.     Disability under the ADA is defined as a physical or mental impairment that
substantially limits one or more major life activities, a record of such an impairment, or
being regarded as having such an impairment. 42 U.S.C. §12102(1).

33.     The term "qualified individual with a disability" is defined as an individual
with a disability who, with or without reasonable modifications to rules, policies, or
practices, the removal of architectural, communication, or transportation barriers, or the
provision of auxiliary aids and services, meets the essential eligibility requirements for the
receipt of services or the participation in programs or activities provided by a public
entity." 42 U.S.C. §12131(2).

34.     28 C.F.R. §35.130(b)(3) bars public entities from utilizing methods of
administration that "have the effect of subjecting qualified individuals with disabilities to
discrimination on the basis of disability."

35.     28 C.F.R. §35.130(h) prohibits public entities from imposing safety
requirements based on "mere speculation, stereotypes or generalizations about individuals

with disabilities."

### *Individuals with Disabilities Education Act*

36.      The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400 *et seq.*, governs how states and localities provide early intervention, special education, and related services to children with disabilities.

37.      IDEA defines a child with a disability as "a child (i) with intellectual disabilities, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance (referred to in this chapter as "emotional disturbance"), orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities; and (ii) who, by reason thereof, needs special education and related services." 20 U.S.C. §1401(3)(A).

38.      Under IDEA, states must make available "a free appropriate public education . . . to all children with disabilities residing in the State between the ages of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled from school." 20 U.S.C. §1412(a)(1)(A).

39.      IDEA defines "free and appropriate education" as: "special education and related services that (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with the individualized education program required under section 1414(d) of this title." 20 U.S.C. §1401(9).

8

40.     The IDEA provides due process protections for students with disabilities who are suspended for behavior that is related to their disability. 20 U.S.C. § 1415.

41.     Under 20 U.S.C. § 1415, if school personnel seek to order a disciplinary change in placement, such as a suspension, for a student with a disability for more than ten days, a team must hold a Manifestation Determination Review ("MDR") to determine whether the behavior at issue was a manifestation of the student's disability. If the behavior was such a manifestation the student may not be removed for more than ten (10) days.

42.     A school may place a student with a disability in an appropriate interim alternative educational setting for up to forty-five (45) school days, without regard to whether the behavior is a manifestation of the student's disability, when the student's behavior falls under the "Special Circumstance" provision. 20 U.S.C. § 1415(k)(1)(G); 34 C.F.R. § 300.530.

43.     The Special Circumstance provision of 20 U.S.C. §1415(k)(1)(G) is expressly limited to where a student with a disability (i) carries or possesses a weapon to or at school or a school function; (ii) knowingly possesses, uses, or sells illegal drugs while at school or at a school function; or (iii) has inflicted serious bodily injury upon another person while at school or at a school function.

44.     20 U.S.C. §1415(k)(7)(D) defines "serious bodily injury" by reference to 18 U.S.C. §1365(h)(3), which provides that the term "means bodily injury which involves – (A) a substantial risk of death; (B) extreme physical pain; (C) protracted and obvious disfigurement; or (D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty."

9

45.      A parent or local educational agency may request an impartial hearing to review a placement under 20 U.S.C. §1415(k), and may appeal the hearing decision to the State educational agency.   20 U.S.C. §§ 1415(f)(1)(A), (g)(1), (k)(3).

*New York State Constitution*

46.      Article I, Section 12 of the New York State Constitution guarantees the right of people to be free of unreasonable searches and seizures.

47.      Article XI, Section 1 of the New York State Constitution affords students of the State of New York a right to free education. This provision is interpreted to entitle students to a sound and basic education that affords an opportunity for a meaningful education.

*New York State Education Law and Regulations*

48.      The Charter School Act, New York State Education Law § 2850 *et seq.*, mandates that charter schools meet the same health and safety, civil rights, and student assessment requirements applicable to other public schools.   N.Y. Educ. Law § 2854(b).

49.      The Act specifically mandates that "nothing in this subsection shall affect the requirements of compulsory education of minors established by part one of article sixty-five of this chapter."   N.Y. Educ. Law § 2854(b).

50.      Part one of article sixty-five of the New York State Education Law, titled "Compulsory Education," comprises Sections 3201-3234, which include due process and other rights set forth therein.

