EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X

KIM PATRICK and AG, a minor, by and through his Parent and Next Friend, KIM PATRICK,

        PLAINTIFFS,

-against-

SUCCESS ACADEMY CHARTER SCHOOLS, INC.; SUCCESS ACADEMY PROSPECT HEIGHTS; SYDNEY SOLOMON in her individual and official capacity as Principal of Success Academy Prospect Heights; LAMAE DE JONGH, in her individual and official capacity as Managing Director of Schools Success Academy Charter Schools; SAMUEL COLE, in his individual and official capacity as Board Chairperson, Success Academy Charter Schools-NYC Board of Trustees; and CATHERINE SHAINKER, in her individual and official capacity as Board Member, Success Academy Charter Schools-NYC Board of Trustees,

        DEFENDANTS.

---------------------------------------------------------------- X

CV17-6846

17 CIV.          (          )

DECLARATION OF
KIM PATRICK

CHEN, J.

LEVY, M.J.

KIM PATRICK hereby declares as follows:

1.     I am the parent of AG. I am also known as Kim Richardson.

2.     AG and I reside in Brooklyn, New York.

3.     AG is a seven-year-old boy who is enrolled as a first grade student at Success Academy Prospect Heights. He began at Success Academy in October of the 2016-2017 school year in the first grade and was held over at the end of the school year.

4.     AG had an Individualized Education Plan ("IEP") when he began at Success Academy and continues to have an IEP. *See* copy of the IEP dated 12/20/16, annexed as Exhibit 1.

5. AG's IEP classifies him as other health impaired and designates him to receive the following special education and related services: an Integrated Co Teaching ("ICT") program with speech/language therapy and counseling and an individual paraprofessional ("para"). A Functional Behavior Assessment ("FBA") and Behavior Intervention Plan ("BIP") had been developed and established for AG in addition to his IEP. *See* copy of the BIP, annexed as Exhibit 2; copy of the FBA dated 9/22/2016, annexed as Exhibit 3.

6. AG has Beta-thalassemia, below average academic performance, below average speech and language skills, and presents with challenging behaviors as per his current IEP.

### *2016-2017 School Year*

7. When AG began the school year at Success Academy Prospect Heights on October 27, 2016, he exhibited social and behavioral deficits. AG has significant difficulty with transitions and becomes easily frustrated. AG's frustration often manifests in the form of temper tantrums. Defendants are well aware of this because it is noted in his IEP, BIP and FBA.

8. After enrolling at Success Academy Prospect Heights, AG exhibited these behaviors in school and was suspended on multiple occasions in November 2016 based on such behavior. During these suspensions, Defendants did not provide any alternative instruction for school days AG missed. Each suspension imposed during this time period lasted less than six days, and Defendants did not conduct any hearing regarding any of these suspensions.

9. Despite removing AG for more than ten school days between October 27 and December 20, 2016, Defendants never arranged a Manifestation Determination Review ("MDR") to ascertain if AG's behavior was a manifestation of his disability.

10. During this period, nearly every day when I attempted to drop him off at school in the morning, I was asked by Defendants' staff to remain at school for several hours to assist my

son to attend school due to his behavioral deficits. The principal informed me that if I was not available and AG had a behavior issue, the school would call 911.

11. I asked to have AG re-evaluated and to have an IEP meeting to review his special education needs. An IEP meeting was scheduled for December 20, 2016.

12. The day before the IEP meeting, Defendant Solomon contacted EMS when six-year-old AG exhibited tantruming behavior but was not experiencing any medical emergency. Defendants were familiar with these behaviors and knew that AG had never hurt himself in school before. Upon learning that EMS had been called, I rushed to the school. I spoke to EMS workers and was able to prevent my child from needlessly being transported to an emergency psychiatric ward. He was released to my custody and missed the rest of the school day. I was unable to attend work that day.

