UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KIM PATRICK, and AG, a minor, by and through
his Parent and Next Friend, KIM PATRICK,

                PLAINTIFFS,

      -against-

SUCCESS ACADEMY CHARTER SCHOOLS, INC.;
SUCCESS ACADEMY PROSPECT HEIGHTS;
SYDNEY SOLOMON in her individual and official
capacity as Principal of Success Academy Prospect
Heights; LAMAE DE JONGH, in her individual and
official capacity as Managing Director of Schools
Success Academy Charter Schools; SAMUEL COLE,
in his individual and official capacity as Board
Chairperson, Success Academy Charter Schools-NYC
Board of Trustees; and CATHERINE SHAINKER,
in her individual and official capacity as Board Member,
Success Academy Charter Schools-NYC Board of
Trustees,

                DEFENDANTS.

-----------------------------------------------------------------X

**CV17-6846**

CHEN, J.

LEVY, M.J.

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION

---

By:    Nancy Bedard (NB1980)
        Sarah E. Dranoff (SD0870)
        Brooklyn Legal Services
        105 Court Street, 4th Floor
        Brooklyn, NY 11201
        Attorneys for Plaintiff
        (718) 237-5500
        nbedard@lsnyc.org

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................……......ii

STATEMENT OF FACTS ............................................................................................... 2

ARGUMENT..................................................................................................... 111

I.     PLAINTIFFS WILL SUFFER IRREPARABLE INJURY ABSENT INJUNCTIVE
RELIEF………………………………............................................................................ 12

      A. Defendants' Repetitive Imposition of Suspensions without Basic Procedural
Safeguards Constitutes *Per Se* Irreparable Injury to Plaintiffs........................... 12

      B. Defendants' Repetitive Imposition of Suspensions, Excluding AG from First Grade
for a Cumulative Total of at Least 70 Days, Constitutes Irreparable Harm to
Plaintiffs……………………………………………………………………………....13

II.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR CLAIMS THAT
DEFENDANTS HAVE REPEATEDLY EXCLUDED AG FROM SCHOOL IN
VIOLATION OF THE U.S. AND NEW YORK CONSTITUTIONS, IDEA, ADA, THE
REHABILITATION ACT, AND THE NEW YORK EDUCATION LAW..................... 14

      A.     Defendants' Pattern and Practice of Imposing Long-Term Suspensions Without
Basic Procedural Safeguards Violates Plaintiffs' Due Process Rights..............14

           1.   AG Has a Property Interest in his Education.....................................14

           2.   Defendants Have Deprived Plaintiff of his Education without Due Process..15

              i.     Defendants Suspended AG from School for 45 Days During the
2016-17 School Year without a Hearing of any Kind.......................15

              ii.    The Suspension Hearing Held by Defendants in the 2017-18 School Year
Failed Entirely to Provide Due Process to Plaintiffs.….................... 17

      B.     Plaintiffs are Likely to Succeed on the Claim that Defendants Violated IDEA and
New York Law by Imposing Two Lengthy Suspensions Despite Their Failure to
Allege or Prove Conduct Meeting the Legal Definition of "Special
Circumstances……………………………………………….………………………....18

      C.     Plaintiffs are Likely to Succeed on the Claims that by Excluding AG from School,
Defendants have Discriminated Against him in Violation of § 504 of the
Rehabilitation Act, the Americans With Disabilities Act, and the New York
Education Law……………………………………………………………………....21

III.   ALTERNATIVELY, PLAINTIFFS HAVE ESTABLISHED SERIOUS QUESTIONS
GOING TO THE MERITS OF THE CLAIMS AND THE BALANCE OF THE
EQUITIES TIPS IN THEIR FAVOR............................................................................. 23

IV.   PLAINTIFFS SHOULD BE RELIEVED OF THE REQUIREMENTS OF FRCP 65(C)
BECAUSE THEY ARE INDIGENT, AND DEFENDANTS CAN SHOW NO HARM
FROM WAIVER OF THE SECURITY REQUIREMENT. ............................................ 25

V.    EXHAUSTION OF ADMINISTRATIVE REMEDIES WOULD BE FUTILE IN THIS
CASE………………………………………………………………………………….26

CONCLUSION………………………………………………………………………….27

## TABLE OF AUTHORITIES

**CASES**

*Ahlers v. Rabinowitz*, 684 F.3d 53 (2d Cir. 2012)……………………..…………………….....14

*Board of Educ. v. F.C. ex rel. R.C.,* 2 F. Supp. 2d 637 (Dist. N.J. 1998)…………………….24

*C.L. v. Scarsdale Union Free Sch. Dist.,* 744 F.3d 826 (2d Cir. 2014)…………………….....23

*Cave v. East Meadow Union Free School Dist.*, 514 F.3d 240 (2d Cir. 2008)…………………26

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*,
  598 F.3d 30 (2d Cir. 2010)…….………………..……………………………………………..12

*DeFabio v. E. Hampton Union Free Sch. Dist.,* 658 F. Supp. 2d 461 (E.D.N.Y. 2009)………...15

*Doctor's Assocs. v. Stuart,* 85 F.3d 975 (2d Cir. 1996)………………………………………….25

*Doe v. Mattingly*, 2006 U.S. Dist. LEXIS 88320 (E.D.N.Y. 2006)………………………….....12

*Edwards v. Ctr. Moriches Union Free Sch. Dist.,* 898 F. Supp. 2d 516 (E.D.N.Y. 2012)......15, 17

*Goss v. Lopez*, 419 U.S. 565 (1975)………………………………………………………....*passim*

*Handberry v. Thompson,* 446 F.3d 335 (2d Cir. 2006)………………………………………….15

*Honig v. Doe*, 484 U.S. 305 (1988)…………………………………………………………...26

*Int'l Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir. 1974)…………………………………25

*J.S. v. T'Kach*, 714 F.3d 99 (2d Cir. 2013)……………………………………………………14

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir. 1979)…………….12, 24

*Kajoshaj v. N.Y.City Dep't of Educ.,* 543 Fed. Appx. 11 (2d Cir. 2013)……………………....15

*King v. Pine Plains Cent. Sch. Dist.*, 918 F.Supp. 772 (S.D.N.Y.1986)………………………...27

*LIH v. New York City Bd. of Educ.,* 103 F. Supp. 2d 658 (E.D.N.Y. 2000)………..……13, 25, 26

*Local 342, Long Island Pub. Serv. Emps. v. Town Bd. of Huntington*,
  31 F.3d 1191 (2d Cir. 1994)……………………………………………………………….....14

*Local 1814, Int'l Longshoremen's Ass'n v. New York Shipping Ass'n*,
  965 F.2d 1224 (2d Cir. 1992)……………………………………………………………….11

*Logan v. Zimmerman Brush Co.,* 455 U.S. 422 (1982)………………………………………….14

*Lopez v. Delta Funding Corp.*, 1998 U.S. Dist. LEXIS 23318 (E.D.N.Y. 1998)…….................25

*Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1 (1978)………………………………….14

*Mitchell v. Cuomo*, 748 F.2d 804 (2d Cir. 1984)……………………………………………...12

*New York Pathological & X-Ray Laboratories, Inc. v. Immigration &*
  *Naturalization Service*, 523 F.2d 79 (2d Cir. 1975)…………………………………………..12

*Rivera v. Town of Huntington Hous. Auth.,* 2012 U.S. Dist. LEXIS 74267 (E.D.N.Y. 2012)…..25

ii

*Ross v. Disare,* 500 F. Supp. 928 (S.D.N.Y. 1977)..................................................17-18

*U.S. v. Alexander*, 447 F.3d 1290 (10th Cir. 2006), *cert. denied* 549 U.S. 933.....................20

*U. S. v. Lowe*, 145 F.3d 45 (1st Cir. 1998)...............................................................20

*U.S. v. Mermelstein,* 487 F. Supp. 2d 242 (E.D.N.Y. 2007)...........................................20

## STATUTES AND REGULATIONS

18 U.S.C. § 1365(h)(3)....................................................................................19, 20

20 U.S.C. § 1415.......................................................................................*passim*

29 U.S.C. §701..........................................................................................*passim*

29 U.S.C. §794.............................................................................................21

42 U.S.C. §12102...........................................................................................22

42 U.S.C. §12131......................................................................................*passim*

42 U.S.C. §12132...........................................................................................21

28 C.F.R. §35.130(b)(3) ....................................................................................22

34 C.F.R. § 104.33..........................................................................................22

34 C.F.R. § 300.530.....................................................................................16, 19

Federal Rules of Civil Procedure 65(c)................................................................25-26

N.Y. Const. Art. XI, § 1....................................................................................14

N.Y. Educ. Law § 12........................................................................................22

N.Y. Educ. Law § 3202......................................................................................14

N.Y. Educ. Law § 3205......................................................................................14

N.Y. Educ. Law § 3214.................................................................................*passim*

N.Y. Exec. Law § 292(21)..................................................................................23

8 N.Y.C.R.R. § 201.7.......................................................................................16

8 N.Y.C.R.R. § 201.9(c)(3).................................................................................16

8 N.Y.C.R.R. § 210.2(m)...................................................................................20

## PRELIMINARY STATEMENT

This action arises out of Defendants' continuous discrimination and retaliation against AG, a seven-year-old student with a disability, through actions undertaken to pressure him to leave Success Academy Prospect Heights, including subjecting him and his family to numerous removals, illegal suspensions, repeatedly calling his parents to pick him up at school or to stay at school with him, and removing him or threatening to remove him by ambulance to the hospital emergency room ("EMS"ing) when no medical necessity existed. Because of these actions, AG has been denied educational access and services at Success Academy Prospect Heights. AG has not received the education to which he is entitled, and he continues to suffer irreparable harm to his educational and emotional development by being repeatedly suspended and illegally barred from attending school. Only three months into the current school year, AG has already been excluded from school for at least 27 days without appropriate due process. AG and his parents remain at risk as the patterns and practices summarized above and described in detail below persist.

In order to safeguard AG's right to attend school and receive the special education services to which he is entitled, Plaintiffs AG and his parent, Kim Patrick, bring this action to compel Defendants to comply with the United States Constitution, the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), the Individuals with Disabilities Education Act ("IDEA"), the New York State Constitution, and the New York State Education Law. Plaintiffs seek a preliminary and permanent injunction mandating such compliance, damages, and related relief, as well as attorneys' fees and litigation costs under 42 U.S.C. § 1988.

## STATEMENT OF FACTS

AG is a seven-year-old boy who is enrolled as a first grade student at Success Academy Prospect Heights. He entered Success Academy in October 2016 in the first grade and was held over at the end of the school year. Patrick Decl. ¶ 3. AG has had an Individualized Education Plan ("IEP") since he entered Success Academy. AG's IEP classifies him as other health impaired and designates him to receive the following special education and related services: an Integrated Co Teaching ("ICT") program with speech/language therapy and counseling and an individual paraprofessional ("para"). A Functional Behavior Assessment ("FBA") and Behavior Intervention Plan ("BIP") had been developed and established for AG in addition to his IEP. AG has Beta-thalassemia, below average academic performance, below average speech and language skills, and presents with challenging behaviors as per his current IEP. *Id.* at ¶¶ 4-6.

### 2016-2017 School Year

When AG began the school year at Success Academy Prospect Heights on October 27, 2016, he exhibited social and behavioral deficits. AG has significant difficulty with transitions and becomes easily frustrated. His frustration often manifests in the form of temper tantrums. Defendants are well aware of this because it is noted in his IEP, BIP and FBA. *Id.* at ¶ 7.

Immediately after enrolling at Success Academy Prospect Heights, AG exhibited these behaviors in school and was suspended on multiple occasions in November 2016 based on such behavior. During these suspensions, Defendants did not provide any alternative instruction for school days AG missed. Upon information and belief, each suspension imposed during this time period lasted less than six days. Defendants did not conduct a formal or informal hearing regarding any of these suspensions. *Id.* at ¶ 8. Despite removing AG for more than ten school days between October 27 and December 20, 2016, Defendants never arranged a Manifestation Determination Review ("MDR") to ascertain whether AG's behavior was a manifestation of his

2

disability. *Id.* at ¶ 9.

During this period, nearly every day when Ms. Patrick attempted to drop AG off at school in the morning, she was asked by Defendants' staff to remain at school for several hours to assist her son attend school due to his behavioral deficits. The principal informed Ms. Patrick that if she was not available and AG had a behavior issue, the school would call 911. *Id.* at ¶ 10. On December 19, Defendant Solomon contacted EMS when six-year-old AG exhibited tantruming behavior, even though he was not experiencing a medical emergency. Upon learning that EMS had been called, Ms. Patrick rushed to the school. She spoke to EMS workers and was able to prevent her child from being needlessly transported to an emergency psychiatric ward. Her son was released to her custody and missed the rest of the school day. Ms. Patrick was unable to attend work that day. *Id.* at ¶ 12.

AG was again suspended for several days for alleged incidents in December 2016, as well as on January 24, 26, and 30, and February 2, 6, 7, 16, 17, 22 and 23, 2017 due to behavioral deficits outlined in his IEP. *Id.* at ¶¶ 14-15, 18. On February 14, 2017, Defendants' staff called Ms. Patrick and again threatened to call 911 if Ms. Patrick did not come to the school to take AG home, as he was having a tantrum. Ms. Patrick rushed to the school so her son could avoid an inappropriate and unnecessary trip to the emergency room, and was again prevented from going to work. *Id.* at ¶ 16.

