UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                    :
KIM PATRICK, and AG, a minor, by and through        :
his Parent and Next Friend, KIM PATRICK,            :
                                                    :
                          Plaintiffs,               :   Civil Action No. 17-6846-PKC-RML
          -against-                                 :
                                                    :
SUCCESS ACADEMY CHARTER SCHOOLS,                    :
INC.; SUCCESS ACADEMY PROSPECT                      :
HEIGHTS; SYDNEY SOLOMON in her individual :
and official capacity as Principal of Success       :
Academy Prospect Heights; LAMAE DE JONGH,           :
in her individual and official capacity as Managing :
Director of Schools, Success Academy Charter        :
Schools; SAMUEL COLE, in his individual and         :
official capacity as Board Chairperson, Success     :
Academy Charter Schools-NYC Board of Trustees; :
and CATHERINE SHAINKER, in her individual           :
and official capacity as Board Member, Success      :
Academy Charter Schools-NYC Board of Trustees, :
                                                    :
                          Defendants.               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW IN SUPPORT OF SUCCESS ACADEMY'S**
**OPPOSITION TO PLAINTIFFS' PRELIMINARY INJUNCTION MOTION**


Vanessa M. Biondo
Christopher N. LaVigne
Aaron M. Safane
95 Pine Street, Floor 6
New York, NY 10005

*Attorneys for Success Defendants*

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...................................................................iii

**PRELIMINARY STATEMENT** ........................................... 1

**BACKGROUND** ............................................................ 4

  **I.  FACTS** ............................................................... 4

    A.  Suspensions and Out of School Placements........................ 5

    1. Suspensions for 10 or Less Cumulative Days……………..…............……5

    2. Suspensions in Excess of 10 Cumulative Days………..……….......……5

    3. IAES Placements…………………..…………….….…..………..…..6

    B.  AG's Troubled History and Success' Attempts to Support AG and His Family
    **Error! Bookmark not defined.**

**ARGUMENT** ............................................................... 10

  **I.  AN INJUNCTION IS AN EXTRAORDINARY REMEDY THAT IS NOT
  WARRANTED AS PLAINTIFFS HAVE NOT SHOWN ANY IRREPARABLE
  INJURY** ................................................................. 10

    A.  Plaintiffs' Alleged Past Harms Do Not Constitute a Likelihood of Irreparable
    Injury .................................................................. 11

    B.  No "Obey-The-Law" Injunction Should Be Issued Here Because Success Will
    Not Engage in the Conduct Plaintiffs' Seek to Enjoin ............................ 12

    1. AG Will Not Be Suspended For More Than 10 Days Without Notice and a
    Hearing…………………………………………………………………...12

    2. AG Will Not Be Placed in an IAES Without Presenting Plaintiffs With Proof
    and an Opportunity to Contest That Proof…………………….…………………13

    3. No Injunction is Needed to Hold Success Accountable for Any Violation of
    Federal and State Discrimination Laws…………………………………………15

  **II.  NO INJUNCTION IS WARRANTED BECAUSE PLAINTIFFS HAVE NOT
  ESTABLISHED A LIKELIHOOD OF SUCCESS ON THE MERITS** ................ 16

    A.  Plaintiffs' Due Process Claims Should Be Dismissed...................... 16

i

1. Education Law § 3214 Does Not Apply to Charter Schools………..……........17

2. The Allegations in the Complaint and Plaintiffs' Own Admissions Establish the Requisite Due Process Was Provided……………………………………..18

3. Plaintiffs Have Not Adequately Pleaded a *Monell* Claim...………………..……23

B.   Plaintiffs Are Not Likely to Succeed on Their Claim that Success Violated the IDEA and New York Law by Placing AG in an IAES Without Evidence AG Caused "Serious Bodily Injury" ......................................................................................... 24

C.   Plaintiffs' Claims Against the Individual Defendants Should be Dismissed..... 24

D.   Plaintiffs' New York Claims Must be Dismissed Because Plaintiffs Failed to Serve Success With Notices of Claim...……………………………………..........25

## TABLE OF AUTHORITIES

**CASES**

<u>A.M. ex rel. J.M. v. NYC Dep't of Educ.</u>, 840 F. Supp. 2d 660 (E.D.N.Y. 2012) ........... 24

<u>Augustus v. Sch. Bd. of Escambia Cty.</u>, 507 F.2d 152 (5th Cir. 1975) ........................... 15

<u>Bogle-Assegai v. Bloomfield Bd. of Educ.</u>, 467 F. Supp. 2d 236 (D. Conn. 2006) ......... 22

<u>Cooke v. U.S. Bank Nat'l Assoc.</u>, No. 17-CV-1393(KAM)(RER), 2017 WL 4334084
    (E.D.N.Y. July 10, 2017) ............................................................................................... 10

<u>D.A. v. Houston Independent School Dist.</u>, 716 F. Supp. 2d 603 (S.D. Tex. 2009) ........ 24

<u>DeFabio v. E. Hampton Union Free Sch. Dist.</u>, 658 F. Supp. 2d 461
    (E.D.N.Y. 2009) ................................................................................................... 20, 22

<u>Frank v. Sachem Sch. Dist.</u>, 84 F. Supp. 3d 172 (E.D.N.Y. 2015), <u>aff'd</u>, 633 F. App'x 14
    (2d Cir. 2016) ........................................................................................................... 7

<u>Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn</u>, 280 F.3d 98 (2d Cir. 2001) ......... 24

<u>Glass v. Mayas</u>, 984 F.2d 55 (2d Cir. 1993) ..................................................................... 16

<u>Goss v. Lopez</u>, 419 U.S. 565 (1975) ...................................................................... 5,6,14,19

<u>Herrick v. Grindr, LLC</u>, No. 17-CV-932 (VEC), 2017 WL 744605
    (S.D.N.Y. Feb. 24, 2017) ....................................................................................... 16

<u>Int'l Bhd. of Elec. Workers, AFL-CIO, Local Union No. 3 v. Charter Commc'ns, Inc.</u>, No.
    17-CV-5357, 2017 WL 4280591 (E.D.N.Y. Sept. 25, 2017) ...................................... 11

<u>Jefferson v. Soe</u>, No. 17-CV-3273(JS)(AYS), 2017 WL 2881138
    (E.D.N.Y. July 6, 2017) ...................................................................................... 11, 12

<u>JSG Trading Corp. v. Tray-Wrap, Inc.</u>, 917 F.2d 75 (2d Cir. 1990) ................................ 10

<u>Looney v. Black</u>, 702 F.3d 701 (2d Cir. 2012) .................................................................. 18

<u>Lopez v. Bay Shore Union Free Sch. Dist.</u>, 668 F. Supp. 2d 406 (E.D.N.Y. 2009) ......... 18

<u>McMillian v. Walters</u>, No. 916CV0277MADDEP, 2017 WL 2688228
    (N.D.N.Y. June 22, 2017) ................................................................................... 11, 12

Monell v. Dep't of Social Servs., 436 U.S. 658 (1978) ................................................ 23

