

September 29, 2017

Samuel Cole, Board Chairperson
Success Academy Charter School- NYC Board of Trustees
95 Pine Street, 6th Floor
New York, NY, 10005

Re: ▮
    DOB ▮
    NYC ID No. ▮
    Address: ▮

    Current School: Success Academy Charter School, Prospect Heights

Dear Samuel Cole:

This letter constitutes a formal appeal on behalf of Kim Patrick for her minor son, ▮. By letter dated September 13, 2017, Success Academy Prospect Heights Charter School (hereinafter "Success Academy" or the "school") suspended ▮ for 20 days. For the reasons set forth below, the suspension must be reversed and expunged from ▮ record because it violates New York State Law and Regulations, including but not limited to the Charter School Act and Part I section 65 of the New York State Education Law and implementing regulations, other applicable state and federal law and regulations, and the United States and New York State Constitutions.

STATEMENT OF FACTS

▮ is a ▮-year-old boy in the first grade who has a disability. He has an Individualized Education Program and is classified as Other Health Impairment. In a letter dated September 13, 2017, Success Academy Prospect Heights Charter School suspended ▮ from his placement, removing him to an alleged Interim Alternative Educational Setting (IAES) for 20 days. The notice alleged that ▮ on September 12, 2017, stabbed his paraprofessional in the eye with a pencil, resulting in EMS transporting her immediately to the hospital for medical care; repeatedly punched his paraprofessional in the face and chest, using two closed fists; repeatedly slapped his

**Brooklyn Legal Services**
105 Court Street, 3rd Floor  Brooklyn, NY 11201
Phone: 718-237-5500  Fax: 718-875-8546
Meghan Faux, Project Director
*Towards justice and dignity for all – Por la Justicia y Dignidad de Todos*

LSC

paraprofessional in the face; pulled his paraprofessional's hair and claimed that "▮ engaged in behavior that inflicted serious bodily injury and extreme pain upon his paraprofessional. ...A hearing has been scheduled to discuss this matter with you further and determine whether this recommendation is appropriate." (See Success Academy letter dated September 13, 2017, annexed as Exhibit A.)

On September 19, 2017 a hearing was held and attended by the parents, Kim Patrick and Gavin ▮. The parent, Kim Patrick was represented by Brooklyn Legal Services, Darnell Usher, Paralegal and Nancy Bedard, Attorney.

Success Academy presented two witnesses. No oaths were administered. Sydney Solomon stated that she was the principal of Success Academy and she was called into the classroom after the incident in question. She did not testify that she witnessed any of the behavior alleged in the suspension notice.

The second witness was Dorothy Atkin-Mapes, who testified that she was ▮ teacher. She testified that she was present in the classroom during the incident in question and that she witnessed Aaden hit, slap and pull the para's hair. She testified that she did not see ▮ stab the paraprofessional in the eye. She testified that the para told her she was stabbed in the eye with a pencil and that she was surprised to hear that.

The school also offered an indexcard into evidence which it alleged was written by the teacher that said "▮ stabbed the para in the corner of her eye..." The school alleged that the postcard was signed by the para, however no name was on the postcard, no date was on the postcard and the name of the para was not on the postcard offered at the Hearing. The testimony did not include the full name of the para.

▮ representatives objected to the indexcard and the witness testimony as hearsay. No one in attendance at the Hearing appeared to maintain any written record of the hearing including the objections that were made on the "record." No other witness or evidence was offered by Success Academy.

The parent Gavin ▮ was the witness for ▮ Gavin ▮ father, testified that he was called by the school at the end of the school day on September 12, 2017, about an alleged incident and he then rushed over to the school. He testified that he saw the paraprofessional personally and he did not see any evidence of injury. He testified that the para saw him and acknowledged his presence in the hall of the school on his way to see his child. He testified that EMS was called by the school and that he spoke with them refused assistance for ▮ as ▮ was not harmed in any way and was calm. EMS personnel took his son's blood pressure and pulse and finding him fine, EMS left and Mr. ▮ took his son home. He testified that the school principal told him that the para was sent to the hospital via EMS. He told the principal that that was not so, as he had seen her in the hallway minutes earlier. After repeating this several times the principal went into the hallway, returned and told him that the para was now on her way to the hospital.