51.      Section 3214 sets forth the due process rights accorded to students facing suspensions of more than five days.   Under the statute, no student may be suspended for

10

more than five days unless the school has obtained superintendent approval, and the student and parent have been afforded reasonable notice and an opportunity for a hearing. N.Y. Educ. Law § 3214(3)(c)(1).   At any such hearing, a student has the right, *inter alia*, to representation by counsel, to present and question witnesses, to maintenance of a hearing record, and to appeal the decision.  *Id.*

52.     With regard to discipline of students with disabilities, a change of placement to an IAES may be ordered by "[a] superintendent of schools, either directly or upon recommendation of a hearing officer designated to conduct a superintendent's hearing pursuant to Education Law, section 3214(3)(c)."  8 N.Y.C.R.R. § 201.7(e).

53.     Where the superintendent or designated hearing officer is considering such a change in placement, "upon a determination that the student is guilty of the alleged misconduct relating to serious bodily injury, weapons, illegal drugs or controlled substances," the superintendent of schools may order, or the hearing officer in the superintendent's hearing may recommend, such change in placement for up to 45 school days even where the manifestation team determines that the student's behavior is a manifestation of the student's disability." 8 N.Y.C.R.R. § 201.9(c)(3).

54.     The Dignity for All Students Act ("DASA"), New York Education Law §10 *et seq.,* prohibits harassment and discrimination by school employees or students against any student based on, *inter alia*, actual or perceived disability.   N.Y. Educ. Law § 12. Disability is defined by reference as a physical, mental, or medical impairment; a record of such impairment; or a condition regarded by others as such an impairment.   N.Y. Exec. Law § 292(21).

## FACTS

55.       AG is a seven-year-old boy who is enrolled as a first grade student at

Success Academy Prospect Heights. He began at Success Academy in October of the

2016-2017 school year in the first grade and was held over at the end of the school year.

56.       AG had an Individualized Education Plan ("IEP") when he began at

Success Academy.

57.       AG's IEP classifies him as other health impaired and designates him to

receive the following special education and related services: an Integrated Co Teaching

("ICT") program with speech/language therapy and counseling and an individual

paraprofessional ("para"). A Functional Behavior Assessment ("FBA") and Behavior

Intervention Plan ("BIP") had been developed and established for AG in addition to his

IEP.

58.       AG has Beta-thalassemia, below average academic performance, below

average speech and language skills, and presents with challenging behaviors as per his

current IEP.

### *2016-2017 School Year*

59.       When AG began the school year at Success Academy Prospect Heights on

October 27, 2016, he exhibited social and behavioral deficits. AG has significant difficulty

with transitions and becomes easily frustrated. AG's frustration often manifests in the form

of temper tantrums. Defendants are well aware of this because it is noted in his IEP, BIP

and FBA.

12

60.     Immediately after enrolling at Success Academy Prospect Heights, AG exhibited these behaviors in school and was suspended on multiple occasions in November 2016 based on such behavior. During these suspensions, Defendants did not provide any alternative instruction for school days AG missed. Upon information and belief, each suspension imposed during this time period lasted less than six days, and Defendants did not conduct a formal or informal hearing regarding any of these suspensions.

61.     Despite removing AG for more than ten school days between October 27 and December 20, 2016, Defendants never arranged a Manifestation Determination Review ("MDR") to ascertain if AG's behavior was a manifestation of his disability, as required by the IDEA.

62.     During this period, nearly every day when AG's parent Kim Patrick attempted to drop him off at school in the morning, she was asked by Defendants' staff to remain at school for several hours to assist her son attend school due to his behavioral deficits. The principal informed Ms. Patrick that if she was not available and AG had a behavior issue, the school would call 911.

63.     Ms. Patrick asked to have AG re-evaluated and to have an IEP meeting to review his special education needs. An IEP meeting was scheduled for December 20, 2016.

64.     The day before the IEP meeting, Defendant Solomon contacted EMS when six-year-old AG exhibited tantruming behavior but was not experiencing any medical emergency.  Defendants were familiar with these behaviors and knew that the student had never hurt himself in school before. Upon learning that EMS had been called, Ms. Patrick rushed to the school. She spoke to EMS workers and was able to prevent her child from

13

needlessly being transported to an emergency psychiatric ward.   Her son was released to her custody and missed the rest of the school day. Ms. Patrick was unable to attend work that day.

65.     On December 20, 2016, Ms. Patrick attended an IEP meeting. The IEP team agreed to an ICT program that includes a general education teacher and a special education teacher.   Speech and Language therapy ("Speech") was added to assist the student in learning how to express and articulate anxiety, stress and anger in a healthy way. Occupational Therapy ("OT") was added to assist AG with dysregulation and physical concerns. Individual counseling and group counseling were also added to assist with AG's behavior issues. The IEP continued to mandate a crisis management para.

66.     AG returned to school in January 2017 after serving a suspension for several days for an alleged incident in December 2016.   He was now placed in an ICT class.