13. On December 20, 2016, I attended an IEP meeting. The IEP team agreed to an ICT program that includes a general education teacher and a special education teacher. Speech and Language therapy ("Speech") was added to assist AG in learning how to express and articulate anxiety, stress and anger in a healthy way. Occupational Therapy ("OT") was added to assist AG with dysregulation and physical concerns. Individual counseling and group counseling were also added to assist with AG's behavior issues. The IEP continued to mandate a para.

14. AG returned to school in January 2017 after serving a suspension for several days for an alleged incident in December 2016. He was now placed in an ICT class.

15. AG was again suspended from school for alleged incidents on January 24, 26, 30, and February 2, 6, and 7, 2017, due to his behavioral deficits outlined in his IEP.

16. On February 14, 2017, Defendants' staff member Torcivia called me and threatened to call 911 if I did not come to the school to take AG home as he was having a tantrum.

I rushed to the school so my son could avoid an inappropriate and unnecessary trip to the emergency room. I was again prevented from going to work.

17. On or about February 16, 2017, Brooklyn Legal Services was retained as counsel and represented me at an MDR meeting for suspensions in January and early February. At this MDR meeting the team found that the behaviors that AG was suspended for were a manifestation of his disability, and as such, that he should return to school without serving any suspension days.

18. The day after the MDR meeting, AG went to school. Defendants suspended AG again on that day, February 17, and February 22 and 23, 2017, for tantruming behavior. AG was not excluded from school for these suspensions as an MDR had to be scheduled.

*February 24, 2017 Incident*

19. On February 24, 2017, Success Academy called EMS when AG exhibited tantruming behavior.

20. Defendants did not call me until the EMS workers and police officers were at the school. I was at work and asked Success Academy staff member Jeann Kubler to let me speak to the EMS staff, but the Defendants never allowed me to speak to AG or the EMS workers. I asked Success Academy to keep him at school until I arrived. AG's para then called me and told me that AG had been calmly sitting on the para's lap and that the school staff took him and told the EMS workers to take him to the hospital. Despite my request that my son not be transported to the hospital and that a family member would be there shortly, AG was transported to the emergency room.

21. I left work and arrived at Kings County Hospital, where I found my young child sitting in a chair in the emergency room with fear and terror in his eyes. My adult son was at the hospital with him.

22. Prior to releasing him, hospital staff examined AG and spoke to me. AG was discharged the same day with no treatment or referral. Hospital records from the incident indicated that AG was experiencing childhood separation anxiety and impulse disorder.

23. This traumatic and unnecessary incident deeply affected me and AG. AG was unable to return to school that day.

24. When AG later saw EMS responding to an incident unrelated to him at the library, he began to cry and tried to hide under the table because he was fearful that the EMS workers were coming to take him to the hospital.

25. As a result of the EMS transport, I received a bill from NYC Health and Hospitals Corporation for $1,860.00.

26. In addition to Defendants calling EMS due to AG's alleged behavior of February 24, 2017, I received a letter from Defendants that evening informing me that AG had been suspended.

27. Defendants suspended AG for the February 24, 2017 incident for forty-five (45) days. Defendants alleged that the my seven-year-old son had caused serious bodily injury and extreme pain by dragging the Assistant Principal down the hall by the hair while using the other hand to hit her, yanking a lanyard around the Assistant Principal's neck, kicking Defendant Solomon, and other behavior. The letter further stated that AG's behavior inflicted serious bodily injury and extreme physical pain upon the para. In the letter, Defendants stated that because of this behavior AG would be removed to an Interim Alternative Education Setting (IAES) for forty-five (45) days. *See* February 24, 2017 Suspension Notice, annexed as Exhibit 4.

28. Brooklyn Legal Services filed a request for an expedited Impartial Hearing challenging Defendants' actions as illegal, false and exaggerated.