On February 24, 2017, Defendants called EMS when AG exhibited tantruming behavior. Defendants did not contact Ms. Patrick until the EMS workers and police officers were at the school. Despite Ms. Patrick's request, Defendants did not allow her to speak to AG or the EMS workers. Ms. Patrick also asked Defendants to keep her son at school until she arrived. AG's para then called Ms. Patrick and told her that AG had been calmly sitting on the para's lap, and

that the school staff took him and told the EMS workers to take him to the hospital.  Although

Ms. Patrick requested that her son not be transported to the hospital and advised Defendants that

a family member would be there shortly, AG was transported to the emergency room.  *Id.* at ¶¶

19-20.

Ms. Patrick left work and arrived at Kings County Hospital, where she found her young

child sitting in a chair in the emergency room with fear and terror in his eyes.  Her adult son was

at the hospital with him.  *Id.* at ¶ 21.  Prior to releasing him, hospital staff examined AG and

spoke to Ms. Patrick.  AG was discharged the same day with no treatment or referral.  Hospital

records from the incident indicated that AG was experiencing childhood separation anxiety and

impulse disorder.  *Id.* at ¶ 22.  This traumatic and unnecessary incident deeply affected Ms.

Patrick and AG.  AG was unable to return to school that day.  *Id.* at ¶ 23.  When AG later saw

EMS responding to an incident unrelated to him, he began to cry and tried to hide under the table

because he was fearful that the EMS workers were coming to take him to the hospital.  *Id.* at ¶

24.  As a result of the EMS transport, Ms. Patrick received a bill from NYC Health and Hospitals

Corporation for $1,860.00.  *Id.* at ¶ 25.

In addition to EMSing AG for the alleged behavior of February 24, 2017, Ms. Patrick

received a letter from Defendants that evening informing her that her child had also been

suspended for forty-five (45) days.  Defendants alleged that the seven-year-old student had

caused serious bodily injury and extreme pain by, *inter alia*, dragging the Assistant Principal

down the hall by the hair while using the other hand to hit her, yanking a lanyard around the

Assistant Principal's neck, and kicking Defendant Solomon.  The letter further stated that AG's

behavior inflicted serious bodily injury and extreme physical pain upon the para.  In the letter,

Defendants stated that because of this behavior AG would be removed to an Interim Alternative

4

Education Setting (IAES) for forty-five (45) days. *Id.* at ¶¶ 26-27.

As with all previous suspensions, Defendants offered AG and his parents no notice or opportunity for a hearing to contest the charge or any information about their due process rights. Bedard Decl. at ¶ 12. Brooklyn Legal Services filed a request for an expedited Impartial Hearing under the IDEA and Section 504 challenging Defendants' actions as illegal, and asserting the allegations against AG were false and exaggerated. *Id.* at ¶ 13. In a decision dated March 29, 2017, the Impartial Hearing Officer ("IHO") found that Defendants' failure to provide Ms. Patrick with notice and an opportunity for a suspension hearing was a plain violation of due process, but that the IHO did not have jurisdiction to order a suspension hearing in the matter. The IHO further found that, taken collectively, the allegations made by Defendants did not rise to the level of serious bodily injury as that term is defined in the law and ordered the Department of Education ("DOE"), the only respondent to the complaint, to take whatever steps were necessary to have AG immediately reinstated. The IHO ordered that the DOE provide compensatory education and make-up related services for every day AG was illegally barred from school by Defendants. *Id.* at ¶¶ 14-16. As a result of the Defendants' actions, AG missed a month of full-day instruction in his regular placement and essential Speech, OT, and counseling services. While AG was excluded from school, Defendants provided only two hours per day of alternate education in a public library with, upon information and belief, an unlicensed teacher. Patrick Decl.¶¶ 32-33. Defendant Success Academy is not a party to the IDEA administrative impartial hearing process and New York State Review Office appeal process. No appeal of the Impartial Hearing decision was filed. Bedard Decl. ¶ 17.

Per the IHO's order, the student returned to school on March 31, 2017, having missed about twenty-four (24) days of school. The school's spring break began the next day. On the

5

first day after the break, April 10, 2017, Defendants again suspended AG from school, and suspended him on April 14, 20 and 24, 2017, for tantruming behaviors. Patrick Decl. ¶¶ 33-34. On April 25, 2017, while Ms. Patrick was attending an MDR meeting regarding these suspensions, Success Academy staff contacted Ms. Patrick and told her that Defendants had again called EMS for her son due to tantruming behaviors. *Id.* at ¶ 35. Ms. Patrick ran out of the MDR meeting and went to the school in an attempt to avoid the EMS transport of her child. Ms. Patrick believed that Defendants called EMS to harass, scare, intimidate, and retaliate against her for enforcing her rights at the MDR meeting and to force AG out of the school due to his disability. *Id.* at ¶ 37. Ms. Patrick's counsel spoke directly to the EMS worker by telephone and inquired as to the area of concern. The EMS worker said he would not take the student to the hospital and that he did not believe there was any legitimate reason to do so. Bedard Decl. ¶ 23. When Ms. Patrick arrived at the school, AG was scared and confused but calm. Because of the actions of the school, Ms. Patrick had to take her child home and he missed the rest of the school day. Patrick Decl. ¶ 39. AG was again suspended from school on April 26, May 9, and June 6, 2017, due to behaviors related to his disability. The MDR team found both on April 25 and at a subsequent meeting that the behavior at issues was a manifestation of AG's disability. Patrick Decl. ¶¶ 40-42.

### 2017-2018 School Year

AG returned to school for the 2017-2018 school year at Success Academy Prospect Heights on August 16, 2017. He was suspended on August 21, 24, and 31, 2017, due to behavioral deficits outlined in his IEP. Within the first few weeks of school, AG was suspended and excluded from school for seven days of instruction and related services including counseling, Speech, and OT. Defendants offered no alternative education or services. *Id.* at ¶¶ 43-45.

6

On September 12, 2017, Defendants called AG's parents and informed them that they had called EMS. AG's father, Gavin, arrived to find his son in an office with school personnel, the police, and EMS workers. The EMS workers checked AG's pulse and heart rate and then they left. *Id.* at ¶ 46. Defendants' staff told Gavin that AG had engaged in dangerous behavior and that he had hit his para and stabbed her in the eye with a pencil, and that the para immediately left the school via EMS. Gavin expressed surprise and told Success Academy, including Defendant Solomon, that he had just seen the para in the hall on his way to the room and that the para looked fine and did not appear to be in distress or in pain. *Id.* at ¶ 47.

On September 13, 2017, Ms. Patrick was informed that AG was not to return to school that day and that he was suspended because of the previous day's behavior. The letter Ms. Patrick received, dated September 13, 2017, stated that, *inter alia,* AG stabbed his para in the eye and the para was immediately transported to the hospital. The letter further stated that AG's behavior inflicted serious bodily injury and extreme physical pain upon the para. Defendants stated that because of this behavior AG should be removed to an Interim Alternative Education Setting (IAES) for twenty (20) days. The letter stated that a hearing had been scheduled to discuss the incident with the parent and determine whether the recommendation was appropriate. This was the first time AG's parents had ever been offered a hearing to determine whether a suspension was appropriate, although AG had already been suspended numerous times. *Id.* at ¶¶ 48-50.