N.L.R.B. v. Express Publ'g Co., 312 U.S. 426 (1941) ................................................ 11

Rodriguez v. Int'l Leadership Charter Sch., No. 08 CIV. 1012 (PAC), 2009 WL 860622
 (S.D.N.Y. Mar. 30, 2009) ................................................................................... 25

Roe v. City of Waterbury, 542 F.3d 31 (2d Cir. 2008) ................................................ 23

Rosa R. v. Connelly, 889 F.2d 435 (2d Cir. 1989) ..................................................... 19

Ross v. Disare 500 F. Supp. 928 (S.D.N.Y. 1977) ..................................................... 18

Rowe v. New York State Div. of the Budget, No. 1:11-CV-1150 LEK/DRH, 2012 WL
 4092856 (N.D.N.Y. Sept. 17, 2012) ..................................................................... 16

S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232 (2d Cir. 2001) ........................... 12

Santos v. New York City, 847 F. Supp. 2d 573 (S.D.N.Y. 2012) .................................... 23

Scrocca v. Alton Police Dep't, 2009 WL 2246753, n.10 (D.N.H. 2009) ........................ 19

U.S. v. Alexander, 447 F.3d 1290 (10th Cir. 2006) .................................................... 24

U.S. v. Lowe, 145 F.3d 45 (1st Cir. 1998) ................................................................ 24

U.S. v. Mermelstein, 487 F. Supp.2d 242 (E.D.N.Y. 2007) .......................................... 24

**STATUTES**

§ 504 of the Rehabilitation Act (29 U.S.C. § 794) ..................................................... 24

18 U.S.C. § 1365(h)(3) ...................................................................................... 24

20 U.S.C. § 1415(k)(1) ............................................................... 6, 7, 13, 14, 15

34 C.F.R. § 300.151 ........................................................................................... 7

34 C.F.R. § 300.153 ........................................................................................... 7

34 C.F.R. § 300.530(i)(3) ................................................................................ 6, 24

34 C.F.R. § 300.533 ........................................................................................... 7

42 U.S.C. § 1983 .............................................................................................. 23

8 N.Y.C.R.R. § 200.5(l) .................................................................................................... 7

8 N.Y.C.R.R. § 201.10(d) ................................................................................................. 7

8 N.Y.C.R.R. § 201.11(c) ................................................................................................. 7

8 N.Y.C.R.R. § 201.4 .............................................................................................. 5, 6, 20

8 N.Y.C.R.R. § 201.7(e) ............................................................................................. 6, 13

N.Y. Const. Art. XI, § 1 .................................................................................................. 18

N.Y. Educ. L. § 2853(1)(c) ............................................................................................. 23

N.Y. Educ. L. § 3813(1)-(2) ........................................................................................... 25

N.Y. Educ. Law § 2854(b) ......................................................................................... 16, 17

**OTHER AUTHORITIES**

Appeal of a Student Expected of Having a Disability,
    Comm'r's Decision No. 16,063 (May 10, 2010)…………………………….......24

Appeal of V.E., Comm'r's Decision No. 14,985, (Nov. 19, 2003)...................................7

## PRELIMINARY STATEMENT

Success Academy Charter Schools serves over 15,000 students across New York City and is among the highest-performing schools in New York State.  Success is legally responsible for the safety of its students, and therefore places tremendous importance on mutual respect and safety and has a zero-tolerance approach when it comes to violent or dangerous behavior.

This case is certainly an unfortunate situation for all parties involved, but it is not one that necessitates or warrants a preliminary injunction.  AG is currently a first grader at Success Academy Prospect Heights.  He suffers from a blood disorder and is prone to sudden and frequent fits of violence.  These fits have posed a serious risk to AG and those around him, and have resulted in actual physical harm to both his classmates and supervising adults, two of whom went to emergency care facilities following these incidents.  AG's violent tantrums have been so extreme that 5 of his paraprofessional assistants and 4 of his teachers and other school personnel have quit or have been reassigned away from AG.

Success has worked to accommodate AG through a variety of creative solutions, including providing AG incentive-based behavior plans and choices when faced with activities that appear to trigger his outbursts, with the hope of providing AG the highest level of support.  At the height of AG's behavioral problems, Success developed an individualized, "alternative schedule" for AG, which involved intensive support from 2-3 adults at all times (including a paraprofessional and a special education expert), and 1-on-1 instruction in lieu of timed and group work.  The reality, however, is that this intensive assistance was an unsustainable temporary solution to get AG safely through the end of

the 2016-17 school year.  Plaintiffs recognized this.  Near the end of that school year, Plaintiffs' lawyer wrote a letter to the New York City Department of Education ("DOE") seeking "a placement for [AG] at a Non-Public School that can appropriately address his academic, social, and behavioral needs."  Solomon Decl. ¶ 36, Exh. 25.[1]

AG's outbursts and violence have forced AG's teachers and administrators to make judgment calls to protect the safety of AG, his fellow students, and teachers.  The result is that with some frequency, AG has been removed from school.  Those removals have involved calling AG's mother to pick him up from school, calling EMS to help in extreme situations where his violent behavior cannot be controlled by school staff, suspending AG, and placing him on two occasions in an Interim Alternative Educational Setting ("IAES").  All of this has been done in accordance with the law.

Plaintiffs claim they received no due process.  They seek to enjoin Success from (1) suspending AG for more than 10 days without a fair and impartial hearing, (2) placing AG in an IAES without sufficient proof, and (3) continuing to discriminate against AG. The truth is, however, that there are already processes in place to ensure Plaintiffs receive the very relief they are seeking.  Granting this injunction would impose on Success an "obey the law" injunction, which is seriously disfavored in this Circuit and is wholly unnecessary here.

*First*, there is a clearly delineated process, governed by New York regulations and implemented by the New York City Department of Education, ensuring that in every instance where a Success student with a disability is suspended in excess of 10 days, a Manifestation Determination Review ("MDR") is conducted by the DOE, and the student

---

[1] References to the "Solomon Decl." are to the declaration of Sydney Solomon accompanying Success

remains in school until the DOE determines whether the student should serve the suspension. The MDR is attended by the plaintiffs, their lawyers, knowledgeable staff from the student's school, and DOE personnel.  This hearing process has occurred in every instance Success sought to suspend AG in excess of 10 cumulative days.  As AG has already served 10 suspension days this year, he is entitled to and will continue to receive an MDR before serving any subsequent suspensions for the same pattern of behavior.  If the MDR determines the future misconduct is a manifestation of AG's disability, he will not serve the suspension at all.