The Hearing officer then asked Kim Patrick what happened that day. Brooklyn Legal Services objected to the question as it called for a hearsay answer because Ms. Patrick was not present at the school on the day in question and did not have any firsthand knowledge of what occurred. A closing was presented by Darnell Usher pointing out the lack of evidence to substantiate the allegation of ▮ stabbing the para

in the eye and the lack of evidence to substantiate the allegation of serious bodily injury and excessive pain. An objection was raised as to the lack of any evidence that the hearing was being recorded.

On September 20, 2017 a letter dated September 19, 2017, was received by the parents of ▮▮▮ ▮▮▮▮▮ The letter stated that on September 18, 2017 "A hearing was held to determine whether ▮▮▮▮▮▮▮▮▮ placement in an interim IAES was appropriate." The letter states that after careful consideration the findings in the document attached have determined that the IAES placement was appropriate. (See Success Academy letter dated September 19, 2017 annexed as Exhibit B, and IAES Hearing Findings Sheet dated September 19, 2017 annexed as Exhibit C.)

The Findings Sheet, which was preprinted and included a series of checked boxes, claimed that the allegations were sustained by the evidence. No discussion or explanation was offered. No reference to the evidence was offered to explain or support the determination to sustain any of the allegations.

ARGUMENT

I. SUCCESS ACADEMY'S FAILURE TO PROVIDE ADEQUATE NOTICE AND AN OPPORTUNITY TO BE HEARD VIOLATED THE STUDENT AND PARENT'S FUNDAMENTAL DUE PROCESS RIGHTS, NECESSITATING REVERSAL OF THE SUSPENSION AND EXPUNCTION OF ANY RELATED RECORDS.

A. The Charter School Act Requires That Success Academy Comply with Part 1 of Article 65 of the New York State Education Law, Including Fundamental Due Process Requirements and New York State Education Law §3214.

New York State Education Law § 2854 (b) mandates that charter schools meet the same health and safety, civil rights, and student assessment requirements applicable to other public schools. The act specifically mandates that "nothing in this subsection shall affect the requirements of compulsory education of minors established by part one of article sixty-five of this chapter." N.Y. Educ. Law § 2854(b). Part one of article sixty-five of the New York State Education Law, titled "Compulsory Education," comprises numerous provisions including § 3214. If the legislature had intended to exempt charter schools such as Success Academy from certain portions of part 1 of article 65, it would have done so. By including the entire part, the legislature intended to mandate all sections in the part, including § 3214. Education Law § 3214 embodies important due process rights that are without a doubt civil rights requirements applicable to other public schools. Accordingly, as § 3214 and its implementing regulations apply to charter schools, Success Academy must comply with the requirements of the statute.

B. The Student was not Afforded a Fair Hearing, and the Hearing Decision did not Find that he Engaged in the Conduct as Charged.

▮▮▮▮▮▮▮▮▮ removal for 20 days to an IAES constitutes a violation of due process, because the school did not afford the parent a fair and lawful suspension hearing to determine whether the student engaged in the alleged misconduct. It is well established that under the U.S. Constitution, schools seeking to impose suspensions greater than ten days must strictly adhere to formal process including

meaningful notice, an opportunity to view and interrogate evidence, an opportunity to question witnesses, the right to legal counsel, and a formal hearing led by an impartial hearing officer. *See generally* Goss v. Lopez, 419 U.S. 565 (1975). Here, no proper hearing was held, in violation of federal and New York law. The school failed to offer the due process applicable to all students.

The school bears the burden of proof in a student disciplinary hearing. In the instant case, the purported "Findings Sheet" (Decision, Exhibit C) was a form prepared after the hearing by the Managing Director of Schools for Success Academy, LaMae deJongh, who also served as Hearing Officer during the hearing. The purported "Decision" makes no credibility findings. It fails to articulate any evidentiary findings or to identify any specific testimony or other evidence to justify the form decision, which consists of a series of checkboxes and a few handwritten "notes." The form merely includes the preprinted statement "Inflicted serious bodily injury upon another person" with a series of checkboxes, and "YES" has been checked (Decision Exhibit C).

In particular, Success Academy entirely failed to prove the allegation that ▇▇▇ stabbed his paraprofessional in the eye with a pencil. This claim is not only false but completely unsupported by the evidence, including both the oral and written statements submitted by Success Academy. Furthermore, the allegation or statement that the paraprofessional went to the hospital via EMS does not in itself prove that her transport to the hospital was due to extreme pain or serious injury. The school offered no testimony or other evidence to support the allegation that the para actually sustained an injury.