67.     AG was again suspended from school for alleged incidents on January 24, 26, 30, and February 2, 6, and 7, 2017, due to behavioral deficits outlined in his IEP.

68.     On February 14, 2017, Defendants' staff member Torcivia called Ms. Patrick and threatened to call 911 if Ms. Patrick did not come to the school to take AG home as he was having a tantrum.   Ms. Patrick rushed to the school so her son could avoid an inappropriate and unnecessary trip to the emergency room.   Ms. Patrick was again prevented from going to work.

69.     On or about February 16, 2017, Brooklyn Legal Services was retained as counsel and represented the parent at an MDR meeting for suspensions in January and

14

early February. At this MDR meeting the team found that the behaviors that the student was suspended for were a manifestation of his disability, and determined that the student should return to school without serving any suspension days.

70.     The day after the MDR meeting, AG went to school. Defendants suspended AG again on that day, February 17, as well as February 22 and 23, 2017, for tantruming behavior. AG was not excluded from school for these suspensions.

### *February 24, 2017 Incident*

71.     On February 24, 2017, Success Academy called EMS when the student exhibited tantruming behavior.

72.     Defendants did not call Ms. Patrick until the EMS workers and police officers were at the school. Ms. Patrick was at work and asked Success Academy staff member Jeann Kubler to let her speak to the EMS staff, but Defendants never allowed Ms. Patrick to speak to AG or the EMS workers. Success Academy was asked to keep AG at school until Ms. Patrick arrived.   AG's para then called Ms. Patrick and told her that AG had been calmly sitting on the para's lap, and that the school staff took him and told the EMS workers to take him to the hospital. Although Ms. Patrick requested that her son not be transported to the hospital and informed Defendants that a family member would be there shortly, AG was transported to the emergency room.

73.     Ms. Patrick left work and arrived at Kings County Hospital, where she found her young child sitting in a chair in the emergency room with fear and terror in his eyes. Her adult son was at the hospital with him.

74.     Prior to releasing him, hospital staff examined AG and spoke to Ms. Patrick. AG was discharged the same day with no treatment or referral. Hospital records from the incident indicated that AG was experiencing childhood separation anxiety and impulse disorder.

75.     This traumatic and unnecessary incident deeply affected Ms. Patrick and AG. AG was unable to return to school that day.

76.     When AG later saw EMS responding to an incident unrelated to him, AG began to cry and tried to hide under the table because he was fearful that the EMS workers were coming to take him to the hospital.

77.     As a result of the EMS transport, Ms. Patrick received a bill from NYC Health and Hospitals Corporation for $1,860.00.

78.     In addition to EMSing AG for the alleged behavior of February 24, 2017, Defendants also sent a letter which Ms. Patrick received that evening informing her that her child had been suspended.

79.     Defendants suspended AG for the February 24, 2017 incident for forty-five (45) days. Defendants alleged that the seven-year-old student had caused serious bodily injury and extreme pain by, *inter alia*, dragging the Assistant Principal down the hall by the hair while using the other hand to hit her, yanking a lanyard around the Assistant Principal's neck, and kicking Defendant Solomon. The letter further stated that AG's behavior inflicted serious bodily injury and extreme physical pain upon the para.   In the letter, Defendants stated that because of this behavior AG would be removed to an Interim Alternative Education Setting (IAES) for forty-five (45) days.

16

80.     As with all previous suspensions, Defendants offered AG's family no notice or opportunity for a hearing to contest the charge, or any information about their due process rights.

81.     Brooklyn Legal Services filed a request for an expedited Impartial Hearing under the IDEA and Section 504 challenging Defendants' actions as illegal, and asserting the allegations against AG were false and exaggerated.

82.     In a decision dated March 29, 2017, the Impartial Hearing Officer ("IHO") found that Defendants' failure to provide Ms. Patrick with notice and an opportunity for a suspension hearing was a plain violation of due process, but that he did not have jurisdiction to order a suspension hearing in the matter.

83.     The IHO further found that, taken collectively, the allegations made by Defendants did not rise to the level of serious bodily injury as that term is defined in the law and ordered the Department of Education ("DOE"), the only respondent to the complaint, to take whatever steps were necessary to have AG immediately reinstated.

84.     The IHO ordered that the DOE provide compensatory education and make up related services for every day AG was illegally barred from school by Defendants.

85.     Success Academy is not a party to the IDEA administrative impartial hearing process and New York State Review Office appeal process.

86.     No appeal of the Impartial Hearing decision was filed.

87.     As a result of the Defendants' actions, AG missed a month of full-day instruction in his regular placement and essential Speech, OT, and counseling services.