29. In a decision dated March 29, 2017, the Impartial Hearing Officer ("IHO") found that Defendants' failure to provide notice and an opportunity for a suspension hearing was a plain violation of due process, but that he did not have jurisdiction to order a suspension hearing in the matter. *See* March 29, 2017 Impartial Hearing Decision, annexed as Exhibit 5, at 5.

30. The IHO further found that, taken collectively, the allegations made by Defendants did not rise to the level of serious bodily injury as that term is defined in the law and ordered the Department of Education ("DOE"), the only respondent to the complaint, to take whatever steps were necessary to have AG immediately reinstated. *Id.* at 6.

31. The IHO ordered that the DOE provide compensatory education and make up related services for every day AG was illegally barred from school by Defendants. *Id.* at 6-7.

32. While AG was excluded from school, Success Academy provided only two hours per day of alternate education in a public library with, upon information and belief, an unlicensed teacher.

*Return to School*

33. Per the IHO's order, AG returned to Success Academy Prospect Heights School on March 31, 2017, having missed about twenty-four (24) days of school and essential Speech, OT, and counseling services. The school's spring break began the next day.

34. On the first day back from the break, Monday April 10, 2017, Success Academy Prospect Heights again suspended AG from school, and suspended him on April 14, 20 and 24, 2017, for tantruming behaviors. He did not serve the suspensions at that time, as an MDR meeting had to be held to determine if the acts alleged were a manifestation of his disability.

*April 25, 2017 Incident*

35. On April 25, 2017, while I was attending an MDR meeting for the April 2017 suspensions at the DOE, Success Academy staff member Torcivia contacted me during the meeting and told me that Defendants had called EMS for AG due to tantruming behaviors.

36. The Defendants did not to allow me to try to soothe my son prior to calling EMS, nor, upon information and belief, were any de-escalation techniques used prior to the EMS call.

37. I ran out of the MDR meeting and went to Success Academy Prospect Heights in an attempt to avoid the EMS transport of my child. Because the MDR was being held far away from the school, I feared I would not arrive at the school in time to prevent the transport. AG had no medical emergency and I believe that Defendants called EMS to harass, scare, intimidate, and retaliate against me for enforcing my rights at the MDR meeting and to force AG out of the school due to his disability.

38. My counsel spoke directly to the EMS worker on my behalf by telephone. Upon information and belief, the EMS worker told counsel they would not take my son to the hospital and said they did not believe there was any legitimate reason to do so.

39. When I arrived at the school, AG was scared and confused but calm. Because of the actions of the school, I had to take my child home and he missed the rest of the school day.

40. The MDR meeting continued in my absence. The MDR team found that the alleged behavior that led to the previous suspensions was a manifestation of AG's disability. AG was therefore allowed to return to school without serving the suspensions.

41. When I arrived home from the hospital with AG, I received yet another notice from Defendants that AG would be suspended for three days for the alleged behavior of April 25, 2017.

42. AG was again suspended from school on April 26, May 9, and June 6, 2017, due to behaviors related to his disability, but he was not excluded from school for those days, as another MDR meeting found that the behavior was a manifestation of his disability.

### *2017-2018 School Year*

43. AG returned to school for the 2017-2018 school year at Success Academy Prospect Heights on August 16, 2017.

44. AG was suspended on August 21, 24, and 31, 2017, due to behavioral deficits outlined in his IEP.

45. Within the first few weeks of school AG was suspended and excluded from school for seven days of instruction and related services including counseling, Speech, and OT. Defendants offered no alternative education or services.

*September 12, 2017 Incident*

46. On the afternoon of September 12, 2017, Defendants called me and informed me that they had called EMS. I was far away at work and called AG's father, Gavin. Upon information and belief he arrived to find our son in an office with school personnel, the police, and EMS workers. The EMS workers checked AG's pulse and heart rate and then they left.

47. Gavin informed me that Defendants' staff told him that AG had engaged in dangerous behavior and that he had hit his para and stabbed her in the eye with a pencil, and that the para immediately left the school via EMS. Gavin expressed surprise and told Success Academy, including Defendant Solomon, that he had just seen the para in the hall on his way to the room and that the para looked fine and did not appear to be in distress or in pain.