On September 18, 2017, a hearing was held at Success Academy Prospect Heights. Ms. Patrick appeared at the hearing with counsel to dispute the charges. Defendant de Jongh announced that the hearing was going to be "informal" and was only to assess if the twenty (20) day placement to the IAES was appropriate. *Id.* at ¶¶ 51-52. No oaths were taken prior to

7

testimony being offered, and no verbatim record or recording of the hearing was maintained. Bedard Decl. ¶ 31.

The para who was allegedly injured did not attend or testify at the hearing. Patrick Decl. ¶ 54. Defendants' first witness was the teacher, Dorothy Mape, who stated that she had not seen AG stab the para in the eye, but was in the classroom at the time it allegedly happened. She did not testify to seeing the para in extreme pain or to observing any injury. She testified that the para herself called 911 via cell phone after the incident. *Id.* at ¶ 55. Defendant Solomon stated that she entered the room after the alleged incident. *Id.* at ¶ 56. The school offered an index card into evidence that was handwritten and stated "AG stabbed para corner of eye with pencil, pull hair and punched face and chest with two fists." The index card was not dated, made no reference to when the incident happened, and according to Defendants was signed by the para, but written by the teacher. Defendants offered no further witnesses or evidence, and presented no evidence regarding medical treatment or serious injury of any kind. *Id.* at ¶¶ 57-58.

On September 20, 2017, the parent and parent's counsel received the decision by Defendant de Jongh, dated September 19, 2017. It stated that "after careful consideration of the findings described in the document attached, I have determined that the IAES was appropriate. Accordingly, your scholar will remain in the IAES for a total of 20 school days." *Id.* at ¶ 61. Attached to the decision was an "IAES Hearing Findings Sheet" with check boxes. The box for "Inflicted serious bodily injury upon another person:" was checked "yes." "Notes" handwritten directly below stated, "[s]cholar's behavior included punching the paraprofessional with two fists, slapping the paraprofessional in the face, pulling the paraprofessional's hair and either throwing a pencil or using pencil to stab the eye of the paraprofessional. In either case the paraprofessional sustained an injury which required medical care." *Id.* at ¶ 62. Plaintiffs'

8

counsel requested a copy of the transcript of the suspension hearing from Defendants, but no transcript was ever received. Bedard Decl. ¶ 41.

On September 21, 2017, Ms. Patrick filed an Expedited Impartial Hearing Request under the IDEA, Section 504 and other applicable laws. The parent sought immediate reinstatement and compensatory education with related services for the duration of time AG was illegally barred from attending school. The hearing date was set by the Impartial Hearing Office for October 17, 2017 when the suspension would have been fully served, and the Request was subsequently withdrawn without prejudice by the parent. *Id.* at ¶ 42.

On September 26, 2017, an MDR was held regarding the September 12, 2017 incident. Success Academy's staff and counsel, along with Ms. Patrick and her representatives, were present. The teacher made a statement to the MDR team via telephone. She again stated that she did not witness the para being stabbed in the eye with a pencil. She stated she saw the student hit the para. Patrick Decl. ¶¶ 64-65. Success Academy told the MDR team that on the day of the incident, the para was released from the hospital immediately and was treated for a migraine. *Id.* at ¶ 66. The MDR team found that the behavior as alleged in the suspension notice was a manifestation of AG's disability and directed that AG be returned to school immediately. The MDR team noted that the Defendants failed to utilize de-escalation techniques. *Id.* at ¶ 67. Based on the MDR finding, on September 27, 2017, Ms. Patrick took AG to school. Defendants' staff informed her that he was not allowed to attend school and was required to serve his suspension, as he had inflicted serious bodily injury and/or serious bodily harm on the para, regardless of the MDR finding. *Id.* at ¶ 68.

On September 29, 2017, an internal appeal was filed with Defendant Cole, the Success Academy Board Chairperson, from Defendant de Jongh's September 19, 2017 decision. AG

remained out of school during the appeal process, and no response was received until the suspension had been completely served. Bedard Decl. ¶ 47. On October 17, 2017, the internal appeal was decided and the suspension was upheld by Defendant Shainker. Among the reasons that Defendant set forth for upholding the suspension, the decision stated that Success Academy Prospect Heights was not required to comply with New York Education Law § 3214. *Id.* at ¶ 48.

On October 17, 2017, the parent refiled the Impartial Hearing Request that had been withdrawn without prejudice, and a hearing was scheduled and held on November 6, 2017. The Hearing Officer rendered a decision on November 14, 2017. The Hearing Officer found the appropriateness of both the suspension hearing held by Defendants and the suspension to an IAES to be outside his jurisdiction, and found that based on the record, it was highly unlikely that the standard of serious bodily injury was met. *Id.* at ¶¶ 49-50.

On November 17, 2017, an IEP meeting was held. Ms. Patrick and her counsel were in attendance. The CSE team, which included Defendants' educators and school psychologist, viewed four student observations and an independent recommendation from Kings County Hospital developmental clinic. The CSE team decided that AG's placement in an ICT class should be maintained, but that his speech and language delays required one-on-one remediation twice a week with a therapist. The team also agreed a new BIP and FBA would be created. *Id.* at ¶ 51. At the IEP meeting, Defendants' employees stated that they did not agree with the findings of the CSE team that AG could be educated in an ICT class. They stated they were adamantly opposed to the ICT placement, and asked the CSE team to change AG to a smaller setting, which is not offered at Success Academy Prospect Heights. They expressly stated that they did not want AG to remain at the school. *Id.* at ¶ 52.

10

That afternoon, when AG's father picked him up from school, Defendants' employees told the parent that AG would not be allowed to return to school on Monday November 27, 2017. They gave AG's father a letter dated November 17, 2017 stating that they had found a bedbug on AG's clothing and he would be barred from attending school until AG's parents had their home inspected, and if necessary treated, by an exterminator at their own expense and provided proof of such. The letter did not state how Defendants determined that they had found a bedbug, that the bedbug had originated in AG's home rather than at the school itself, or that the school would be inspected for bedbugs. Patrick Decl. ¶ 74. Ms. Patrick examined both of her children who attend Success Academy Prospect Heights and did a thorough search of her home. Her home examination as well as a professional inspection showed no evidence of bedbugs. *Id.* at ¶ 75.

AG continues to be suspended by Defendants for behaviors identified in his IEP, BIP and FBA to date. Bedard Decl. ¶ 58. As of the date of filing, AG has been suspended and excluded from school over twenty-five (25) times for at least seventy (70) days since he began at Success Academy Prospect Heights in October 2016. He has missed over half of this academic school year, and is presently repeating the first grade because of Defendants' relentless removals. As a result of Defendants' actions, AG has become increasingly emotionally distressed. His exclusions have caused him to become isolated from the school community and his friends, and the constant exclusions make transitioning back to school difficult. *Id.,* Patrick Decl. ¶¶ 76-77.