*Second*, Success has not and will not place AG in an IAES without presenting proof of AG's actions and providing Plaintiffs with full hearing and appeal rights through which to address that proof.  Schools have a legal right to place a student in an IAES when a student, among other things, causes serious bodily injury.  Indeed, the Supreme Court has recognized the right of schools to immediately remove a student that poses a danger to others or threatens to disrupt the academic process.  Enjoining Success from placing AG in an IAES "for alleged infliction of serious bodily injury without sufficient proof" will effectively ban Success from exercising these rights.  Plaintiffs' real complaint is one of due process, and they receive it. AG has twice been placed in an IAES, both times for violently attacking school personnel.  AG's first IAES placement -- for punching his paraprofessional and dragging her to the ground by her hair -- was preceded by notice to AG's parents that offered Plaintiffs the opportunity to discuss the incident.  AG's parents chose instead to appeal the IAES placement, as is their right, through the DOE's impartial hearing process.  The DOE-appointed impartial hearing officer ("IHO") concluded that the notice provided to AG's parents did not comport with

due process, and AG was reinstated before serving the full term of his IAES placement. The second time AG was placed in an IAES -- this time for stabbing his paraprofessional in the eye with a pencil -- Plaintiffs were provided with advance notice of, and participated in, a full hearing and appeal process implemented by Success. This hearing and appeal process was developed to provide a more fulsome process for students placed in an IAES, and is separate and in addition to the DOE impartial hearing process in which an IAES placement can be appealed. The claim that there has not been and will not be due process is simply untrue.

*Lastly*, Plaintiffs urge the Court to enjoin Defendants from continuing to discriminate against AG. This is a classic request for an "obey the law" injunction that would involve the Court in virtually every judgment call Success makes regarding the safety of AG and his fellow students. 15% of Success' students are disabled. Success is acutely aware of the discrimination laws applicable to those students, and an injunction requiring Success to obey these laws is neither necessary nor proper.

Because Plaintiffs have shown no likelihood of irreparable injury or success on the merits, their requested injunction should be denied.

## BACKGROUND

### I.    FACTS

Plaintiff AG started at SA Prospect Heights on October 27, 2016 with an Individualized Education Program ("IEP") that mandated he be provided special education support services, counseling, and a crisis paraprofessional. As a student with a disability, AG is entitled to certain legal protections.

4

A.  Suspensions and Out of School Placements

1.  Suspensions for 10 or Less Cumulative Days

As set forth in detail below, see infra Argument Section II.A.2., before any student with a disability is subject to a short-term suspension -- any suspension of 10 or less days in a school year -- that student is entitled to "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." Goss v. Lopez, 419 U.S. 565, 581 (1975).  This informal process may take place immediately after the events giving rise to the suspension, and a student's parents need not be present.  See id.

2.  Suspensions in Excess of 10 Cumulative Days

In addition to the process set forth directly above, and in accordance with the Individuals with Disabilities Education Act ("IDEA") and New York Law, before any student with a disability is to be suspended during the course of the school year for more than 10 consecutive school days or more than 10 cumulative school days for the same pattern of behavior, the suspension will immediately be referred to the Committee on Special Education (the "CSE")[2] for the community school district where the charter school is located to conduct an  MDR to determine if the student should serve the suspension.[3]  See 8 N.Y.C.R.R. § 201.4.  Prior to the MDR hearing, the student's parents receive notice of their right to attend the hearing.  Id. § 201.4(b).  The MDR hearing is attended by the parents (and, if the parents desire, their lawyers), knowledgeable staff

---

[2] The CSE is a New York City Department of Education (the "DOE") committee that handles the special education process for students enrolled in non-DOE charter schools.

[3] An MDR is required if a suspension "constitutes a disciplinary change in placement."  8 N.Y.C.R.R. § 201.4(a)(3). A "disciplinary change in placement" includes any suspensions for more than 10 consecutive school days or more than 10 cumulative school days in a school year if the suspensions constitute a pattern based on the student's behavior and the length, proximity, and total time of removals.  Id. § 201.2(e).

from the student's school, and DOE personnel.  Id.  During the hearing, the CSE considers "any relevant" evidence from these parties and the student's file to determine if the action for which the student is to be suspended was a manifestation of that student's disability.  Id. § 201.4(c). If the CSE concludes the student's actions were a manifestation of his disability, the student does not serve the suspension.  If the CSE determines the student's actions were not a manifestation of his disability, the student will serve the suspension.  Most MDRs take place within 10 school days of Success' referral of the suspension request to the DOE.  Id. § 201.4(a).  Regardless, any student subject to this MDR process remains in school pending the DOE's ultimate decision.  This process is consistent with DOE guidance to charter schools regarding suspensions.  See Exh. A (DOE suspension and IAES guidance for charter schools).[4]

### 3.  IAES Placements

Success may place a student with a disability in an IAES, without regard to whether the behavior is determined to be a manifestation of the student's disability, for up to 45 school days when the student engages in misconduct relating to, among other things, "serious bodily injury."  20 U.S.C. § 1415(k)(1)(G); 34 C.F.R. § 300.530(i)(3); 8 N.Y.C.R.R. § 201.7(e).  "School personnel may consider any unique circumstances on a case-by-case basis when determining whether to order a change in placement for a child with a disability who violates a code of student conduct." 20 U.S.C. § 1415(k)(1)(A).  If a student causes another person or himself serious bodily injury, the student may be immediately removed and placed in an IAES.  Goss, 419 U.S. at 582 ("Students whose presence poses a continuing danger to persons or property or an ongoing threat of

---

[4] All references to "LaVigne Aff. Exh. __" are to the exhibits attached to the accompanying Affidavit of Christopher N. LaVigne.

disrupting the academic process may be immediately removed from school.").   The student's parents may challenge the IAES placement and, if they do, the student remains in the IAES throughout the hearing and appeals process,[5] or for up to 45 school days, whichever is shorter. 34 C.F.R. § 300.533; 8 N.Y.C.R.R. § 201.11(c). During this time, the student "shall be provided with services necessary to enable the student to continue to participate in the general education curriculum, to progress toward meeting the goals set out in the student's IEP, . . ." 20 U.S.C. §1415(k)(1)(D); 8 N.Y.C.R.R. § 201.10(d).[6]

B. AG's Troubled History and Success' Attempts to Support AG and His Family

Since AG started at SA Prospect Heights, he has exhibited frequent violent outbursts. See Solomon Decl. ¶¶ 6, 11, 12, 18, 21, 23, 31-33, 35, 39-41, 43, 50, 57-60, 64, 65, 67-69, 75, 78, 80 (detailing AG's frequent attacks on classmates, teachers, paraprofessionals, and other Success staff members).   AG was issued suspensions for many of these outbursts.   Each suspension was accompanied by notice to AG's parents, which states that if they "would like to discuss your scholar's suspension further with me and/or any of the staff involved, please let me know and I will arrange a meeting."   See, e.g., id. ¶ 12, Exh. 10 (Dec. 19, 2016 suspension letter).   AG's parents rarely arranged meetings. Id. ¶ 88.

---

[5] In addition to the hearing and appeal process provided by Success, see infra at 11-12, the administrative appeal process involves an initial hearing by an IHO appointed by the DOE and review of the hearing officer's decision by the New York State Education Department ("SED"). Frank v. Sachem Sch. Dist., 84 F. Supp. 3d 172, 188 (E.D.N.Y. 2015), aff'd, 633 F. App'x 14 (2d Cir. 2016). Plaintiffs can also appeal any IAES placement directly to the SED. 8 N.Y.C.R.R. § 200.5(l) ("Due process procedures"); 34 C.F.R. §§ 300.151, 153.