Furthermore, without a verbatim record setting forth what questions were asked and responses provided, there is no basis on which to determine the facts, evaluate witness credibility, assess the accuracy and relevance of testimony, or evaluate the conduct of the hearing. Such a deficient record does not permit an analysis of whether even the scant "findings" (check offs) are supported by the facts or permit any kind of meaningful judicial review. Accordingly, the Board should reverse the decision to suspend the student for purported conduct on September 12, 2017.

C. The Failure of Success Academy Prospect Heights to Establish "Special Circumstances" at the Suspension Hearing Necessitates that the Student be Allowed to Return to School Immediately.

The suspension notice dated September 13, 2017 references 20 U.S.C. § 1415 (k)(1)(G) and 34 C.F.R. § 300.530(g), which authorize school personnel to remove a student to an interim alternative educational setting (IAES) for up to 45 days under "Special circumstances" without regard to whether the student's behavior is determined to be a manifestation of the child's disability. The statute provides only three specific bases that constitute special circumstances: where a child (i) carries or possesses a weapon to or at school or a school function; (ii) knowingly possesses, uses, or sells illegal drugs while at school or at a school function; or (iii) has inflicted "serious bodily injury" upon another person while at school or at a school function. These expressly limited circumstances are the only circumstances that enable school personnel to remove children from school for up to 45 days regardless of whether a student's behavior is a manifestation of their disability. The Special Circumstance provision is only invoked in extremely dangerous situations. However, Success Academy has again chosen to use this provision improperly and in violation of the law.

The allegations made and the findings sustained against ▇▇▇▇▇ a ▇▇ year-old first grade student, entirely fail to rise to the level of serious bodily injury as defined under subsection (k)(1)(G).

The behavior alleged in the September 13, 2017 letter is unsupported by the evidence, false and exaggerated, and fails to meet the legal definition of serious bodily injury. 20 U.S.C. § 1415(k)(7)(D) provides that the term "serious bodily injury" has the meaning provided under 18 U.S.C. § 1365(h)(3). Under 18 U.S.C. § 1365(h)(3), serious bodily injury "means bodily injury which involves – (A) a substantial risk of death; (B) extreme physical pain; (C) protracted and obvious disfigurement; or (D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty." See also NYS Regulations of the Commissioner of Education, Procedural Safeguards for Students with Disabilities Subject to Discipline Part 201.2(m). Nothing in the Act permits the Department of Education to expand the definition of serious bodily injury as the term is used in 20 USC § 1415(k)(1)(G) and 34 C.F.R. § 300.530(g) beyond the clear definition articulated in 18 U.S.C. § 1365(h)(3). Yet this is exactly what Success Academy has done. Under the law, serious bodily injury is an extremely high standard. *See, e.g., U.S v. Alexander*, 447 F.3d 1290 (10th Cir. 2006), *cert. denied* 549 U.S. 933 (There was sufficient evidence that victim suffered "serious bodily injury" to support defendant's conviction for assault resulting in serious bodily injury, where victim, upon his arrival at hospital, was deemed in serious condition, experienced severe pain both immediately after attack and at hospital, lost copious amounts of blood, suffered multiple, severe lacerations, including one measuring two and one-half inches in length, which all required medical staples to repair, experienced dizziness for several days following attack, and was hospitalized for two days in order for doctors to monitor whether attack caused any swelling within his brain).

At the hearing, no evidence whatsoever was offered to prove that the paraprofessional had suffered serious bodily injury and extreme pain. No documentary evidence of any kind was offered in support of this allegation and no person testified that they witnessed the paraprofessional suffer extreme bodily harm or severe pain. In fact, the only witness who testified as to the incident said she did not even witness the alleged stabbing of the paraprofessional in the eye with a pencil even though she was in the room at the time of the alleged actions. Moreover, ▇▇▇ father testified that he saw the paraprofessional shortly after the alleged incident and she appeared unharmed. The school offered no medical evidence to support the allegation of serious bodily injury.

Further, at the Manifestation Determination Review (MDR) held on September 26, 2017, the MDR team, which included the NYC Department of Education, found that the alleged behavior attributed to ▇▇▇ was a direct result of his disability. The Principal of Success Academy stated that the para was released immediately from the hospital the same day and was treated only for a migraine headache. Success Academy's refusal to allow Aaden to attend school is without any substantial basis and constitutes a direct violation of State and Federal law.