88.      While AG was excluded from school, Success Academy only provided two hours per day of alternate education in a public library with, upon information and belief, an unlicensed teacher.

***Return to School***

89.      Per the IHO's order, the student returned to Success Academy Prospect Heights School on March 31, 2017, having missed about twenty-four (24) days of school. The school's spring break began the next day.

90.      On the first day back from the break, Monday April 10, 2017, Success Academy Prospect Heights again suspended AG from school, and suspended him on April 14, 20 and 24, 2017, for tantruming behaviors. He did not serve the suspensions at that time, as an MDR meeting had to be held to determine if the acts alleged were a manifestation of his disability.

***April 25, 2017 Incident***

91.      On April 25, 2017, while Ms. Patrick was attending an MDR meeting for the April 2017 suspensions at the DOE, Success Academy staff member Torcivia contacted her during the meeting and told Ms. Patrick that Defendants had called EMS for her son due to tantruming behaviors.

92.      The Defendants failed to contact Ms. Patrick to allow her to soothe her son prior to calling EMS, nor, upon information and belief, were any de-escalation techniques used prior to the call.

93.      Ms. Patrick ran out of the MDR meeting and went to Success Academy Prospect Heights in an attempt to avoid the EMS transport of her small child. Because the

MDR was being held far away from the school, Ms. Patrick feared she would not arrive at the school in time to prevent the transport. AG had no medical emergency and Ms. Patrick believed that Defendants called EMS to harass, scare, intimidate, and retaliate against her for enforcing her rights at the MDR meeting, and to force AG out of the school due to his disability.

94.     Ms. Patrick's counsel spoke directly to the EMS worker on her behalf by telephone and inquired as to the area of concern. The EMS worker said he would not take the student to the hospital and said he did not believe there was any legitimate reason to do so.

95.     When Ms. Patrick arrived at the school, AG was scared and confused but calm. Because of the actions of the school, Ms. Patrick had to take her child home and he missed the rest of the school day.

96.     The MDR meeting continued in Ms. Patrick's absence. The MDR team found that the alleged behavior that led to the previous suspensions was a manifestation of AG's disability. AG was therefore allowed to return to school without serving the suspensions.

97.     When Ms. Patrick arrived home with AG, she received yet another notice from Defendants that AG would be suspended for three days for the alleged behavior of April 25, 2017.

98.     AG was again suspended from school on April 26, May 9, and June 6, 2017, due to behaviors related to his disability, but he was not excluded from school for those

19

days, as another MDR meeting found that the behavior was a manifestation of his

disability.

### *2017-2018 School Year*

99.      AG returned to school for the 2017-2018 school year at Success Academy

Prospect Heights on August 16, 2017.

100.      AG was suspended on August 21, 24, and 31, 2017, due to behavioral

deficits outlined in his IEP.

101.      Within the first few weeks of school AG was suspended and excluded from

school for seven days of instruction and related services including counseling, Speech, and

OT. Defendants offered no alternative education or services.

### *September 12, 2017 Incident*

102.      On the afternoon of September 12, 2017 Defendants called AG's parents

and informed them that they had called EMS. AG's father, Gavin, arrived to find his son in

an office with school personnel, the police, and EMS workers. The EMS workers checked

AG's pulse and heart rate and then they left.

103.      Defendants' staff told Gavin that AG had engaged in dangerous behavior

and that he had hit his para and stabbed her in the eye with a pencil, and that the para

immediately left the school via EMS. Gavin expressed surprise and told Success Academy

staff, including Defendant Solomon, that he had just seen the para in the hall on his way to

the room and that the para looked fine and did not appear to be in distress or in pain.

104.      On September 13, 2017, Ms. Patrick was informed that AG was not to

return to school that day and that he was suspended because of the previous day's behavior.

105.      The letter Ms. Patrick received, dated September 13, 2017, stated that, *inter alia,* AG stabbed his para in the eye and the para was immediately transported to the hospital. The letter further stated that AG's behavior inflicted serious bodily injury and extreme physical pain upon the para. Defendants stated that because of this behavior AG should be removed to an Interim Alternative Education Setting (IAES) for twenty (20) days. The letter stated that a hearing had been scheduled to discuss the incident with the parent and determine whether the recommendation was appropriate.

106.      This was the first time AG's parents had ever been offered a hearing to determine whether a suspension was appropriate, although AG had already been suspended numerous times.

107.      On September 18, 2017, a hearing was held at Success Academy Prospect Heights.   Ms. Patrick appeared at the hearing with counsel to dispute the charges.

108.      Defendant de Jongh announced that the hearing was going to be "informal" and was only to assess if the twenty (20) day placement to the IAES was appropriate.