48. On September 13, 2017, I was informed that AG was not to return to school that day and that he was suspended because of the previous day's behavior.

49. The letter I received, dated September 13, 2017, stated that AG stabbed his para in the eye and the para was immediately transported to the hospital. The letter further stated that AG's behavior inflicted serious bodily injury and extreme physical pain upon the para. Defendants stated that because of this behavior AG should be removed to an Interim Alternative Education Setting (IAES) for twenty (20) days. The letter stated that a hearing had been scheduled to discuss the incident with me and determine whether the recommendation was appropriate. *See* September 13, 2017 Suspension Notice, annexed as Exhibit 6.

50. This was the first time I had ever been offered a hearing to determine whether a suspension was appropriate, although AG had already been suspended numerous times.

51. On September 18, 2017, a hearing was held at Success Academy Prospect Heights. I appeared at the hearing with counsel to dispute the charges.

52. Defendant de Jongh announced that the hearing was going to be "informal" and was only to assess if the twenty (20) day placement to the IAES was appropriate.

53. No oaths were taken prior to testimony being offered.

54. The para who was allegedly injured did not attend or testify at the hearing.

55. Defendants' first witness was the teacher, Dorothy Mape, who stated that she had not seen AG stab the para in the eye, but was in the classroom at the time it allegedly happened. She did not testify to seeing the para in extreme pain or to observing any injury. She testified that the para herself called 911 via cell phone after the incident.

56. Defendant Solomon stated that she entered the room after the alleged incident.

57. The school offered an index card into evidence that was handwritten and stated "AG stabbed para corner of eye with pencil, pull hair and punched face and chest with two fists."

The index card was not dated, made no reference to when the incident happened, and according to Defendants was signed by the para, but written by the teacher.

58.     Defendants offered no further witnesses or evidence, and presented no evidence regarding medical treatment or serious injury of any kind.

59.     AG's father Gavin testified that he saw the para in the hall at the school shortly after the alleged incident and that she appeared fine.

60.     Defendant de Jongh asked if twenty (20) days was a sufficient penalty and the teacher responded that it should be longer.

61.     On September 20, 2017, I received the decision by Defendant de Jongh, dated September 19, 2017. It stated that "after careful consideration of the findings described in the document attached, I have determined that the IAES was appropriate. Accordingly, your scholar will remain in the IAES for a total of 20 school days." *See* September 20, 2017 Suspension Decision, annexed as Exhibit 7.

62.     Attached to the decision was an "IAES Hearing Findings Sheet" with check boxes. The box for "Inflicted serious bodily injury upon another person:" was checked "yes." "Notes" handwritten directly below stated, "[s]cholar's behavior included punching the paraprofessional with two fists, slapping the paraprofessional in the face, pulling the paraprofessional's hair and either throwing a pencil or using pencil to stab the eye of the paraprofessional. In either case the paraprofessional sustained an injury which required medical care." *See* IAES Hearing Finding Sheet, annexed as Exhibit 8.

63.     On September 21, 2017, I filed an Expedited Impartial Hearing Request. I was seeking immediate reinstatement and compensatory education with related services for the duration of time AG was illegally barred from attending school. The hearing date was set by the

Impartial Hearing Office for October 17, 2017 when the suspension would have been fully served, and the Request was subsequently withdrawn without prejudice.

64. On September 26, 2017, an MDR was held regarding the September 12, 2017 incident. Success Academy's staff and counsel, along with me and my representatives, were present.

65. The teacher made a statement to the MDR team via telephone. She again stated that she did not witness the para being stabbed in the eye with a pencil. She stated she saw the student hit the para.

66. Success Academy told the MDR team that on the day of the incident, the para was released from the hospital immediately and was treated for a migraine.