### ARGUMENT

In the Second Circuit, the same standard governs issuance of a temporary restraining order and a preliminary injunction. *Local 1814, Int'l Longshoremen's Ass'n v. New York Shipping Ass'n,* 965 F.2d 1224, 1228-29 (2d Cir. 1992). It is well established that to secure a preliminary injunction, a plaintiff must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a

11

fair ground for litigation and a balance of hardships tipping decidedly toward the party

requesting the preliminary relief." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities*

*Master Fund, Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (citations omitted).  Plaintiff satisfies each

element of this standard.

## I.      PLAINTIFFS WILL SUFFER IRREPARABLE INJURY ABSENT INJUNCTIVE RELIEF.

AG will suffer irreparable injury unless he is afforded injunctive relief.  "[I]rreparable

injury means injury for which a monetary award cannot be adequate compensation." *Jackson*

*Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir. 1979).  "Irreparable harm can be

found where there is a continuing wrong which cannot be adequately redressed by final relief on

the merits. Such harm often resides where money damages cannot provide adequate

compensation." *New York Pathological & X-Ray Laboratories, Inc. v. Immigration &*

*Naturalization Service*, 523 F.2d 79, 81 (2d Cir. 1975).

### A.  Defendants' Repetitive Imposition of Suspensions without Basic Procedural Safeguards Constitutes *Per Se* Irreparable Injury to Plaintiffs.

Defendants' practice of suspending AG from school with no opportunity to be heard or,

at best, a constitutionally inadequate hearing, violates Plaintiffs' right to due process.  "When an

alleged deprivation of a constitutional right is involved, most courts hold that no further showing

of irreparable injury is necessary." *Mitchell v. Cuomo*, 748 F.2d 804, 806, (2d Cir. 1984); *Doe v.*

*Mattingly*, 2006 U.S. Dist. LEXIS 88320, *7-*8 (E.D.N.Y. 2006) (granting preliminary

injunction, finding that child welfare agency's interference with the parent-child relationship

without due process constituted irreparable harm).

In the school suspension context, it is well settled that students facing even short

suspensions have the right to due process. *Goss v. Lopez*, 419 U.S. 565, 576-77 (1975).  In the

12

present case, Defendants have established a pattern of excluding AG from school without regard

to his due process protections, offering no suspension hearing at all, or at best, a seriously flawed

hearing process, bereft of sworn testimony, a verbatim record, findings of material facts, or

meaningful appeal rights.  Given that Plaintiffs have alleged flagrant violations of procedural due

process, they have alleged deprivation of a constitutional right, thus showing irreparable injury.

> **B. Defendants' Repetitive Imposition of Suspensions, Excluding AG from First Grade for a Cumulative Total of at Least 70 Days, Constitutes Irreparable Harm to Plaintiffs.**

Defendants' pattern of repeatedly suspending AG from school without due process, for

periods ranging from one to 45 days, has already substantially harmed AG, a student with a

disability, by causing him to fall behind and repeat first grade.  In *LIH v. New York City Bd. of

Educ.,* 103 F. Supp. 2d 658 (E.D.N.Y. 2000), the court granted a preliminary injunction

preventing the Board of Education from applying new disciplinary procedures to children with

disabilities mandated to attend summer school in order to meet the criteria for promotion to the

next grade.  As the new policy did not comport with the due process protections required by

IDEA, the court found that the resultant harms created a substantial likelihood of irreparable

injury.  *Id.,* 103 F. Supp. 2d at 665.  The court reasoned that erroneous suspension of students

with disabilities:

> will result in the failure of such students to be promoted to the next grade when
> the school year begins in September. Should disabled students be erroneously
> excluded from [] school and forced to repeat their prior grade, the harm they will
> suffer will be irreparable. No level of monetary damages could possibly
> compensate these students for the educational opportunities they will lose.

*Id.*, *citing Goss v. Lopez*, 419 U.S. at 581 n.10.  In this case, Plaintiffs have illustrated that

Defendants' systematic denial of AG's educational rights has already resulted in loss of

promotion.  Should Defendants be permitted to continue this pattern of excluding AG and

13

impeding his ability to progress in school, AG will suffer further immediate and irreparable harm.

II.    **PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR CLAIMS THAT DEFENDANTS HAVE REPEATEDLY EXCLUDED AG FROM SCHOOL IN VIOLATION OF THE U.S. AND NEW YORK CONSTITUTIONS, IDEA, ADA, THE REHABILITATION ACT, AND THE NEW YORK EDUCATION LAW.**

A.    **Defendants' Pattern and Practice of Imposing Long-Term Suspensions Without Basic Procedural Safeguards Violates Plaintiffs' Due Process Rights.**

Plaintiffs are likely to succeed on the merits of their due process claims.  In alleging a violation of procedural due process, a plaintiff must plead facts sufficient to give rise to a claim that he was deprived of property without constitutionally adequate pre- or post-deprivation process.  *Ahlers v. Rabinowitz*, 684 F.3d 53, 62 (2d Cir. 2012).  To do so, "a plaintiff must 'first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process.'"  *J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013) (*quoting Local 342, Long Island Pub. Serv. Emps. v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994)).  Plaintiffs easily meet each element of this standard.

1. **AG Has a Property Interest in his Education.**

Plaintiff AG has a protected property interest in his education.  "The hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'"  *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430 (1982), *quoting Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11-12 (1978); *Goss v. Lopez*, 419 U.S. 565, 573-574 (1975).

The New York Constitution requires the State to provide children with a free public education.  N.Y. Const. Art. XI, § 1; *see also* N.Y. Educ. Law §§ 3202, 3205.  The Second Circuit has recognized that State law creates a right to a free public education for individuals

14

under the age of twenty-one. *Handberry v. Thompson,* 446 F.3d 335, 353 (2d Cir. 2006). Thus, in New York, a student has a protected property interest in his education and cannot be deprived of that right without due process of law. *Kajoshaj v. N.Y.City Dep't of Educ.,* 543 Fed. Appx. 11, 16 (2d Cir. 2013). As a seven-year-old student who resides in New York, AG therefore has a protected property interest in his education.