[6] Two hours of instruction per day in an IAES is sufficient to provide substantially equivalent alternative education for students removed from the classroom. See Appeal of V.E., Comm'r Decision No. 14,985, (Nov. 19, 2003) ("[T]wo hours of alternative instruction fulfill[s] a district's obligation under the Education Law."). This instruction is provided by the CSE, not Success. Therefore, Plaintiffs' claim that AG received improper alternative education in violation of the IDEA must be made against the DOE, not Success.

After AG served suspensions for 10 cumulative days in a year, any subsequent suspension issued was referred to the MDR hearing process set forth above, and AG has not served any further suspensions where the DOE determined AG's outbursts were manifestations of his disability.  See, e.g., id.. ¶ 30.  Plaintiffs' attorney has confirmed this.  Bedard Decl. ¶¶ 8, 24, 25[7] ("In May and June 2017 AG was suspended multiple times. However the MDR team ultimately found that the behaviors complained of were a manifestation of AG's disability and he did not serve those suspensions.").

On February 24, 2017, Success notified Plaintiffs that AG would be placed in an IAES for forty-five days for violently attacking an Assistant Principal.  Solomon Decl. ¶ 35.  The February 24 notice letter advised Plaintiffs to contact the school to discuss the incident.  Id., Exh. 24 (Feb. 24, 2017 IAES Notice).  The notice also advised Plaintiffs of their procedural safeguards under the IDEA. Plaintiffs never contacted Success to arrange any such meeting, and instead challenged AG's IAES placement before a DOE-assigned IHO.  Bedard Decl. ¶ 13; Solomon Decl. ¶ 36.  The IHO determined that Success had not provided a sufficient notice or hearing regarding AG's IAES placement to comport with due process, and ordered that AG be immediately reinstated at SA Prospect Heights. Bedard Decl. ¶¶ 14–15.  AG was reinstated.  Solomon Decl. ¶ 38.

Success worked with Plaintiffs to develop additional supports for AG through the remainder of the 2016-17 school year.  Id. ¶¶ 45-49.  From February to November 2017, Success worked with the CSE to convene a meeting with Plaintiffs to reevaluate the services AG was receiving and consider whether additional services should be added to his IEP. Id. ¶¶ 27-29, 52-54, 71-72.  In March 2017, Plaintiffs requested funding for a

---

[7] References to the "Bedard Decl." are to the declaration of Nancy Bedard accompanying Plaintiffs' Order to Show Cause for a Preliminary Injunction ("Pls.' OSC") and Plaintiffs' Memorandum of Law in Support of Motion for Preliminary Injunction ("Pls.' Mem.").

private education at a school that could provide AG with specialized services because, as Plaintiffs have explicitly acknowledged, public schools, including Success, simply cannot provide him those services.  Id. ¶ 36.  The DOE was directed to offer Plaintiffs this funding.  Id. ¶ 37.  Despite telling Success they intended to accept this offer and were securing the psychiatric evaluations needed to proceed with private placement, Plaintiffs delayed 6 months in securing those evaluations, including for the duration of AG's summer break, and AG is currently attending SA Prospect Heights even though a more supportive setting is available to him. Id. ¶¶ 46, 51-55, 72.

Upon AG's return to SA Prospect Heights, his violent outbursts resumed.  On September 12, 2017, AG was removed to an IAES for a second time after he stabbed his Paraprofessional in the eye with a pencil and punched her in the face and chest, necessitating a trip to the hospital.  Id. ¶ 60.  By letter dated September 13, 2017, Success notified Plaintiffs that AG would be placed in an IAES for twenty days, and that a hearing was scheduled to determine if the placement was appropriate.  Id., Exh. 37 (Sept. 13, 2017 IAES letter notifying Plaintiffs of their right to be represented by counsel, to question witnesses, and to present witnesses and evidence).  On September 18, 2017, a hearing was held regarding AG's placement in an IAES.  The hearing was convened by Ms. de Jongh, Managing Director of Schools at Success, and attended by both of AG's parents, AG's lawyer, and the lawyer's paralegal.  Id. ¶ 61.  During the hearing, AG's teacher and Ms. Solomon, principal of SA Prospect Heights, gave statements about the incident.  Id. ¶ 62, Exh. 39 (Sept. 19, 2017 Ltr. from Ms. de Jongh to AG's parents).  Additional facts were presented, including a statement signed by AG's paraprofessional, attesting that AG had stabbed her in the eye with a pencil.  Id. ¶ 62, Exh. 40.  AG's

lawyer and paralegal questioned AG's father about his observations when he came to pick up AG after the stabbing incident.  AG's lawyer, paralegal, and parents were also given the opportunity to question Ms. Solomon and AG's teacher.

Ultimately, Ms. de Jongh concluded that evidence presented supported AG's placement in an IAES for twenty days.  Id. ¶ 62, Exh. 39.  AG's lawyer and parents were sent a copy of Ms. de Jongh's conclusions and "Findings Sheet," and Plaintiffs pursued a timely appeal to Success' Board of Trustees.  LaVigne Aff. Exh. B.  The Board reviewed the record and confirmed AG's placement in an IAES.  LaVigne Aff. Exh. C.  Plaintiffs appealed this IAES placement through the DOE's impartial hearing process.  Bedard Decl. ¶ 42.

## ARGUMENT

### I.   AN INJUNCTION IS AN EXTRAORDINARY REMEDY THAT IS NOT WARRANTED AS PLAINTIFFS HAVE NOT SHOWN ANY IRREPARABLE INJURY

"Preliminary injunctive relief 'is an extraordinary remedy that should not be granted as a routine matter.'"  Cooke v. U.S. Bank Nat'l Assoc., No. 17-CV-1393(KAM)(RER), 2017 WL 4334084, at *1 (E.D.N.Y. July 10, 2017) (quoting JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 80 (2d Cir. 1990)).  A preliminary injunction may only be issued when the plaintiff shows "(1) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the [applicant's] favor, and (2) the likelihood of irreparable harm in the absence of such an order."  Id. (quotations omitted).  "Such relief, however, is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of

persuasion." Jefferson v. Soe, No. 17-CV-3273(JS)(AYS), 2017 WL 2881138, at *3 (E.D.N.Y. July 6, 2017) (internal quotations omitted).