D. The School Failed to Provide Adequate Notice Regarding the Suspension.,

Success Academy misunderstands and misconstrues the point and the meaning of the notice provisions of § 3214(3)(c)(1) and 8 N.Y.C.R.R. § 100.2(1)(4). The suspension notice, as written, fails to comply with the legal mandates of N.Y. Educ. Law § 3214 and its implementing regulations and with basic due process. The suspension notice dated September 13, 2017 states that a hearing has been scheduled "to discuss this matter with you further and determine whether this recommendation is appropriate." There is nothing in the notice to apprise the parent of her right to challenge the allegations, and to request in advance of the hearing information as to what witnesses and documents the school will submit at the

hearing in order to prepare a defense.

## II. THE SCHOOL'S FAILURE TO PROVIDE THE STUDENT WITH ADEQUATE ALTERNATIVE INSTRUCTION DURING HIS SUSPENSION IS IMPROPER AND VIOLATES HIS RIGHTS.

Schools must provide instruction to students under the compulsory school age even if suspended. To the extent that a school suspends a student and fails to provide alternate instruction, it has violated the law. *Appeal of Ackert*, New York State Education Reporter, Vol. 30, Decision No.12,383 (1990); *Appeal of A.L., Jr.*, Vol. 42, Decision No. 14,883 (2003); *Appeal of Camille S.*, Vol, 39, Decision No. 14,316 (2000). Even in the case of short-term suspensions, schools may not restrict alternative instruction and must act reasonably promptly to provide alternative instruction regardless of the length of the suspension. *Appeal of Deborah Tooley*, Vol. 39, No. 14, 253 (1999). In addition, alternative instruction must be substantially equivalent to the student's regular classroom program. *Appeal of Deborah F.*, Vol, 42, No. 14813 (2002), *Appeal of Camille S.*, Vol 39, No. 14316 (2000).

In addition to the New York State Law requirement that schools provide instruction to students of compulsory school age, the New York State Constitution mandates that all children are entitled to a sound and basic education. New York State Education Law § 3205. In the instant case, an elementary school child was banned from his regular school program on three separate occasions for periods of between 1-3 days for a total of seven days in the first month of school alone and provided no alternate instruction whatsoever. He is now removed from school and suspended again as of September 13, 2017 and he was not provided with immediate alternative education. When the school finally did provide alternative instruction and an alleged IAES, it only offered the equivalent of two hours of instruction per day or ten hours per week. Accordingly, Aaden has not been provided with substantially equivalent education. The school misapprehends the law regarding alternative education, which requires that schools take immediate steps to provide substantially equivalent alternative education.

Further, ▬▬ right to FAPE is violated, as he has been provided only a few hours of tutoring in a public library as an IAES placement. He is not receiving counseling and speech and language services, nor has he been provided with a paraprofessional as required per his IEP. The IDEA is clear that in the determination of an appropriate alternative education and IAES, the setting must be selected "so as to enable the child to continue to participate in the general education curriculum, although in another setting, and to progress toward meeting the goals set up in the child's IEP." See 20 USC § 1415(k)(1)(D)(i). In this case, the limited tutoring offered and the issuance of an RSA for these services is neither sufficient nor appropriate.

## CONCLUSION

Success Academy deprived ▬▬ year-old ▬▬▬▬ of his rights to attend school after a hearing at which no oaths were taken and no verbatim record was maintained or provided to the parent despite a request for same, rendering it impossible to review. The school failed to meet its burden of proving the conduct charged in the suspension forming the basis for the special circumstance suspension, and the proceeding, which was controlled by legal counsel for the school and Board, was neither fair nor impartial. In short, the discipline imposed was improper and illegal. For these and the other reasons set forth herein and in the interest of fairness and equity, we ask that the suspension be immediately

reversed and expunged and that all records relating thereto be likewise expunged. In the alternative, even if the suspension is upheld it cannot be sustained as to the allegations that ███ stabbed the paraprofessional in the eye and that his behavior inflicted serious bodily injury and extreme pain upon his paraprofessional. These allegations are not only false but unsupported by the "record."

For the reasons stated above, we seek an immediate reinstatement of ███ to his current placement at Success Academy Charter School. We also seek compensatory education be provided by Success Academy for all hours of school instruction lost and related services while ███ was barred from attending school, and such other and further relief as may be just and proper.