109.      No oaths were taken prior to testimony being offered, and no verbatim record or recording of the hearing was maintained.

110.      The para who was allegedly injured did not attend or testify at the hearing.

111.      Defendants' first witness was the teacher, Dorothy Mape, who stated that she had not seen AG stab the para in the eye, but was in the classroom at the time it allegedly happened. She did not testify to seeing the para in extreme pain or to observing any injury. She testified that the para herself called 911 via cell phone after the incident.

112.     Defendant Solomon stated that she entered the room after the alleged incident.

113.     The school offered an index card into evidence that was handwritten and stated "AG stabbed para corner of eye with pencil, pull hair and punched face and chest with two fists." The index card was not dated, made no reference to when the incident happened, and according to Defendants was signed by the para, but written by the teacher.

114.     Defendants offered no further witnesses or evidence, and presented no evidence regarding medical treatment or serious injury of any kind.

115.     AG's father Gavin testified that he saw the para in the hall at the school shortly after the alleged incident and that she appeared fine.

116.     Defendant de Jongh asked if twenty (20) days was a sufficient penalty and the teacher responded that it should be longer.

117.     On September 20, 2017, the parent and parent's counsel received the decision by Defendant de Jongh, dated September 19, 2017. It stated that "after careful consideration of the findings described in the document attached, I have determined that the IAES was appropriate. Accordingly, your scholar will remain in the IAES for a total of 20 school days."

118.     Attached to the decision was an "IAES Hearing Findings Sheet" with check boxes. The box for "Inflicted serious bodily injury upon another person:" was checked "yes." "Notes" handwritten directly below stated, "[s]cholar's behavior included punching the paraprofessional with two fists, slapping the paraprofessional in the face, pulling the paraprofessional's hair and either throwing a pencil or using pencil to stab the eye of the

22

paraprofessional. In either case the paraprofessional sustained an injury which required medical care." Plaintiffs' counsel requested a copy of the transcript of the suspension hearing from Defendants, but no transcript was ever received.

119.     On September 21, 2017, the parent filed an Expedited Impartial Hearing Request under the IDEA, Section 504 and other applicable laws. The parent was seeking immediate reinstatement and compensatory education with related services for the duration of time AG was illegally barred from attending school. The hearing date was set by the Impartial Hearing Office for October 17, 2017 when the suspension would have been fully served, and the Request was subsequently withdrawn without prejudice by the parent.

120.     On September 26, 2017, an MDR was held regarding the September 12, 2017 incident. Success Academy's staff and counsel, along with Ms. Patrick and her representatives, were present.

121.     The teacher made a statement to the MDR team via telephone. She again stated that she did not witness the para being stabbed in the eye with a pencil. She stated she saw the student hit the para.

122.     Success Academy told the MDR team that on the day of the incident, the para was released from the hospital immediately and was treated for a migraine.

123.     The MDR team found that the behavior as alleged in the suspension notice was a manifestation of AG's disability and directed that AG be returned to school immediately. The MDR team noted that the Defendants failed to utilize de-escalation techniques.

124.     Based on the MDR finding, on September 27, 2017, Ms. Patrick took AG to school. Defendants' staff informed her that he was not allowed to attend school and was required to serve his suspension as he had inflicted serious bodily injury and/or serious bodily harm on the para, regardless of the MDR finding.

125.     On September 29, 2017, an internal appeal was filed with Defendant Cole, the Success Academy Board Chairperson, from Defendant de Jongh's September 19, 2017 decision. AG remained out of school during the appeal process, and no response was received until the suspension had been completely served.

126.     On October 17, 2017, the internal appeal was decided and the suspension was upheld by Defendant Shainker.   The decision upheld the suspension, and stated that Success Academy Prospect Heights was not required to comply with New York Education Law § 3214.

127.     On October 17, 2017, the parent refiled the Impartial Hearing Request that had been withdrawn without prejudice, and a hearing was scheduled for November 6, 2017.

128.     On November 6, 2017 an Impartial Hearing was held. The Hearing Officer rendered a decision on November 14, 2017. The Hearing Officer found the appropriateness of both the suspension hearing held by Defendants and the suspension to an IAES to be outside his jurisdiction, and found that based on the record, it was highly unlikely that the standard of serious bodily injury was met.

129.     AG continues to be suspended by Defendants for behaviors identified in his IEP, BIP and FBA to date.

130.     On November 17, 2017 an IEP meeting was held. Ms. Patrick and her

counsel were in attendance. The CSE team included Defendants' educators and the school

psychologist. At the CSE meeting the team viewed four student observations and an

independent recommendation from Kings County Hospital developmental clinic. The CSE

team decided that AG's placement in an ICT class should be maintained, but that his

speech and language delays required one-on-one remediation twice a week with a

therapist.   The team also agreed a new BIP and FBA would be created.