67. The MDR team found that the behavior as alleged in the suspension notice was a manifestation of AG's disability and directed that AG be returned to school immediately. The MDR team noted that the Defendants failed to utilize de-escalation techniques. *See* November 14, 2017 Impartial Hearing Decision, annexed as Exhibit 9 at 3.

68. Based on the MDR finding, on September 27, 2017, I took AG to school. Defendants' staff informed me that he was not allowed to attend school and was required to serve his suspension as he had inflicted serious bodily injury and/or serious bodily harm on the para, regardless of the MDR finding.

69. On September 29, 2017, an internal appeal was filed with Defendant Cole, the Success Academy Board Chairperson, from Defendant de Jongh's September 19, 2017 decision. AG remained out of school during the appeal process, and no response was received until the suspension had been completely served.

70. On October 17, 2017, the internal appeal was decided and the suspension was upheld by Defendant Shainker. *See* October 17, 2017 Suspension Appeal Decision, annexed as Exhibit 10.

71. On October 17, 2017, I refiled the Impartial Hearing Request that had been withdrawn without prejudice, and a hearing was scheduled for November 6, 2017.

72. On November 6, 2017 an Impartial Hearing was held. The Hearing Officer rendered a decision on November 14, 2017. The Hearing Officer found the appropriateness of both the suspension hearing held by Defendants and the suspension to an IAES by Defendants to be outside his jurisdiction, and found that based on the record, it was highly unlikely that the standard of serious bodily injury was met. Ex. 9 at 4.

73. On November 17, 2017 an IEP meeting was held. The IEP team decided that AG's placement of an ICT class should be maintained, but that his speech and language delays required one-on-one remediation twice a week with a therapist. The team also agreed a new BIP and FBA would be created to help him with his behavior. The Defendants' employees at the IEP meeting stated that they did not agree with the findings of the CSE team that AG could be educated in an ICT class. They expressly stated that they did not want AG to remain at the school.

74. That very afternoon, when AG's father went to pick him up from school, Defendants' employees told him that AG would not be allowed back to school on Monday November 27, 2017. They gave AG's father a letter stating that they had found a bedbug on AG's clothing and he would be barred from attending school until I had our home inspected, and if necessary treated, by an exterminator at my own expense and provide proof of such. The letter did not state how Defendants identified a bedbug, how they determined that it had originated in AG's home rather than at the school itself, or that the school would be inspected for bedbugs. My

son was singled out and embarrassed by Defendants' allegation of bedbugs. *See* copy of letter dated November 17, 2017 from Defendant Solomon, annexed as Exhibit 11.

75. I examined both of my children who attend Success Academy Prospect Heights and conducted a thorough search of our home. My investigation showed no evidence of bedbugs.

76. As a result of Defendants' actions, AG and I have become increasingly emotionally distressed. His exclusions have caused him to become isolated from the school community and his friends, and the constant exclusions make transitioning back to school difficult and he is falling further behind academically.

77. The actions of Success Academy Defendants against AG and me are a recurring violation that is likely to continue as long as AG attends Success Academy. Every day that I drop him off I am afraid they will suspend him with no possibility to have a hearing, or allege he has caused serious bodily harm to avail them of the MDR exception to keep him out of school, or call 911 and have EMS remove him from school. Now they are retaliating against AG and me, attempting to keep him out of school by alleging he has bedbugs, but have provided no proof.

78. My son has a right to attend school but Defendants are constantly taking that right away from him. Given the continuing harm suffered by my son and myself, I have no other option than to seek intervention by the Court.

79. I have a modest income and my family cannot afford to post a bond in this matter should a preliminary injunction be granted by the Court. I have two minor children and a young adult daughter, all of whom reside with me and whom I support. I ask that the requirement for posting a bond in this matter be waived due to my financial hardship. I am represented by Brooklyn Legal Services, a not-for-profit law office, for free.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 17, 2017

_____
KIM PATRICK