### 2. Defendants Have Deprived Plaintiff of his Education without Due Process.

#### i. Defendants Suspended AG from School for 45 Days During the 2016-17 School Year without a Hearing of any Kind.

Defendants violated Plaintiffs' due process rights by determining to suspend AG from school and remove him to an Interim Alternative Educational Setting ("IAES") for 45 days without a hearing. It is well established that under the U.S. Constitution, schools seeking to impose even short suspensions must, at a minimum, provide notice and an opportunity to be heard. *Goss v. Lopez,* 419 U.S. 565, 579 (1975). Where, as here, a longer suspension is at issue, greater process may be required. *Id.,* 419 U.S. at 584; *Edwards v. Ctr. Moriches Union Free Sch. Dist.,* 898 F. Supp. 2d 516, 542-543 (E.D.N.Y. 2012); *DeFabio v. E. Hampton Union Free Sch. Dist.,* 658 F. Supp. 2d 461, 487-489 (E.D.N.Y. 2009). Moreover, under New York law, no student may be suspended for more than five days unless the school has obtained superintendent approval, and the student and parent have been afforded reasonable notice and an opportunity for a hearing. N.Y. Educ. Law § 3214(3)(c)(1). At any such hearing, a student has the right, *inter alia*, to representation by counsel, to present and question witnesses, and to appeal the decision. *Id.*

While in general, a child with a disability may not be suspended for more than ten days when the behavior giving rise to the suspension has been determined to be a manifestation of the

15

disability, such child may be removed to an IAES for up to 45 days where the behavior falls under the "Special Circumstance" exception, without regard to whether the behavior is a manifestation of the student's disability.  20 U.S.C. § 1415(k)(1)(G); 34 C.F.R. § 300.530; N.Y. Educ. Law §3214(3)(g)(3)(iv); 8 N.Y.C.R.R. § 201.7.  The Special Circumstance provision is expressly limited to behavior involving weapons, illegal drugs, or infliction of serious bodily injury.  20 U.S.C. § 1415(k)(1)(G).  Pursuant to 8 N.Y.C.R.R. § 201.7(e), such change in placement may be ordered by "[a] superintendent of schools, either directly or upon recommendation of a hearing officer designated to conduct a superintendent's hearing pursuant to Education Law, section 3214(3)(c)."

Where the superintendent or designated hearing officer is considering a change in placement to an IAES for a child with a disability, "*upon a determination that the student is guilty* of the alleged misconduct relating to serious bodily injury, weapons, illegal drugs or controlled substances," the superintendent of schools may order, or the hearing officer in the superintendent's hearing may recommend, such change in placement for up to 45 school days even where the manifestation team determines that the student's behavior is a manifestation of the student's disability." 8 N.Y.C.R.R. § 201.9(c)(3) (emphasis added).  Thus, New York law and regulations precisely implement and track the procedural safeguards established under IDEA, consistent with the guidelines set forth in *Goss v. Lopez*.

Here, no superintendent's hearing was held, and no proper findings made on either guilt or penalty, in violation of federal and New York law.  Defendants failed to offer even a semblance of the process due to all public school students.  Plaintiff AG was excluded from school for 26 days following the date of the alleged behavior, and the maximum penalty imposed, although no suspension hearing of any kind was held or offered by Defendants.

16

ii.     **The Suspension Hearing Held by Defendants in the 2017-18 School Year Failed Entirely to Provide Due Process to Plaintiffs.**

Defendants violated Plaintiff's due process rights by again removing him to an IAES for 20 days without providing a fair and adequate suspension hearing to determine whether the student had engaged in the alleged misconduct.  As set forth above, while a student facing even a brief suspension has a right to notice and an opportunity to be heard, a proposed suspension of this length calls for more formal procedures.  *Goss v. Lopez,* 419 U.S. at 579, 584; *see also Edwards v. Ctr. Moriches Union Free Sch. Dist.,* 898 F. Supp. 2d at 542-543 (finding adequate hearing process where evidence included sworn testimony, and hearings were held before an experienced independent hearing officer who issued a report detailing findings of fact and recommendations, which were adopted by the superintendent).  Here, while in contrast to their previous practice, Defendants at least conducted what they termed a hearing concerning this most recent lengthy suspension, the administrative process provided failed to comport with the procedural safeguards required by federal and New York law.

As noted above, New York Education Law § 3214(3)(c) delineates the due process protections afforded to students facing suspensions of more than five days, including the right to cross-examine witnesses against the student and maintenance of a hearing record.  Pursuant to the statute, a disciplinary hearing must be held before a superintendent or designated hearing officer authorized to administer oaths, who provides a report to the superintendent including findings of fact and recommendations as to discipline.  The superintendent then determines whether to adopt any of the report and issues a decision.  *Id.; see Ross v. Disare,* 500 F. Supp. 928, 934 (S.D.N.Y. 1977) (finding plaintiffs had sufficiently established probable success on the merits to warrant a preliminary injunction based on violations of due process rights and N.Y. Educ. Law § 3214, where defendant schools suspended students without providing several

17

hallmarks of an adequate opportunity to be heard, including maintaining a verbatim record and the opportunity to question adverse witnesses).

In the instant case, Defendants did not maintain a verbatim record, no oaths were taken prior to testimony being offered, and Defendants failed to produce any witness to the alleged behavior who could be questioned. Instead, Defendants provided a purported "Findings Sheet," which was no more than a form apparently completed after the hearing by Defendant deJongh, Managing Director of Schools for Success Academy, who also served as hearing officer during the hearing. Neither the Findings Sheet nor the purported "Decision" makes any credibility findings. Neither document articulates any evidentiary findings or identifies any specific testimony or other evidence to justify the form decision, which consists of a series of checkboxes and a few handwritten "notes." The form merely includes a preprinted statement with a series of checkboxes, one of which, "Inflicted serious bodily injury upon another person" has been checked "YES." *See* Patrick Decl. ¶¶ 53-62, Ex. 7, 8.

Indeed, without a record documenting the questions asked and responses provided, there is no basis on which to determine the facts, evaluate witness credibility, assess the accuracy and relevance of testimony, or evaluate the conduct of the hearing. Such a deficient record does not permit an analysis of whether even the scant "findings" checked off are supported by the facts, much less any kind of meaningful judicial review. Accordingly, as Defendants excluded AG from school for 20 days without an adequate opportunity to be heard, Plaintiffs' due process rights have been violated.

**B. Plaintiffs are Likely to Succeed on the Claim that Defendants Violated IDEA and New York Law by Imposing Two Lengthy Suspensions Despite Their Failure to Allege or Prove Conduct Meeting the Legal Definition of "Special Circumstances."**

18

The alleged behavior on which Defendants have based these efforts to exclude Plaintiff from school fails to meet the legal definition of "special circumstances" justifying unusually severe suspensions of up to 45 days. The suspension notices issued by Defendant dated February 24, 2017 and September 13, 2017 each reference 20 U.S.C. § 1415 (k)(1)(G) and 34 C.F.R. § 300.530(g), which authorize school personnel to remove a student to an IAES for up to 45 days under "Special circumstances" without regard to whether the behavior is determined to be a manifestation of the child's disability. As discussed above, the statute provides only three specific bases that constitute special circumstances: where a child with a disability (i) carries or possesses a weapon to or at school or a school function; (ii) knowingly possesses, uses, or sells illegal drugs while at school or at a school function; or (iii) has inflicted "serious bodily injury" upon another person while at school or at a school function. 20 U.S.C. § 1415 (k)(1)(G). These expressly limited and inherently dangerous situations are the *only* circumstances that permit school personnel to remove a child from school for up to 45 days regardless of whether a student's behavior is a manifestation of disability. Nevertheless, Defendants have repeatedly chosen to apply this provision improperly and in violation of the law.