    A.  Plaintiffs' Alleged Past Harms Do Not Constitute a Likelihood of Irreparable Injury

Plaintiffs have not demonstrated there is a likelihood of irreparable harm in the absence of a preliminary injunction here. Plaintiffs correctly point out that an injunction may be justified in cases where there is a continuing, i.e., future, irreparable harm. See Pls.' Mem. at 12, § I. However, despite paying lip service to the idea that there is a likelihood of continuing irreparable harm here, Plaintiffs merely restate the allegations in the complaint, see Pls.' Mem. at 2-11, and argue that because AG was purportedly harmed, Plaintiffs have shown irreparable harm. See id. at 12-14, §§ I.A.-B. Even assuming arguendo the allegations in the complaint are true, past violations of the law by Success related to AG do not justify an injunction going forward. McMillian v. Walters, No. 916CV0277MADDEP, 2017 WL 2688228, at *2 (N.D.N.Y. June 22, 2017) ("[P]laintiff cannot rely upon past harassment and the fear that he may suffer future harm to establish 'irreparable harm.'" (citing N.L.R.B. v. Express Publ'g Co., 312 U.S. 426, 435–36 (1941) ("[T]he mere fact that a court has found that a defendant has committed an act in violation of a statute does not justify an injunction . . . .")).

The real question to be addressed by the Court when contemplating this "extraordinary remedy" is not whether any harm has occurred to plaintiff – which is the point of any lawsuit – but whether continuing "irreparable injury is likely." Int'l Bhd. of Elec. Workers, AFL-CIO, Local Union No. 3 v. Charter Commc'ns, Inc., No. 17-CV-5357, 2017 WL 4280591, at *8 (E.D.N.Y. Sept. 25, 2017). Here, there is no ongoing irreparable harm. AG is currently attending SA Prospect Heights and has not served a

suspension since he returned to school on October 16.  Notwithstanding that Success has

not and will not engage in either of these actions, Plaintiffs seek speculative prospective

injunctive relief prohibiting Success from suspending AG for more than 10 days without

notice and a fair hearing and from placing AG in an IAES without proof.

    B.  <u>No "Obey-The-Law" Injunction Should Be Issued Here Because Success</u>
           <u>Will Not Engage in the Conduct Plaintiffs' Seek to Enjoin</u>

No injunction is necessary here because Success, in accordance with the law and

its own practices, will not engage in any of the actions Plaintiffs seek to enjoin.

Plaintiffs have requested injunctive relief that amounts to a disfavored and unnecessary

"obey the law" injunction.  <u>Jefferson</u>, 2017 WL 2881138, at *3 ("[T]he Second Circuit

instructs that, '[u]nder Rule 65(d), an injunction must be more specific than a simple

command that the defendant obey the law.'" (quoting <u>S.C. Johnson & Son, Inc. v. Clorox</u>

<u>Co.</u>, 241 F.3d 232, 240 (2d Cir. 2001)).  "'Obey the law' injunctions are vague, do not

require the defendants to do anything more than that already imposed by law, subject the

defendants to contempt rather than statutorily prescribed sanctions, and are not readily

capable of enforcement. As such, these injunctions are not favored." <u>McMillian</u>, 2017

WL 2688228, at *2.

      1.  <u>AG Will Not Be Suspended for More Than 10 Days Without</u>
           <u>Notice and a Hearing</u>

Plaintiffs seek to enjoin Success "from suspending AG for more than 10 days

without a fair and impartial hearing pursuant to federal law and New York Education

Law."  Pls' OSC at 2.  However, in accordance with the IDEA and under New York Law,

before any student with a disability can be suspended in excess of 10 school days, the

DOE will conduct an MDR hearing.  <u>See</u> <u>supra</u> Background Section I.A.2.  AG, and

AG's parents and lawyer, and knowledgeable Success staff attend these hearings, during which the CSE considers "any relevant" evidence from these parties and AG's file to determine if AG's actions were a manifestation of his disability. If the CSE concludes AG's action were a manifestation, he will remain in school.  Importantly, AG remains in school pending the CSE's manifestation determination.   Plaintiffs' attorney has confirmed this hearing process has taken place and that Plaintiffs have participated. Bedard Decl. ¶¶ 8, 24, 25 (stating that because of MDR hearings AG did not serve suspensions).

These procedures -- which are mandated by law and controlled by the DOE, not Success -- guarantee that Success cannot and will not suspended AG at any time for more than 10 days without a hearing.[8]  Moreover, because AG has already been suspended for a total of 10 days this school year, if future misconduct is determined to be a manifestation of AG's disability, he will not serve any suspension at all.  Accordingly, the extreme remedy of injunctive relief is unnecessary.

### 2.  AG Will Not Be Placed in an IAES without Presenting Plaintiffs with Proof and an Opportunity to Contest that Proof

Plaintiffs' request to enjoin Success from removing  AG to an IAES without sufficient proof, see Pls.' OSC at 2, is another request to enjoin Success from doing something it is legally bound not to do.  Success may place AG in an IAES if, among other things, he inflicts serious bodily injury.  20 U.S.C. § 1415(k)(1)(G); 8 N.Y.C.R.R. § 201.7(e).

---

[8] Plaintiffs reference N.Y. Educ. L. § 3214, see Pls.' OSC at 2, but, as set forth below, this provision does not apply to charter schools in New York.  See infra Argument Section II.A.1.  Moreover, it is not necessary to reach any decision on this issue because the MDR process set forth in 8 N.Y.C.R.R. § 201.4 applies regardless of § 3214 and applies in all instances when a student with a disability is to be suspended more than 10 days in any given school year.

On the other hand, should the Court grant the requested injunction, it would prohibit Success from doing what it has a legal right to do.  Success may place a student with a disability in an IAES under certain circumstances if the student violates Success' code of conduct.   20 U.S.C. § 1415(k)(1)(A).   Furthermore, the Supreme Court has recognized the right of schools to immediately remove a student that poses a danger to others or threatens to disrupt the academic process.  Goss, 419 U.S. at 582–83.  Plaintiffs request to enjoin Success from placing AG in an IAES "for alleged infliction of serious bodily injury without sufficient proof" will effectively ban Success from exercising these rights.   At the least, such an injunction will force Success educators into a Hobson's choice of either removing AG to protect other students or violating a court order if it is later determined the educator had insufficient proof of "serious bodily injury" to remove and place AG in an IAES.

At the core of Plaintiffs' request is that they were not afforded due process regarding AG's IAES placements.  Pls.' Mem. at 15-16.  However, as set forth below, they have received it.  See infra Argument Section II.A.2.  Plaintiffs were presented with the proof of AG's violent conduct, and were provided an opportunity to rebut it and present their own witnesses.  In fact, Plaintiffs had a lawyer present to address the proof. Furthermore, Plaintiffs have availed themselves of the different avenues, including through the DOE, to appeal the decision reached by Ms. de Jongh. Any suggestion that Plaintiffs were not afforded due process is entirely without merit.

It is Success' sincere hope that AG will not be placed in an IAES again in the future.  However, the law is clear that Success has a right to remove AG and place him in an IAES if he causes himself or anyone else at school "serious bodily injury."   While

Success cannot guarantee it will never again seek to place AG in an IAES, it can certainly guarantee that it will not do so without proof that AG engaged in one of the actions set forth in 20 U.S.C. § 1415(k)(1)(G), and without presenting that proof to Plaintiffs and providing them a full opportunity to rebut it.  No injunction is needed.