Sincerely,

*Nancy Bedard*

Nancy Bedard, Attorney
Brooklyn Legal Services



**SENT VIA ELECTRONIC & OVERNIGHT MAIL**

September 13, 2017

To Kim Patrick and ▮▮▮▮ the Parents/Legal Guardians of ▮▮▮▮:

At Success Academy, we place tremendous importance on mutual respect and safety. We have great respect for our scholars and their families, and we expect the same in return. We have a zero-tolerance approach when it comes to violent or dangerous behavior. There is no compromise on these points.

On September 12, 2017, your scholar was asked to pick a clipboard off the ground. In response, your scholar:

- Stabbed his paraprofessional in the eye with a pencil, resulting in EMS transporting her immediately to the hospital for medical care;
- Repeatedly punched his paraprofessional in the face and chest, using two closed fists;
- Repeatedly slapped his paraprofessional in the face;
- Pulled his paraprofessional's hair.

▮▮▮▮ engaged in behavior that inflicted serious bodily injury and extreme physical pain upon his paraprofessional. Maintaining the current placement is substantially likely to result in further injury to himself and/or others. In addition to being dangerous, this highly concerning behavior poses an ongoing threat of disruption to the academic process.

The school has recommended that your scholar be removed to an Interim Alternative Educational Setting ("IAES") for 20 days. A hearing has been scheduled to discuss this matter with you further and determine whether this recommendation is appropriate. The hearing will occur on Monday, September 18, 2017 at 9:00am and will be held at Success Academy Prospect Heights, located at 801 Park Place, Floor 4, Brooklyn, New York 11216. You and your scholar have the right to be represented by counsel at your expense, the right to question witnesses, and the right to present witnesses and other evidence. If you plan to bring counsel and/or if there are specific individuals you would like to speak with at the hearing, please notify me at least 48 hours prior to the hearing so that I can make the necessary arrangements.

The school will notify the Committee on Special Education ("CSE") of the need for a Manifestation Determination Review ("MDR") to determine whether the above behavior was the result of your scholar's disability and to ensure that your scholar receives proper supports during the IAES. The CSE will reach out to you to schedule the MDR. In the meantime, the school is arranging for your scholar to receive alternative instruction that is substantially equivalent to his regular classroom program, and services that will allow him to make progress toward the goals on his Individualized Education Program ("IEP"), as determined by the IEP team. Under New York State compulsory education law, parents are required to send school-age students to alternative instruction during a disciplinary change in placement. Accordingly, scholars who do not attend alternative instruction will be marked absent. We will contact you with further details about those arrangements once they have been finalized.

You and ▇▇▇ have protections under the procedural safeguards provisions in Part B of the Individuals with Disabilities Education Act. Please review the attached Procedural Safeguards notice, also available at:
http://www.p12.nysed.gov/specialed/formsnotices/documents/NYSEDProceduralSafeguardsNoticeJuly2017v2.pdf.

Please call Julie Melki at 646-288-7333 if you have any questions regarding this process.

Sincerely,

Javeria Khan
Managing Director of Schools



**SENT VIA ELECTRONIC AND OVERNIGHT MAIL**

September 19, 2017

To Kim Patrick and ▮▮▮▮ the Parents/Legal Guardians of ▮▮▮▮

On September 18, 2017, at 4:00 pm, a hearing was held at Success Academy Prospect Heights to determine whether ▮▮▮▮ September 12, 2017 placement in an Interim Alternative Educational Setting ("IAES") was appropriate.

As you are aware, ▮▮▮▮ was placed in an IAES on September 12, 2017 after he:
- Stabbed his paraprofessional in the eye with a pencil, resulting in EMS transporting her immediately to the hospital for medical care;
- Repeatedly punched his paraprofessional in the face and chest, using two closed fists;
- Repeatedly slapped his paraprofessional in the face;
- Pulled his paraprofessional's hair.

At the hearing, the following individual(s) spoke about their recollection of the incident above:
- Ms. Sydney Solomon, principal of Prospect Heights;
- Ms. Dorothy Atkin-Mapes, ▮▮▮▮ teacher;
- Mr. Garvin ▮▮▮▮ father.

After careful consideration of the findings described in the document attached, I have determined that the IAES was appropriate. Accordingly, your scholar will remain in the IAES for a total of 20 school days.

▮▮▮▮ will remain in the IAES until October 13, 2017 and may return to Success Academy Prospect Heights on October 16, 2017. During this time, ▮▮▮▮ will continue to receive alternative instruction that is substantially equivalent to his regular classroom program and services to allow him to make progress toward the goals on his Individualized Education Program ("IEP"), as determined by the IEP team.