131.     Defendants' employees at the IEP meeting stated that they did not agree

with the findings of the CSE team that AG could be educated in an ICT class. They stated

they were adamantly opposed to the ICT placement, and asked the CSE team to change AG

to a smaller setting, which is not offered at Success Academy Prospect Heights.   They

expressly stated that they did not want AG to remain at the school.

132.     That very afternoon, when AG's father went to pick him up from school,

Defendants' employees told the parent that AG would not be allowed back to school on

Monday November 27, 2017.   They gave AG's father a letter dated November 17, 2017

stating that they had found a bedbug on AG's clothing and he would be barred from

attending school until AG's parents had their home inspected, and if necessary treated, by

an exterminator at their own expense and provided proof of such.   The letter did not state

how Defendants determined they had found a bedbug, that the bedbug had originated in

AG's home rather than at the school itself, or that the school would be inspected for

bedbugs.

133.     Upon information and belief, Ms. Patrick examined both of her children who attend Success Academy Prospect Heights and did a thorough search of her home. Her home examination of AG and his sibling, who also attends Success Academy Prospect Heights, showed no evidence of bugs of any kind, or any bug bites. A professional inspection of her home also showed no sign of bedbugs.

134.     As of the date of this complaint, AG has been suspended and excluded from school over twenty-five (25) times for at least seventy (70) days since he began at Success Academy Prospect Heights in October 2016. He has missed over half of this academic school year, and is presently repeating the first grade because of Defendants' relentless removals.

135.     As a result of Defendants' actions, AG and Ms. Patrick have become increasingly emotionally distressed. AG's exclusions have caused him to become isolated from the school community and his friends, and the constant exclusions make transitioning back to school difficult.

136.     As Defendants maintain they are not obligated to abide by New York Education Law § 3214, the actions of Defendants against AG and Ms. Patrick constitute a pattern and practice of recurring violations that are likely to continue as long as the student attends Success Academy.

137.     As Defendants are not a party to the IDEA Impartial Hearing and appeal process, it has not and cannot provide a remedy to Plaintiffs, and exhaustion of the administrative Impartial Hearing process is futile.

## FIRST CAUSE OF ACTION

### (Violation of Due Process Under the United States Constitution Pursuant to 42 U.S.C. § 1983)

138.     Plaintiffs reallege and incorporate by reference all allegations in the preceding numbered paragraphs.

139.     Defendants have repeatedly suspended AG for periods in excess of ten (10) days without a fair and impartial suspension hearing, forcing him to be removed from school.

140.     Plaintiff AG has a property interest in his education.   Defendants have deprived AG of his right to an education without providing him due process to defend his property interest therein.   Defendants' constitutional violations were and are directly and proximately caused by the Defendants' own policies, practices and/or pattern of suspending and removing AG from school and labeling his behavior as causing "serious bodily injury" without providing sufficient basis for the charge and without providing an adequate opportunity to be heard.

141.     Defendants have violated AG's due process rights by suspending AG for forty-five (45) days with no hearing at all, forcing him to be removed from school.

142.     Defendants have violated AG's due process rights by suspending AG for twenty (20) days without providing adequate procedural safeguards, forcing him to be removed from school.

143.     Defendants have violated AG's due process rights by illegally removing him to an Interim Alternative Education Center, forcing him to be removed from school.

27

144.     Defendants have violated AG's due process rights by falsely accusing him of inflicting "serious bodily injury" on two occasions, and failing to provide him an adequate hearing, forcing him to be removed from school.

145.     Defendants' actions and omissions caused Plaintiffs to be subjected to the deprivation of rights secured by federal law, and by the acts complained of, Defendants have caused injury, including irreparable injury, which will continue unless Defendants are enjoined from their unlawful conduct.

146.     Defendants' policies, practices, and/or pattern have infringed upon Plaintiffs' constitutionally protected right to due process and must be declared unconstitutional to prevent ongoing and future constitutional violations.

## SECOND CAUSE OF ACTION

### (Violation of Due Process under the United States Constitution Pursuant to 42 U.S.C. § 1983)

147.     Plaintiffs reallege and incorporate by reference all allegations in the preceding numbered paragraphs.

148.     By removing AG from school to the emergency room against his parent's instructions or without parental consent where there was no urgent medical necessity, Defendants violated Ms. Patrick's right to authorize and direct the medical care given to her child.