The allegations made and the findings sustained against Plaintiff AG, a seven-year-old first grade student, entirely fail to rise to the level of serious bodily injury as defined under IDEA. Even assuming *arguendo* that the actions alleged in the February 24, 2017 and September 13, 2017 letters could be taken by a seven-year-old, which is highly improbable at best, the alleged behavior fails to meet the legal definition of serious bodily injury. 20 U.S.C. § 1415(k)(7)(D) provides that the term "serious bodily injury" has the meaning provided under 18 U.S.C. § 1365(h)(3), which defines the term to mean "bodily injury which involves – (A) a substantial risk of death; (B) extreme physical pain; (C) protracted and obvious disfigurement; or

19

(D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty."
*Accord* 8 N.Y.C.R.R. § 210.2(m).

Under the law, serious bodily injury is an extremely high standard. *See, e.g., U.S. v. Alexander*, 447 F.3d 1290 (10th Cir. 2006), *cert. denied* 549 U.S. 933 (finding sufficient evidence to support defendant's conviction for assault resulting in "serious bodily injury" where victim, upon his arrival at hospital, was deemed in serious condition, experienced severe pain both immediately after attack and at hospital, lost copious amounts of blood, suffered multiple, severe lacerations, including one measuring two and one-half inches in length, which all required medical staples to repair, experienced dizziness for several days following attack, and was hospitalized for two days in order for doctors to monitor whether attack caused any swelling within his brain); *U. S. v. Lowe*, 145 F.3d 45 (1st Cir. 1998) (affirming that continuing psychological trauma suffered by rape victim constitutes serious bodily injury under the statute); *U.S. v. Mermelstein,* 487 F. Supp. 2d 242 (E.D.N.Y. 2007) (adopting Magistrate Judge's recommendation that, where alleged victim's injuries were limited to excessive tearing of the eyes and protracted blurry vision, prosecution be precluded from attempting to prove serious bodily injury at trial unless prosecution could proffer evidence that could lead a reasonable juror to find serious bodily injury as defined in 18 U.S.C. § 1365(h)(3)). Nothing in either IDEA or the New York Education Law permits Defendants to expand the statutory definition of serious bodily injury beyond the clear standard articulated in 18 U.S.C. § 1365(h)(3). Yet this is exactly what Defendants have done.

With respect to the February 24, 2017 allegations, due to Defendants' failure to offer or conduct a suspension hearing, not only were Plaintiffs denied due process, but no factual findings were or could have been made. Even so, the Impartial Hearing Officer reviewing

20

Defendants' removal of AG to an IAES found that the allegations in themselves did not rise to the level of serious bodily injury as defined by law.  Ex. 5.  Similarly, while Defendants conducted a hearing regarding the September 12, 2017 allegations, the hearing was compromised by multiple procedural inadequacies, including the lack of any competent record of the proceedings.  Defendants offered no testimony from any witness who directly observed the alleged infliction of "serious bodily injury," and no medical evidence whatsoever.  Patrick Decl. ¶¶ 53-59.  Nor were any evidentiary or credibility findings articulated in the decision.  Thus, Defendants failed to demonstrate behavior meeting the statutory definition of serious bodily injury in violation of IDEA and the New York Education Law.

### C. Plaintiffs are Likely to Succeed on the Claims that by Excluding AG from School, Defendants have Discriminated Against him in Violation of § 504 of the Rehabilitation Act, the Americans With Disabilities Act, and the New York Education Law.

Defendants' pattern of inappropriately removing AG from his regular school setting, placing him with EMS rather than providing appropriate support and services in the school, and improperly alleging special circumstances to justify excessive suspensions without evidence of any corresponding conduct or occurrence meeting the statutory definition of special circumstances, constitutes discrimination against Plaintiff AG based on disability in violation of the ADA, the Rehab Act, IDEA, and the New York Education Law.

Section 504 of the Rehabilitation Act of 1973 ("Section 504") prohibits discrimination on the basis of disability in programs receiving federal financial assistance.  29 U.S.C. §701 *et seq.* Section 504 mandates that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. §794.  Recipients of federal funds who operate elementary or secondary

21

schools must "provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction" and "may not exclude any qualified handicapped person from a public elementary or secondary education." 34 C.F.R. §§ 104.33(a), (d).

Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12131 *et seq.*, prohibits discrimination based upon disability by public entities. Under 42 U.S.C. §12132, it is unlawful for a qualified individual with a disability, by reason of such disability, to be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 28 C.F.R. §35.130(b)(3) bars public entities from utilizing methods of administration that "have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability." In New York, the Dignity for All Students Act ("DASA") prohibits harassment and discrimination by school employees or students against any student based on, *inter alia*, actual or perceived disability. N.Y. Educ. Law § 12.

Plaintiff AG meets the definition of a person with a disability under federal and state law. The definition of "individual with a disability" for the purposes of Section 504 is cross-referenced to the definition found in the ADA: an individual with a disability is a person with a physical or mental impairment that substantially limits one or more major life activities of such individual; with a record of such an impairment; or who is regarded as having such an impairment. 42 U.S.C. §12102(1). Under the ADA, the term "qualified individual with a disability" is further defined as an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities

provided by a public entity. 42 U.S.C. §12131(2). New York defines disability as a physical, mental, or medical impairment; a record of such impairment; or a condition regarded by others as such an impairment. N.Y. Exec. Law § 292(21). Plaintiff AG has been determined to be a person with a disability that affects his learning and behavior as outlined in his IEP.

Defendants' pattern of conduct resulting in AG's exclusion from school for at least 70 days over the last year constitutes discrimination based on disability. A Section 504 claim may be predicated on a claim that a student with a disability has been denied access to a free appropriate public education, provided that the plaintiff can demonstrate that the school acted with bad faith or gross misjudgment. *C.L. v. Scarsdale Union Free Sch. Dist.,* 744 F.3d 826, 841 (2d Cir. 2014). By suspending and EMSing AG for the very behavior caused by his disability, which behavior is clearly indicated in his IEP; denying Plaintiffs the most fundamental procedural safeguards; and improperly invoking the Special Circumstance provision of the IDEA to circumvent the certain finding that AG's behavior is a manifestation of his disability, Defendants have surely shown bad faith or, at best, gross misjudgment. By engaging in a pattern of harassment against Plaintiffs designed to exclude AG from school due to his disabling condition, Defendants have violated Section 504, the ADA, and DASA.

Accordingly, Plaintiffs have shown sufficient likelihood of success on the merits of their discrimination claims to support the issuance of a preliminary injunction to prevent Defendants from depriving AG of his right to an education.