3.  No Injunction is Needed to Hold Success Accountable for Any Violation of Federal and State Discrimination Laws

Plaintiffs' request to enjoin Success from engaging in "unlawful, discriminatory conduct" is another explicit request for an "obey-the-law" injunction.  Such an injunction is wholly unwarranted and unnecessary.  Success operates 46 schools serving 15,500 students in Manhattan, Brooklyn, Queens and the Bronx.  15% of those students are current and former special needs students. See Success Academy, Who We Are, available at https://www.successacademies.org/about/.  Success is well aware of its obligations to disabled students and upholds those obligations.  Success has regularly informed Plaintiffs of those obligations and of their rights under these laws.  See, .e.g., Solomon Decl. ¶ 62, Exh. 39; ¶ 12, Exh. 9.

Regardless, even assuming arguendo Success were to violate one of these laws, the proper remedy would be to hold Success accountable for any violation through the administrative hearing process governed by the DOE and the SED,[9] and, if necessary, through a court proceeding.  "It is axiomatic that federal courts should not lightly interfere with the day-to-day operation of schools."  Augustus v. Sch. Bd. of Escambia Cty., 507 F.2d 152, 155 (5th Cir. 1975).  Enjoining Success from engaging in "discriminatory conduct" will provide Plaintiffs with a splashy headline,[10] force this

---

[9] See supra Background Section I.A.3, n.5.

[10] Before Plaintiffs filed this lawsuit, their complaint was leaked to the press.  Granting any injunction here will not only unnecessarily involve the Court in the day-to-day educational and safety decisions Success is

15

Court to police this injunction and review every educational decision made by Success regarding AG, and could potentially subject Success to countless contempt proceedings for taking action that it would otherwise be permitted to take under the law.[11]  Plaintiffs' request for an "obey-the-law" injunction should be denied.  Rowe v. New York State Div. of the Budget, No. 1:11-CV-1150 LEK/DRH, 2012 WL 4092856, at *7 (N.D.N.Y. Sept. 17, 2012) (denying injunction seeking "to prohibit any further discriminatory/retaliatory practices," because it amounted to little more than an "obey the law" injunction).

## II.   NO INJUNCTION IS WARRANTED BECAUSE PLAINTIFFS HAVE NOT ESTABLISHED A LIKELIHOOD OF SUCCESS ON THE MERITS

### A.   Plaintiffs' Due Process Claims Should Be Dismissed

Plaintiffs' claims all boil down to allegations that Success denied them due process when seeking to suspend AG or place him in an IAES.  Plaintiffs have not

---

forced to make, but will have the unintended consequence of giving Plaintiffs the splashy headline they apparently seek.  This case does not belong in this Court or the press.  The best resolution here will be the result of frank discussions between both sides via mediation in an effort to determine the best path forward for AG.

[11]  For example, Plaintiffs allege Success has inappropriately called EMS to remove AG from school "when no medical necessity existed," see Compl. ¶¶164-65, 171-72, 178; Pls.' Mem. at 1.  Plaintiffs do not seek explicitly to enjoin this conduct, but any order enjoining Success from engaging in "unlawful, discriminatory conduct" will result in the Court having to weigh in on judgment calls made by Success educators to keep students safe.  Success has a legal obligation to ensure the safety and security of its students.  N.Y. Educ. Law § 2801(2)(b) (schools must "assure [the] security and safety of students and school personnel"); N.Y. Educ. Law § 2854(1)(b).  AG's mental health emergencies are medical emergencies, Am. Psych. Assoc., What Is Mental Illness (Nov. 2015), available at https://www.psychiatry.org/patients-families/what-is-mental-illness, and on multiple occasions he has injured others at SA Prospect Heights.  See also Glass v. Mayas, 984 F.2d 55, 57 (2d Cir. 1993) (upholding as objectively reasonable the seizure and hospitalization of person suffering mental health crisis).  This vague injunction will force Success, for every decision regarding AG, big or small, to choose between protecting the welfare of other students or potentially violating a court order.  This Court need not involve itself in the day-to-day functioning of SA Prospect Heights.  See Herrick v. Grindr, LLC, No. 17-CV-932 (VEC), 2017 WL 744605, at *5 (S.D.N.Y. Feb. 24, 2017) (denying injunctive relief when plaintiff sought "an affirmative injunction that would potentially insert the Court into day-to-day supervision of [defendant]'s compliance").  Instead, Success can and should be held accountable for any potential future violation of federal or state discrimination laws the way any other defendant would be held accountable: through the administrative hearing process and through a lawsuit based on the alleged violation.

demonstrated a likelihood of success on the merits on these claims for the following reasons.

1. Education Law § 3214 Does Not Apply to Charter Schools

As a preliminary matter, the vast majority of Plaintiffs' argument is predicated on the assumption that Success is bound by N.Y. Educ. Law § 3214. That, however, is not the case. The New York Charter Schools Act states that

> *A charter school shall be exempt from all other state and local laws, rules, regulations or policies governing public or private schools, boards of education, school districts and political subdivisions*, including those relating to school personnel and students, except as specifically provided in the school's charter or in this article. Nothing in this subsection shall affect *the requirements of compulsory education of minors* established by part one of article sixty-five of this chapter.

N.Y. Educ. Law § 2854(b) (emphasis added). While § 3214 appears in part one of article sixty-five, it does not substantively address compulsory education requirements. As such, New York charter schools are exempt from the procedures set forth in § 3214.

This position has been adopted by the State University of New York, the state entity that authorizes and governs charter schools, including Success. See LaVigne Aff. Exh. D (July 8, 2016 Ltr. from SUNY Charter Schools Institute (setting forth reasons why "no charter school must follow" § 3214)); SUNY Charter Schools Institute, Student Discipline and New York Charter Schools: Discussion And Training (June 19, 2013), http://www.newyorkcharters.org/wp-content/uploads/Discipline-Resource-Book-1.pdf ("[C]harter schools are free to define long- and short-term suspensions differently (i.e., a different number of days) so long as the minimum federal due process protections are in place. Charter schools are not required to follow state law or Commissioner of Education rules or regulations on discipline including the five day demarcation of long- and short-

term suspension.")).  To adopt Plaintiffs' position that § 3214 applies to charter schools in New York would constitute a wholesale revision of how charter schools operate in New York, and one no New York court has ever adopted.[12]

Regardless, such a radical determination need not be made at this stage.  As noted above, supra Argument Section I.B.1., n.8, the MDR hearing process for students with disabilities suspended in excess of 10 days occurs regardless of § 3214.  Additionally, Success voluntarily complies with § 3214 requirements regarding any placement of AG in an IAES, by providing AG and AG's parents with "reasonable notice" and a "fair hearing."  See infra Argument Section II.A.2.  Therefore, the most significant protections set forth in § 3214 are currently provided to Plaintiffs regarding any suspensions in excess of 10 days and any placement in an IAES, and the Court need not at this early stage reach the issue of whether § 3214 applies to charter schools in New York.