If you choose, you may appeal this decision to the Board of Trustees of the School within 10 business days. You may submit your appeal to:

> Samuel Cole
> Board Chairperson
> Success Academy Charter School – NYC Board of Trustees
> 95 Pine Street, 6th Floor
> New York, New York 10005

You and your child have protections under the procedural safeguards provisions in Part B of the Individuals with Disabilities Education Act. A copy of New York State's Procedural Safeguards Notice is attached and is available at:

http://www.p12.nysed.gov/specialed/formsnotices/documents/NYSEDProceduralSafeguardsNoticeJuly2017v2.pdf.

Please call me at 347-268-0327 if you have any questions about the above.

Sincerely,

LaMae de Jongh
Managing Director of Schools

Cc: Nancy Bedard
Darnell Usher
℅ Brooklyn Legal Services
105 Court Street, 4th Floor
Brooklyn, New York 11201


Encl: IAES Hearing Findings Sheet
Procedural Safeguards



# Success Academy Prospect Heights

## IAES HEARING FINDINGS SHEET

School Manager/Superintendent Name: Dallas dijh

Scholar Name: ███████

Parent/Guardian Name: Kim Patrick, Dawn █████

Hearing Date: September 18, 2017

Hearing Attendees:

| Name | Title/Relationship to Scholar |
|---|---|
| Kim Patrick | Mother of ███ |
| Dawn ███ | Father of ███ |
| Sydney Solomon | Principal of SAPH |
| Dorothy Mape | SAPH Teacher of ███ |
| Chris Delippe | Legal Counsel, Success Academy |
| Nancy Bedard | BLS Advocate |
| Darnell Upshew | Advocate |
| | |
| | |

*If there are additional individuals, please continue this list on the back of this page.*

801 Park Place | Floor 4 | Brooklyn, New York 11216 | P: 646.790.2121 | F: 646.514.2070 | successacademies.org



## Success Academy Prospect Heights

After meeting with the above-listed individuals, considering the information provided at the hearing, and considering any other evidence, I find that there is competent and substantial evidence to support the following:

1. On ___Sept 12th, 2017___ (date), the Scholar:
   a. Carried or possessed a weapon: YES ☐ NO ☐ N/A ☑
   b. Knowingly possessed or used illegal drugs: YES ☐ NO ☐ N/A ☑
   c. Sold or solicited the sale of illegal drugs: YES ☐ NO ☐ N/A ☑
   d. Inflicted serious bodily injury upon another person: YES ☑ NO ☐ N/A ☐

   Notes: Scholar's behaviors included punching the paraprofessional with two fists, slapping the paraprofessional in the face, pulling the paraprofessional's hair and other. Throwing a pencil or using pencil to stab the eye of paraprofessional. In either case, the paraprofessional sustained an injury which required medical care.

2. The above listed action(s) in Question 1 that has been checked "Yes" occurred while at school, on school premises, and/or at a school function: YES ☑ NO ☐ N/A ☐

   Notes: These behaviors and actions occurred during the school day in the scholar's classroom.

3. Additional evidence/factors considered: Neither parents, nor their attorney or advocate, refuted the scholar's behaviors or actions. It is the severity of the actions and behaviors which form of the most consideration.

4. Based on the foregoing, I have determined that the Scholar:
   ☑ Should be removed to an Interim Alternative Educational Setting (IAES)
   ☐ Should not be removed to an IAES

**S | Success Academy
Prospect Heights**

If the scholar should be removed to the IAES, the scholar should remain in the IAES for a total of _20_ days, returning to School on _Oct 16th 2017_

Notes:

_____
_____
_____
_____
_____

If applicable, details of the setting for the IAES will be provided to the Parent/Guardian by the School.

**School Manager / Superintendent Signature:**

_[signature]_

Name: _LaMar deborah_

Date: _September 19, 2017_

**Right to Appeal and Procedural Safeguards.** This decision may be appealed to the Board of Trustees of the School within 10 business days of this hearing. The appeal may be submitted to:
  Samuel Cole
  Board Chairperson
  Success Academy Charter School – NYC Board of Trustees
  95 Pine Street, 6th Floor
  New York, New York 10005

Students with disabilities have protections under the procedural safeguards provisions in Part B of the Individuals with Disabilities Education Act. A copy of New York State's Procedural Safeguards Notice is attached and is available at:
http://www.p12.nysed.gov/specialed/formsnotices/documents/NYSEDProceduralSafeguardsNoticeJuly2017v2.pdf.