149.     By forcibly removing AG from the school to the emergency room against or without parental consent where there was no urgent medical necessity, Defendants violated Plaintiffs' liberty interest to association and family integrity.

150.     By removing AG from school without providing appropriate notice, an explanation of the evidence, and an opportunity to be heard, Defendants violated AG's property interest in his legitimate entitlement to a public education.

### THIRD CAUSE OF ACTION

### (Violation of Individuals with Disabilities Education Act)

151.     Plaintiffs reallege and incorporate by reference all allegations in the preceding numbered paragraphs.

152.     The IDEA creates a right for children with disabilities to a free appropriate public education provided in conformity with a valid IEP, and provides disciplinary due process safeguards to ensure the protection of that right.   Defendants' failure to follow disciplinary due process requirements is a violation of Plaintiffs' rights under the IDEA.

153.     Defendants have violated IDEA by falsely alleging that AG caused "serious bodily injury" to an adult staff member on two occasions in order to circumvent the MDR process and bar AG from attending school.   Defendants used these claims to impose suspensions of 45 and 20 days, even though they failed to either allege or prove conduct justifying these lengthy suspensions.   Defendants then failed to provide appropriate alternative education or an appropriate IAES.

154.     Defendants have further violated AG's rights under IDEA by refusing to allow AG to return to school after an MDR found that his behavior was a manifestation of his disability.

155.     By the acts complained of, Defendants have caused Plaintiffs injury, including irreparable injury, which will continue unless Defendants are enjoined from their unlawful conduct.

## FOURTH CAUSE OF ACTION

### (Violation of Section 504 of the Rehabilitation Act)

156.     Plaintiffs reallege and incorporate by reference all allegations in the preceding numbered paragraphs.

157.     Defendants are recipients of federal financial assistance.

158.     AG has a physical impairment that substantially limits one or more major life activities, including learning.   As evidenced by his IEP, AG also has a record of such impairment, and is regarded as having such impairment.

159.     AG is qualified to receive a free appropriate public education in Defendants' school.

160.     By removing AG from his regular school setting rather than providing appropriate support and services in the school, Defendants have excluded Plaintiff AG from participation in a federally funded program by reason of his disability in violation of the Rehabilitation Act.

161.     By imposing longer and more frequent suspensions against AG to retaliate against Plaintiffs for asserting their rights, Defendants have discriminated against AG by reason of his disability.

162.     Defendants have harassed, intimidated and suspended AG illegally in an effort to have him removed from Success Academy.

163.     Defendants, in failing to reasonably accommodate AG's disabilities by failing to provide him with an appropriate education, have discriminated against AG on the basis of his disability, in violation of Section 504 of the Rehabilitation Act.

164.     By inappropriately suspending AG and removing him from school by EMS or threatening to do so when Defendants had no reasonable basis for believing that AG was in need of emergency medical care, Defendants have excluded AG from participation in a federally funded program by reason of his disability or perceived disability in violation of the Rehabilitation Act.

165.     By removing AG from his regular school setting and placing him with EMS and in the hospital rather than providing appropriate support and services in the school, Defendants have violated AG's right to a public education in the least restrictive setting appropriate to his needs under the Rehabilitation Act.

### FIFTH CAUSE OF ACTION

### (Violation of the Americans with Disabilities Act)

166.     Plaintiffs reallege and incorporate by reference all allegations in the preceding numbered paragraphs.

167.     AG has a physical impairment that substantially limits one or more major life activities, including learning.   As evidenced by the IEP, AG has a record of such impairment, and is regarded as having such impairment.

168.     AG is qualified to receive a free appropriate public education in Defendants' school.

31

169.     Defendants have failed to allow AG to attend school and have repeatedly illegally barred him from attending school.

170.     Defendants, in failing to reasonably accommodate AG's disabilities by excluding him from school in violation of federal and state law, and by failing to provide him with an appropriate education, have discriminated against AG on the basis of his disability in violation of the Americans with Disabilities Act of 1990.

171.     By inappropriately suspending AG and removing AG from his regular school setting and placing him with EMS and in the hospital rather than providing appropriate support and services in the school, Defendants violated AG's right to a public education in the least restrictive setting appropriate to his needs in violation of the ADA.

172.     By inappropriately suspending AG and removing AG from school by EMS or threatening to do so when Defendants had no reasonable basis for believing that AG was in need of emergency medical care, Defendants have discriminated and/or retaliated against Plaintiffs by reason of AG's disability or perceived disability.