## III. ALTERNATIVELY, PLAINTIFFS HAVE ESTABLISHED SERIOUS QUESTIONS GOING TO THE MERITS OF THE CLAIMS AND THE BALANCE OF THE EQUITIES TIPS IN THEIR FAVOR.

The foregoing demonstrates that Plaintiffs are threatened with irreparable harm and are likely to prevail on the merits. However, even if this were not the case, Plaintiffs have presented

23

sufficiently serious questions as to the merits to make them fair ground for litigation, and the balance of hardships which would result from granting injunctive relief tips decidedly in Plaintiffs' favor. *See Jackson Dairy, Inc.v. Hood*, 596 F.2d at 72.

Plaintiffs have demonstrated that serious questions go to the merits of the claims that Defendants have deprived AG of his right to an education in violation of the Constitution, IDEA, and the New York Education Law; and have discriminated against him in violation of Section 504, ADA, and DASA. Defendants' imposition of repeated suspensions has already resulted in excluding AG from school for at least 70 days over the last year, causing him to repeat first grade. If allowed to continue, this pattern of harassment will result in further exclusion, compounding the trauma already experienced by AG and impairing his ability to progress in school.

The balance of hardships decidedly tips in favor of AG and his parents. If the preliminary injunction is granted, AG will be able to attend school and participate in first grade without fear of being subjected to further punishment, trauma, and exclusion due to behavior caused by his disability. Any harm to Defendants that may result from an injunction preventing further flouting of their legal requirements to provide a free appropriate education and due process is minimal in comparison to the irreparable harm that will come to AG if his education is further interrupted.

Defendants have no cognizable interest in refusing to provide the procedural safeguards and appropriate services mandated by law. *See Board of Educ. v. F.C. ex rel. R.C.,* 2 F. Supp. 2d 637, 645 (Dist. N.J. 1998) (strong public interest in enforcement of administrative orders and ensuring school district's compliance with its duty to provide a free appropriate education to disabled students outweighs district's budgetary concerns regarding provision of educational

services directed by hearing officer); *see also LIH v. New York City Bd. of Educ.,* 103 F. Supp. 2d at 671 (logistical problems posed by compliance with IDEA during the summer are insufficient to relieve the Board of its statutory duties; were the court to hold otherwise, "the entire framework of IDEA could be eviscerated by an 'administrative convenience' argument."). Accordingly, Plaintiffs have established serious questions going to the merits of their claims and that the balance of the equities tips decidedly in favor of granting injunctive relief.

IV. **PLAINTIFFS SHOULD BE RELIEVED OF THE REQUIREMENTS OF FRCP 65 (C) BECAUSE THEY ARE INDIGENT, AND DEFENDANTS CAN SHOW NO HARM FROM WAIVER OF THE SECURITY REQUIREMENT.**

As a low-income family, Plaintiffs should be relieved of the requirements of Federal Rules of Civil Procedure 65(c). Rule 65(c) provides, in relevant part, that "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."

However, the Second Circuit leaves to the trial court's discretion not just the amount of the bond, but the question of whether to require a bond at all. "The amount of security required is a matter for the discretion of the trial court; it may elect to require no security at all." *Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1356 (2d Cir. 1974); *see also Doctor's Assocs. v. Stuart,* 85 F.3d 975, 985 (2d Cir. 1996) (District Court properly dispensed with bond where there was no proof of likelihood of harm to defendants absent the posting of a bond).

This Court has treated a plaintiff's poverty as reason to require a nominal bond or none at all. *See, e.g., Rivera v. Town of Huntington Hous. Auth.,* 2012 U.S. Dist. LEXIS 74267 at *20-21 (E.D.N.Y. May 29, 2012); *Lopez v. Delta Funding Corp.*, 1998 U.S. Dist. LEXIS 23318 at *51 (E.D.N.Y. Dec. 23, 1998). Here, Plaintiffs are a low-income family who qualify for free representation by Brooklyn Legal Services. Patrick Decl. ¶ 79. Moreover, this case involves the

25

enforcement of public interests arising out of federal health and welfare statutes. *See LIH v. New York City Bd. of Educ.,* 103 F. Supp. 2d at 671. Accordingly, this Court should exercise its discretion and waive the requirement of FRCP 65(c).

## V.  EXHAUSTION OF ADMINISTRATIVE REMEDIES WOULD BE FUTILE IN THIS CASE.

Plaintiffs have filed and completed Impartial Hearings on both the illegal 45 day and 20 day suspensions imposed on AG, and his placements to an IAES. Defendants are not a party to the Impartial Hearing process. 20 U.S.C. §§ 1415(f)(1)(A), (g)(1), (k)(3). In both cases the Impartial Hearing officer declined to extend jurisdiction over the suspension hearings and IAES placements by Defendants, as it was outside of his authority. Patrick Decl. ¶¶ 29-31, 72.

The Second Circuit has held that "[t]he exhaustion requirement is excused when exhaustion would be futile because the administrative procedures do not provide an adequate remedy." *Cave v. East Meadow Union Free School Dist.*, 514 F.3d 240, 249 (2d Cir. 2008) (*citing Honig v. Doe*, 484 U.S. 305 (1988)). In this case the exhaustion requirement should be excused, as exhaustion would be futile. The available administrative procedures do not provide any remedy, let alone an adequate remedy against Success Academy Charter Schools. The Defendants are not the New York City school district, and the wrongs alleged by Plaintiffs could not and would not have been corrected by resort to the administrative process. In this case, the Plaintiffs filed an Impartial Hearing in February, 2017 and received a favorable decision from the hearing officer against the New York City Department of Education, yet the Defendants disregarded such decision and repeated their behavior in September, 2017.

Further, Plaintiffs allege that Defendants have engaged in systemic violations against all of their students in student placement, suspension and transfers. Defendants have not only exhibited a pattern and practice of violating Plaintiffs' federal and state constitutional and

26

statutory rights, but have also stated that Success Academy Prospect Heights is not obligated to abide by New York Education Law § 3214. This systemic violation has not and could not be remedied by local or state administrative agencies because the framework and procedure of the Impartial Hearing process does not extend itself to Defendants at this time. While administrative hearing officers have the authority to enforce established regulations, policies and procedures, they generally do not have the authority to set new policies or to alter existing ones. *King v. Pine Plains Cent. Sch. Dist.*, 918 F.Supp. 772, 781 (S.D.N.Y.1986). Accordingly, requiring a parent to exhaust their administrative remedies when they are challenging a generally applicable policy or procedure such as the practice at issue here would be futile.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction should be granted.

Dated: November 21, 2017
       Brooklyn, NY

Respectfully submitted,


BROOKLYN LEGAL SERVICES
Nancy Bedard (NB    )
Sarah E. Dranoff (SD 0870)
105 Court Street, 4th Floor
Brooklyn, NY 11201
Attorneys for Plaintiffs
(718) 237-5500

By:     Nancy Bedard
        NANCY BEDARD (NB1980)


27