### 2.  The Allegations in the Complaint and Plaintiffs' Own Admissions Establish the Requisite Due Process Was Provided

The allegations in the complaint and Plaintiffs' own statements in support of their preliminary injunction motion illustrate Plaintiffs were provided with due process before AG was suspended for more than 10 days and when AG was placed in an IAES.  To establish a Due Process violation, Plaintiffs must (1) identify a property right, and (2) show that Defendants deprived AG of that right without constitutionally adequate process.  Looney v. Black, 702 F.3d 701, 706–07 (2d Cir. 2012).  While AG has a constitutionally protected property right in his education, N.Y. Const. Art. XI, § 1; Lopez

---

[12] Plaintiffs' citation to Ross v. Disare is misplaced.  The court in Ross applied N.Y. Educ. Law § 3214 to a public school district and not a charter school. 500 F. Supp. 928, 931 (S.D.N.Y. 1977).

v. Bay Shore Union Free Sch. Dist., 668 F. Supp. 2d 406, 419 (E.D.N.Y. 2009), Plaintiffs

simply cannot show that AG was deprived of this right without adequate process.

First, with regard to short-term suspensions, Plaintiffs have not alleged any facts

showing AG was not provided adequate process.  For short-term suspensions, students

are entitled to "oral or written notice of the charges against him and, if he denies them, an

explanation of the evidence the authorities have and an opportunity to present his side of

the story." Goss, 419 U.S. at 581. This informal process may take place immediately after

the events giving rise to the suspension, and a student's parents need not be present. Id.

("There need be no delay between the time 'notice' is given and the time of the hearing.

In the great majority of cases the disciplinarian may informally discuss the alleged

misconduct with the student minutes after it has occurred."); Scrocca v. Alton Police

Dep't, 2009 WL 2246753, * 4, n.10 (D.N.H. 2009) ("Where short term suspensions are

involved, due process does not require parental presence or participation during the

informal give-and-take between students and administrators.").  Notwithstanding

Plaintiffs' conclusory arguments to the contrary, see Compl. ¶ 60, Success provided this

type of informal hearing for each of AG's short-term suspensions.  Solomon Decl. ¶¶ 82-

88, Exhs. 4-24.

Second, Success has provided Plaintiffs with due process in connection with AG's

suspension in excess of 10 days.  In Goss, the Supreme Court held that suspensions

longer than ten days "may require more formal procedures" than those outlined above for

short-term suspensions.  419 U.S. at 584. "Due process requires that individuals have

notice and opportunity for hearing appropriate to the nature of the case prior to a

deprivation of life, liberty, or property."  Rosa R. v. Connelly, 889 F.2d 435, 438 (2d Cir.

1989) (internal quotations omitted).  In the context of long-term suspensions, "[s]chool board disciplinary hearings satisfy due process when the student is given the opportunity to refute and explain the allegations against him."  DeFabio v. E. Hampton Union Free Sch. Dist., 658 F. Supp. 2d 461, 489 (E.D.N.Y. 2009).  As discussed above, whenever a suspension sought by Success would result in AG being suspended in excess of ten days in a school year, Plaintiffs have been provided with the hearing process set forth in 8 N.Y.C.R.R. § 201.4 and conducted by the DOE.  Supra Background Section I.A.2.  Ms. Bedard attests these hearings have taken place, Plaintiffs participated in the hearings, and the hearings have often resulted in AG serving no suspension.  Accordingly, Plaintiffs' claims that Success violated their due process rights regarding any suspension of AG in excess of 10 days are without merit.

Lastly, Plaintiffs' claims that AG's IAES placements violated their due process rights are also meritless.  On February 24, 2017, Success notified Plaintiffs that AG would be placed in an IAES for forty-five days for attacking an assistant principal. Plaintiffs argue that AG was not offered any process before the imposition of this IAES placement, see Bedard Decl. ¶ 12, but this is incorrect. The February 24 notice letter, which Plaintiffs admit they received, see id. ¶ 10, specifically invited Plaintiffs to further discuss AG's IAES placement and advised Plaintiffs of their administrative appeal rights under the IDEA.  See supra Background Section I.B.  Plaintiffs never arranged any such meeting, and instead challenged AG's IAES placement before a DOE-assigned IHO.  The IHO determined that Success had not provided sufficient notice and a hearing regarding AG's IAES placement to comport with due process and AG was immediately reinstated.

20

This incident demonstrates that Plaintiffs *were* afforded due process regarding AG's first IAES placement, and availed themselves of this process through the administrative hearing process afforded by the DOE.  See supra Background Section I.A.3, n.5.  More importantly, it illustrates why no injunction should issue here.  Success is plainly not attempting to deny Plaintiffs their due process rights.  Faced with the IHO's decision that Success' notice and hearing regarding AG's IAES placement were insufficient, Success adapted their practices to afford all Success students, including AG, a more fulsome hearing and appeal process with regard to an IAES placement.

AG was placed again in an IAES on September 12, 2017 after he stabbed his paraprofessional in the eye with a pencil and punched her repeatedly in the face and chest, causing her to go to the hospital.  Even though Success is not bound by § 3214, Success voluntarily provided notice and a hearing that comply with that section's major protections.  § 3214 states a disabled student and his parents must given an "opportunity for a fair hearing, upon reasonable notice, at which such pupil shall have the right of representation by counsel, with the right to question witnesses against such pupil and to present witnesses and other evidence on his behalf."  Plaintiffs were notified by letter that AG would be placed in an IAES for twenty days.  See supra Background Section I.B. The letter also notified Plaintiffs that Success would conduct a hearing regarding the IAES placement, and Plaintiffs had the right to counsel, to question witnesses, to present evidence, and to appeal the decision resulting from the hearing.

The hearing took place and was attended by AG's parents and AG's lawyer. Plaintiffs appealed the decision upholding the IAES placement to Success' Board of Trustees.  Plaintiffs also availed themselves of the independent DOE impartial hearing

21

process to appeal AG's September IAES placement.  Therefore, while § 3214 does not apply here, Success voluntarily complied with § 3214 regarding AG's September 2017 IAES having provided both reasonable notice and a fair hearing.[13]  Accordingly, Plaintiffs have not shown a likelihood of success on the merits of their due process claim regarding AG's IAES hearing.[14]  See, e.g., DeFabio, 658 F. Supp. 2d at 491 (dismissing procedural due process claim where plaintiff "was provided with a full hearing before his long-term suspension and the ability to challenge that suspension on appeal"); Bogle-Assegai v. Bloomfield Bd. of Educ., 467 F. Supp. 2d 236, 243 (D. Conn. 2006) ("Here, although the expulsion was for longer than 10 days -- 180 was ultimately ordered -- adequate process was provided.  Plaintiffs were provided notice of the expulsion hearing, given the opportunity to be represented by counsel (which they were), and given a full-blown hearing including the presentation of opening arguments, summations, and evidence [and] the opportunity to cross-examine witnesses."); Cohn, 363 F. Supp. 2d at 433–34 (dismissing procedural due process claim where student received notice of the charges, a hearing, and availed himself of appellate proceedings).