### SIXTH CAUSE OF ACTION

**(Unreasonable Searches and Seizures under the New York State Constitution, and the United States Constitution Pursuant to 42 U.S.C. § 1983)**

173.     Plaintiffs reallege and incorporate by reference all allegations in the preceding numbered paragraphs.

174.     By physically removing AG from his school to a hospital emergency room when there was no medical necessity to take such action, Defendants violated AG's rights against unreasonable seizures under the Fourth Amendment of the United States Constitution and Article I, Section 12 of the New York State Constitution.

## SEVENTH CAUSE OF ACTION

### (Violation of the New York State Constitution, Article XI, Section 1)

175.     Plaintiffs reallege and incorporate by reference all allegations in the preceding numbered paragraphs.

176.     Section 1 of Article XI of the New York State Constitution affords students of the State of New York a right to a free education.   This provision is interpreted to entitle students to a sound and basic education that affords an opportunity for a meaningful education.

177.     By repeatedly suspending and removing AG from school, Defendants have violated his right to a free, sound and basic education.

178.     By inappropriately suspending AG and removing AG from school by EMS or threatening to do so when Defendants had no reasonable basis for believing that AG was in need of emergency medical care, Defendants have violated AG's right to a free, sound, and basic education.

179.     By the acts complained of, Defendants have caused Plaintiffs injury, including irreparable injury, which will continue unless Defendants are enjoined from their unlawful conduct.

## EIGHTH CAUSE OF ACTION

### (Violation of New York Education Law § 3214)

180.     Plaintiffs reallege and incorporate by reference all allegations in the preceding numbered paragraphs.

181.    By failing to provide any hearing for a suspension of 45 days, and by failing to offer a fair and impartial hearing for a suspension of 20 days, Defendants have violated Plaintiffs' due process rights pursuant to New York Education Law § 3214.

182.    As these suspensions were imposed in violation of New York Education Law § 3214, they cannot be sustained and must be expunged.

183.    By the acts complained of, Defendants have caused Plaintiffs injury, including irreparable injury, which will continue unless Defendants are enjoined from their unlawful conduct.

### NINTH CAUSE OF ACTION

### (Violation of New York Education Law § 10)

184.    Plaintiffs reallege and incorporate by reference all allegations in the preceding numbered paragraphs.

185.    By targeting AG for suspension on account of his disability, Defendants have violated Plaintiff's right to a school environment free of discrimination and harassment pursuant to New York Education Law § 10.

186.    By the acts complained of, Defendants have caused Plaintiffs injury, including irreparable injury, which will continue unless Defendants are enjoined from their unlawful conduct.

### PRAYER FOR RELIEF

187.    Plaintiffs have no adequate remedy at law to redress the wrongs set forth in this Complaint.

34

188.    Plaintiffs have suffered and will continue to suffer irreparable injury as a result of the unlawful acts and omissions of Defendants as alleged herein, unless they are granted the relief requested.

**WHEREFORE,** Plaintiffs respectfully requests that this Court:

(a) Enter a declaratory judgment finding that the actions of Defendants, their employees, agents, and all persons in active concert alleged in this Complaint violate Plaintiffs' constitutional rights as guaranteed under the Fourteenth and Fourth Amendments;

(b) Enter a declaratory judgment finding that the actions of Defendants in suspending AG to an IAES for alleged infliction of serious bodily injury without sufficient proof of same violates the IDEA;

(c) Enter a declaratory judgment finding that the actions of Defendants in suspending AG to an IAES without an adequate hearing violates the United States Constitution and the IDEA;

(d) Enter a declaratory judgment finding that the actions of Defendant of removing AG to an IAES for two hours a day in a public library with an unlicensed teacher violates the IDEA;

(e) Enter a declaratory judgment finding Defendants are subject to New York Education Law § 3214;

(f) Enter a preliminary and permanent injunction barring Defendants from suspending AG for more than 10 days without a fair and impartial hearing pursuant to federal law;

35

(g) Enter a preliminary and permanent injunction barring Defendants from continuing to engage in the unlawful, discriminatory conduct alleged in this Complaint;

(h) Enter a permanent injunction compelling Defendants to expunge AG's records of any and all illegal suspensions;

(i) Award the Plaintiffs damages in an amount to be determined at trial;

(j) Award the Plaintiffs reasonable attorneys' fees, expert fees, and costs; and

(k) Grant such other and further relief as this Court may deem just and proper.

Dated: November 22, 2017
      Brooklyn, New York

Respectfully submitted,

BROOKLYN LEGAL SERVICES

By: _Nancy Bedard_

Nancy Bedard, Esq. (NB1980)
Sarah E. Dranoff, Esq. (SD0870)
105 Court Street
Brooklyn, NY 11201
718-237-5568
nbedard@lsnyc.org

36