---

[13] Plaintiffs make various allegations and arguments that AG's IAES hearing violated specific provisions § 3214, but even if this section applied, those arguments are without merit.  Plaintiffs complain that Success "failed to produce any witness to the alleged behavior who could be questioned."  Pls.' Mem. at 18. However, Success provided a witness and exhibit list ahead of the hearing, and at the hearing Ms. Bedard and her paralegal were permitted to question AG's teacher and Ms. Solomon.  Additionally, Plaintiffs allege Success did not provide a verbatim transcript of AG's IAES hearing.  Compl. ¶ 118. Even if it were applicable, N.Y. Educ. Law § 3214(3)(c) is clear that "no stenographic transcript shall be required." Plaintiffs further claim that SA Prospect Heights failed to administer oaths at the IAES hearing.  Compl. ¶109. However, § 3214 does not specify that oaths must actually be administered.

[14] Even assuming § 3214 were applicable here, Plaintiffs cannot succeed on the merits of their due process claim simply by pointing to alleged violations of that provision. The failure to abide by state-mandated procedures in § 3214 does not per se constitute a federal due process violation. DeFabio, 658 F. Supp. at 492 ("In other words, a failure to comply with N.Y. C.L.S. Educ. § 3214 does not necessarily constitute a violation of due process. Here, because the constitutional due process requirements were met, the failure to comply with certain provisions under state education law (that are not required by the United States Constitution) cannot give rise to a federal due process claim under Section 1983.").

### 3.   Plaintiffs Have Not Adequately Pleaded a *Monell* Claim

Plaintiffs have failed to adequately allege § 1983 due process claims against Success because SA Prospect Heights is a public school.  N.Y. Educ. L. § 2853(1)(c) (Charter schools are "independent and autonomous public school[s]").  In order to hold a public entity liable under 42 U.S.C. § 1983, Plaintiffs are required to prove an underlying constitutional violation, and that an official policy caused the violation. Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 690–91 (1978)). In other words, Plaintiffs must prove "facts demonstrating . . . the existence of an officially-adopted 'policy, custom, or practice'" that gave rise to the constitutional violation. Santos v. New York City, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012).

Even assuming, arguendo, Plaintiffs can show an isolated violation of due process, Plaintiffs have not, and cannot, allege Success has an official policy, custom, or practice of violating due process in special education disciplinary proceedings. First, the hearing process for suspensions of disabled students in excess of ten cumulative days is provided by the DOE, not Success. Therefore, Plaintiffs cannot properly allege that Success has adopted a "policy, custom, or practice" regarding that process giving rise to constitutional violations.  Additionally, Plaintiffs have only alleged two instances in which AG has been placed in an IAES, which does not amount to a policy or practice. The hearing and appeals process for IAES placements involved Success' internal process and, again, the DOE's impartial hearing process. Success, therefore, has not adopted a policy of denying due process, but rather has worked earnestly along with the DOE to provide it.

B.  Plaintiffs Are Not Likely to Succeed on Their Claim that Success Violated
the IDEA and New York Law by Placing AG in an IAES Without
Evidence AG Caused "Serious Bodily Injury"

Plaintiffs argue Success placed AG in an IAES without evidence that AG caused

"serious bodily injury" as required by 34 C.F.R. § 300.530(i)(3); 18 U.S.C. § 1365(h)(3).

However, for example, AG stabbed his paraprofessional in the eye with a pencil, which

caused the paraprofessional to immediately called 911 and seek medical attention at a

hospital.  This constitutes "serious bodily injury."  See Appeal of a Student Expected of

Having a Disability, Comm'r's Decision No. 16,063 (May 10, 2010), available at

http://www.counsel.nysed.gov/Decisions/volume49/d16063 (affirming placement in an

IAES where student "intentionally push[ed] another student causing the need for medical

attention at the hospital due to his physical injury.").[15]

C.  Plaintiffs' Claims Against the Individual Defendants Should be Dismissed

Plaintiffs' ADA, § 504, and IDEA claims against individual Defendants Solomon,

de Jongh, Cole, and Shainker should be dismissed. Garcia v. S.U.N.Y. Health Sciences

Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) (holding the ADA and § 504 claims

cannot be stated against individuals in their official capacity); D.A. v. Houston

Independent School Dist., 716 F. Supp. 2d 603, 611 (S.D. Tex. 2009) (dismissing IDEA,

Section 504, and ADA claims against "officials acting in their individual capacities");

A.M. ex rel. J.M. v. NYC Dep't of Educ., 840 F. Supp. 2d 660, 678 (E.D.N.Y. 2012)

---

[15] None of the cases on which Plaintiffs rely on regarding "serious bodily injury" were decided in the context of an educational setting.  See, e.g., U.S. v. Alexander, 447 F.3d 1290, 1299-1300 (10th Cir. 2006) (assault resulted in serious bodily injury); U.S. v. Lowe, 145 F.3d 45, 52-53 (1st Cir. 1998) (carjacking resulted in serious bodily injury); U.S. v. Mermelstein, 487 F. Supp.2d 242, 260, 269-70 (E.D.N.Y. 2007) (medical procedures may have resulted in serious bodily injury).  Moreover, these cases fail to provide any guidance whatsoever as to what minimum level of evidence would be sufficient for a finding of serious bodily injury.

(dismissing disability claims against defendants in their individual and official capacities because "these claims are merely duplicative of the claims against the DOE, the 'real party in interest'") (citations omitted).

Defendants intend to file a motion to dismiss fully setting forth the reasons the individual Defendants should be dismissed from this case, but in the meantime there is no reason any injunction should be issued against them.  Mr. Cole and Ms. Shainker are members of Success' Board of Trustees and have absolutely no involvement in the day-to-day decisions that are made at Success schools.  Furthermore, to the extent any injunction is issued against Success, Ms. Solomon and Ms. de Jongh will be bound by it.

D.  Plaintiffs' New York Claims Must be Dismissed Because Plaintiffs Failed to Serve Success With Notices of Claim

Plaintiffs' claims under the New York Constitution and the New York Education Law should be dismissed because Plaintiffs failed to timely serve Success with notices of claim.  N.Y. Educ. L. § 3813(1)-(2); Rodriguez v. Int'l Leadership Charter Sch., No. 08 CIV. 1012 (PAC), 2009 WL 860622, at *6 (S.D.N.Y. Mar. 30, 2009) (holding the notice of claim requirement applies to charter schools).  Here, Plaintiffs never served, and never alleged that they served, Success with a notice of claim prior to commencing this lawsuit.  Therefore, Plaintiffs New York claims must be dismissed.

Dated: December 8, 2017
New York, New York

Respectfully submitted,

By: _____
Vanessa M. Biondo
Christopher N. LaVigne
Aaron M. Safane

Success Academy Charter Schools, Inc.
95 Pine Street, Floor 6
New York, NY 10005
Tel: (917) 887-1203
Fax: (646) 961-4739
vanessa.biondo@successacademies.org
christopher.lavigne@successacademies.org
aaron.safane@successacademies.org

*Attorneys for Success Defendants*