UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KIM PATRICK and AG, a minor, by and
through his Parent and Next Friend,

                Plaintiffs,

   -against-                                  **MEMORANDUM & ORDER**
                                              17-CV-6846 (PKC) (RLM)

SUCCESS ACADEMY CHARTER SCHOOLS,
INC., SUCCESS ACADEMY PROSPECT
HEIGHTS, SYDNEY SOLOMON, in her
individual and official capacity as Principal of
Success Academy Prospect Heights, LAMAE
DE JONGH, in her individual and official
capacity as Managing Director of Schools
Success Academy Charter Schools, SAMUEL
COLE, in his individual and official capacity as
Board Chairperson, Success Academy Charter
Schools-NYC Board of Trustees, and
CATHERINE SHAINKER, in her individual
and official capacity as Board Member,
Success Academy Charter Schools-NYC Board
of Trustees,

                Defendants.
------------------------------------------------------------X
PAMELA K. CHEN, United States District Judge:

      Plaintiffs Kim Patrick and her son, AG, bring this action against Defendants seeking damages and injunctive relief. They allege that Defendant Success Academy Charter Schools, Inc.'s ("Success Academy") disciplinary procedures for suspensions in excess of ten days constitute a denial of due process under the Fourteenth Amendment of the U.S. Constitution, Article XI of the New York State Constitution, and New York Education Law. Although the Court finds that Plaintiffs' claims raise a serious constitutional question, for the reasons stated herein, Plaintiffs' motion for a preliminary injunction is denied.

# BACKGROUND

AG is a seven-year old child in first grade at Success Academy Prospect Heights, a public charter school. (Complaint ("Compl."), Dkt. 1, at ¶ 55.) Since AG started at Success Academy in October 2016, he has been suspended dozens of times; however, for purposes of this motion, the Court will focus on the two suspensions each exceeding ten consecutive days. (*See* Declaration of Kim Patrick ("Patrick Decl."), Dkt. 7-2; Plaintiffs' Brief ("Pls.' Br."), Dkt. 7-3, at 15.)[1]

*A. February 24, 2017 Suspension*

On February 24, 2017, AG was suspended for forty-five days for allegedly engaging in "extremely violent and unsafe behavior." (Dkt. 7-4 at 32.) According to Defendants, AG:

- Grabb[ed] an Assistant Principal by the hair and us[ed] a tight grip to yank her down the hallway, while using his other hand to repeatedly hit[] her in the head and neck, leaving several marks;
- Intentionally [threw] a stool at the Assistant Principal, striking her in the hand;
- Repeatedly and forcefully yank[ed] on a lanyard worn around the Assistant Principal's neck, resulting in a neck injury that required immediate medical care;
- Repeatedly kick[ed] the Assistant Principal and another member of school leadership;
- T[ore] a mounted placard off the wall and thr[ew] it at his classmates; and
- Charg[ed] his body at and collid[ed] with the Assistant Principal.

(*Id.*) Because AG is a student with a disability[2], he was removed from Success Academy and placed in an Interim Alternative Educational Setting ("IAES"), as provided for under the Individuals with Disabilities Education Act ("IDEA"), where the student is accused of committing "serious bodily injury." 20 U.S.C. § 1415(k)(1)(G)(iii). On March 7, 2017, pursuant to the IDEA,

---

[1] All page numbers refer to the pagination generated by the CM/ECF system and not the document's internal pagination.

[2] AG is classified as "other health impaired" due to Beta-thalassemia, a rare blood disorder. (Declaration of Sydney Solomon ("Solomon Decl."), Dkt. 16 at ¶ 4.) As a result, AG has "below average academic performance, below average speech and language skills," and can exhibit disruptive and dangerous behavior. (Compl. at ¶ 58; Pls.' Br. at 16; Dkt. 16-1 at 4.)

Plaintiffs' counsel requested an "impartial due process hearing" to challenge the suspension. Such hearings are required to be completed by the Department of Education's Impartial Hearing Office ("DOE's IHO"). *Id.* § 1415(f); (*see also* First IHO Decision, Dkt. 7-4, at 36-37). AG remained in the IAES during the pendency of the hearing and appeals process. 20 U.S.C. § 1415(k)(1)(G). Success Academy is not a party to the DOE process. (Declaration of Nancy Bedard ("Bedard Decl."), Dkt. 7-1, at ¶ 17); 20 U.S.C. § 1401(19)(A).

On March 28 and 29, 2017, the IHO held a hearing regarding the February 24th suspension. (First IHO Decision at 36-41.) Plaintiffs argued that "the allegations . . . [did] not satisfy any of the criteria needed for a determination that serious bodily injury occurred" and that they "were deprived of due process by the failure of the DOE and Success Academy to arrange for a suspension hearing" under New York Education Law. (*Id.* at 39.) The IHO found, *inter alia*, that AG's suspension was "unlawful" and that he should be "immediately reinstated at Success Academy" because Success Academy violated the IDEA by failing to provide parental notice "before a disciplinary change in placement [such as an IAES] [wa]s made." (*Id.* at 39-40.)[3] Furthermore, the IHO found that the factual allegations made by Success Academy "d[id] not rise to the level of serious bodily injury as that term is defined in the law" because there was a "lack of demonstrated serious injury" to the Assistant Principal. (*Id.* at 40 & n.4.) AG was reinstated at Success Academy after having missed approximately twenty-four days of school. (Compl. at ¶ 89.)

---

[3] Notably, the IHO also found that "the failure of Success Academy and the DOE to provide the parent with notice and an opportunity for a suspension hearing pursuant to N.Y. Educ. Law 3214(c) [was] a plain violation of due process in its own right and subvert[ed] meaningful due process proceedings" under the IDEA, but that the IHO did "not have jurisdiction to order a suspension hearing in the matter." (First IHO Decision at 39.)

*B. September 12, 2017 Suspension*

On September 13, 2017, Plaintiff Patrick received a letter from Success Academy stating that, on September 12, 2017, AG engaged in "behavior that inflicted serious bodily injury and extreme physical pain." (Dkt. 7-4 at 46.) Specifically, the letter said that in response to being asked to pick a clipboard off the ground, AG:

- Stabbed his paraprofessional in the eye with a pencil, resulting in EMS transporting her immediately to the hospital for medical care;
- Repeatedly punched his paraprofessional in the face and chest, using two closed fists;
- Repeatedly slapped his paraprofessional in the face;
- Pulled his paraprofessional's hair.

(*Id.*) The letter further stated that AG was suspended for twenty days and would be removed to an IAES, and that Success Academy had scheduled a hearing for September 18, 2017—five days after the incident—to determine whether removing AG was appropriate. (*Id.*) The placement letter also noted that Plaintiffs had "the right to be represented by counsel at [their] expense, the right to question witnesses, and the right to present witnesses and other evidence." (*Id.*)

On September 18, 2018, a hearing was held at Success Academy Prospect Heights before Defendant LaMae de Jongh, the Managing Director of Success Academy. Defendant Sydney Solomon (the principal of Success Academy Prospect Heights), AG's teacher, and AG's father all testified at the hearing; none were put under oath. (*Id.* at 49; Compl. at ¶ 109.) The school also introduced as evidence an index card from the allegedly injured paraprofessional that contained her recitation of the events, but she did not testify. (Compl. at ¶ 110; Dkt. 17-16.) Plaintiff Patrick and Plaintiffs' counsel attended the hearing, but did not cross-examine or put on any witnesses. (Compl. at ¶ 107; Defendants' Sur-Reply, Dkt. 23, at 6 n.3.) No verbatim recording or record of the hearing was created or maintained. (Compl. at ¶¶ 109, 118.)

On September 19, 2017, Defendant de Jongh sent a letter to Plaintiffs stating that "[a]fter careful consideration of the findings[,] . . . [de Jongh] determined that the IAES was appropriate." (Dkt. 7-4 at 49-50.) The letter further stated that Plaintiffs could appeal the decision to Success Academy's Board of Trustees—which included Defendants Samuel Cole and Catherine Shainker—within ten business days. (*Id.* at 50.) Attached to the letter was an "IAES Hearing Findings Sheet," which noted that "[n]either AG's parents nor attorney nor advocate refuted the scholar's behavior." (*Id.* at 53.) Plaintiffs filed an internal appeal of Success Academy's findings on September 29, 2017. (Bedard Decl. at ¶ 47.) On October 17, 2017, Defendant Shainker, on behalf of the Board of Trustees, denied Plaintiffs' appeal. (*Id.* at ¶ 48; Dkt. 7-4 at 64-66.) The letter stated, *inter alia*, that the "paraprofessional's eye was in fact injured by AG's actions" and that this behavior met the "serious bodily injury" standard for removal to an IAES. (*Id.* at 64-65.) The Board further found that Plaintiffs had received adequate notice of the hearing, that no transcript or oath was required, and that Success Academy schools are not bound by the disciplinary hearing due process requirements of New York Education Law 3214. (*Id.* at 65.) In response to this determination, on October 20, 2017, Plaintiff Patrick requested an IHO Hearing, which was held on November 6, 2017. (Patrick Decl. at ¶ 12; Second IHO Decision, Dkt. 7-4, at 57.) Plaintiff argued that the suspension hearing "was improperly conducted and deprived the student of due process." (Second IHO Decision at 57.)

The DOE's IHO issued its decision on November 14, 2017, by which point AG had already served the entirety of his suspension and was back at Success Academy. (*Id.* at 58.) The IHO found, in relevant part, that the "appropriateness of the suspension hearing by Success Academy in this matter . . . [was] outside [his] jurisdiction, and [he] decline[d] to make any findings or order relief on this issue." (*Id.* at 59.) Furthermore, "[w]ith respect to the appropriateness of the

5

suspension to an IAES because the student's behavior caused serious bodily injury[,] . . . that issue must also be explored through appeal of the suspension hearing and upon that record[,] . . . [and that] on the record before [him] it [wa]s highly unlikely the standard was met, and [he had] reached this same conclusion recently in another matter involving the same student and school." (*Id.*)

On November 22, 2017, Plaintiffs filed their Complaint and motion for preliminary injunction in this action seeking to have the Court prohibit Success Academy from suspending AG for more than ten consecutive days without a prompt hearing. (Dkts. 1,7.)[4] A hearing on the motion, at which both parties presented argument, took place on December 15, 2017.

## DISCUSSION

*A. Standard of Review*

"Preliminary injunctive relief 'is an extraordinary remedy that should not be granted as a routine matter.'" *Cooke v. U.S. Bank Nat'l Assoc.*, No. 17-CV-1393(KAM)(RER), 2017 WL 4334084, at *1 (E.D.N.Y. July 10, 2017) (quoting *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir. 1990)). A preliminary injunction may only be issued where a plaintiff demonstrates "(1) either a likelihood of success on the merits or 'sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the [applicant's] favor,' and (2) the likelihood of irreparable harm in the absence of such an order." *Id.* (quoting *In re Feit & Drexler, Inc.*, 760 F.2d 406, 415 (2d Cir. 1985)).

---

[4] In their moving papers, Plaintiffs also asked that Success Academy be enjoined from placing AG in an IAES without sufficient proof of "serious bodily injury" and from discriminating against AG. (Dkts. 1, 7; Bedard Decl. at ¶ 59.) At the motion hearing, Plaintiffs clarified that they had resolved, through the administrative process, their complaints about the IAES placement process and were currently satisfied with that process.

6

*B. There Exist Sufficiently Serious Questions Going to the Merits to Make Them Fair Ground for Litigation*

The allegations in this case are of great constitutional moment. In just over one school year at Success Academy, AG has served two lengthy suspensions; he served twenty-four of the forty-five days for the February 24, 2017 suspension before it was overturned by the IHO, and the full twenty days for the September 12, 2017 suspension.[5] Success Academy failed to provide AG with any kind of suspension hearing in connection with the February 24th incident, but provided an internal hearing within five days of the September 12th suspension.[6] Even with this new suspension hearing procedure, however, there remains a fundamental constitutional question as to whether Success Academy—which claims that, as a charter school, it is not bound by state education law due process requirements (Defendants' Brief ("Defs.' Br."), Dkt. 14, at 23-24)[7]—provides an adequate alternative post-deprivation remedy to satisfy the Fourteenth Amendment.

---

[5] These lengthy suspensions, combined with a steady stream of one- to three-day suspensions, resulted in AG missing enough class time at Success Academy—which Plaintiffs allege resulted in AG being deprived of his "essential . . . services" (Compl. at ¶ 87)—to have to repeat the first grade (Pls.' Br. at 15). AG served at least 39 suspension days—the parties disagree as to the exact number—or almost two months of school, during the 2016-2017 school year. (*See* Dkt. 16-4 (one day); Dkt. 16-5 (three days); Dkt. 16-6 (one day); Dkt. 16-7 (three days); Dkt. 16-8 (two days); Solomon Decl. at ¶ 12-14 (three days); Pls.' Br. at 9 (twenty-four days); and Dkt. 16-21 and Solomon Decl. at ¶ 34 (two days).)

[6] It should be noted that, as required by the IDEA, 20 U.S.C. § 1415(k)(1)(E), a Manifestation Determination Review ("MDR") was held in connection with both the February 24 and September 12 suspensions (Dkt. 7-4 at 37, 58). However, as discussed *infra*, these MDRs are not the same as the suspension hearings required by New York City Education Law or, as argued by Plaintiff, the Fourteenth Amendment. Indeed, as made clear by Plaintiffs' counsel during oral argument, their claim is that due process requires that *all* students—whether disabled or not and whether educated in a charter or public school—are entitled to a suspension hearing to determine the correctness of any suspension in excess of ten consecutive days.

[7] The Court declines to exercise supplemental jurisdiction over the novel state law issue of whether New York Education Law 3214 applies to charter schools, such as Success Academy. (Compl. at ¶¶ 180-83; Defs.' Br. at 23-24.) *See Carver v. Nassau Cty. Interim Fin. Auth.*, 730 F.3d 150, 154 (2d Cir. 2013) ("This case concededly presents an unresolved question of state law and is also one in which there are exceptional circumstances which provide compelling reasons for

While it is clear that Success Academy has the right to remove AG from school without a pre-deprivation hearing if it concludes that his behavior is dangerous or violent,[8] such authority must be "consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 507 (1969); *cf. Lassiter v. Dep't of Soc. Servs. of Durham Cty., N.C.*, 452 U.S. 18, 27 (1981) ("[*Mathews v. Eldridge*, 424 U.S. 319 (1976)] propounds three elements to be evaluated in deciding what due process requires . . . the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions."). Specifically, in *Goss v. Lopez*, the Court stated that such "safeguards" include suspension hearings, which "should follow [a suspension] as soon as practicable." 419 U.S. 565, 582-83 (1975); *see also id.* at 579 ("At the very minimum, . . . students facing suspension and the consequent interference with a protected property interest must be given some kind of notice and afforded some kind of hearing."). In *Goss*, the Supreme Court held that a suspension exceeding ten days "is a serious event in the life of the suspended child" and requires "more formal procedures" before being imposed. *Id.* at 565, 584; *see also Lopez v. Bay Shore Union Free Sch. Dist.*, 668 F. Supp. 2d 406, 419 (E.D.N.Y. 2009) ("Students facing more serious consequences are afforded additional procedural protections, the scope of which is fluid."). In this case, the question at issue is how soon after a student receives a suspension of

---

declining jurisdiction. Unlike a case involving a dispute between private parties, this case involves the construction of a significant provision of an extraordinarily consequential legislative scheme . . . [which] should be resolved by New York state courts because the manner in which the statute is construed implicates significant state interests.").

[8] The Supreme Court has made clear that "there are recurring situations in which prior notice and hearing cannot be insisted upon. Students whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process may be immediately removed from school." *Goss v. Lopez*, 419 U.S. 565, 582 (1975); *see also Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 507 (1969) (noting that the Supreme Court "has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials").

8

more than ten consecutive days must a charter school hold a hearing, in order to comply with federal due process.[9]

At the same time, however, there is a question as to whether AG, as a disabled student, has actually been deprived of a property interest to sustain a procedural due process claim. *See Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL–CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (holding that in order to assert a violation of procedural due process rights, a plaintiff must "first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process" (citation and emphasis omitted)). Because AG is a disabled student, he is placed into an IAES while he is suspended, rather than being subjected to "total exclusion from the educational process" as a non-disabled student might be. *Goss*, 419 U.S. at 576. The Second Circuit has held that a disabled child does not have "a right, under the IDEA, to graduate . . . from a particular educational institution—specifically, the child's original school rather than an IAES." *Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 205-06 (2d Cir. 2007). This does not address, however, the question of whether children—disabled or not—have such a right under the *Fourteenth Amendment*. While it remains an open question in this Circuit, the Fifth Circuit "has consistently held that a student who is removed from [his or] her regular public school, but is given access to

---

[9] Despite Defendants' arguments to the contrary, this is an independent issue from the hearing procedures and timing set forth under the IDEA. (*See* Defs.' Br. at 25-28.) The IDEA only applies to disabled students; the question here is about whether charter schools are required to hold suspension hearings with the same dispatch as in non-charter public schools for non-disabled students. *See, e.g.*, 2000 Op. Comm. Ed. No. 14,419 ("At the end of 5th day of suspension, student must be readmitted to school unless a hearing sustaining longer period of suspension was held within initial 5-day suspension period, or unless adjournment was requested by student or parent."); *DeFabio v. E. Hampton Union Free Sch. Dist.,* 658 F. Supp. 2d 461, 490-91 (E.D.N.Y. 2009) (finding that a hearing held on the fifth day of the child's suspension "was in compliance with *Goss* and state law"), *aff'd*, 623 F.3d 71 (2d Cir. 2010); *J.E. ex rel. Edwards v. Ctr. Moriches Union Free Sch. Dist*., 898 F. Supp. 2d 516, 542-45 (E.D.N.Y. 2012) (hearing within four days of student's suspension satisfied due process).

an alternative education program, has not been denied [his or] her entitlement to public education." *Swindle v. Livingston Par. Sch. Bd.*, 655 F.3d 386, 394 (5th Cir. 2011) (collecting cases); *see also Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011) ("[A] student's transfer [from his or her regular school] to an alternative education program does not deny access to public education, and therefore does not violate the Fourteenth Amendment interest.").

Thus, the Court finds that serious constitutional questions are presented by Plaintiffs' complaint and motion for preliminary relief.

### C. Irreparable Harm

Despite the "sufficiently serious questions" at issue in this case, Plaintiffs cannot demonstrate irreparable harm. It is a "basic obligation of the plaintiff [who is seeking a preliminary injunction] to make a clear showing of the threat of irreparable harm. That is a fundamental and traditional requirement of all preliminary injunctive relief[.]" *Triebwasser & Katz v. Am. Tel. & Tel. Co.*, 535 F.2d 1356, 1359 (2d Cir. 1976) (citing *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975)). The fact that Defendants held a suspension hearing within five days of issuing the second suspension weighs heavily against granting Plaintiffs' motion for a preliminary injunction. *See Holland v. Goord*, 758 F.3d 215, 223 (2d Cir. 2014) ("While a defendant's 'voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice,' it is nonetheless 'an important factor bearing on the question whether a court should exercise its power' to entertain a request for injunctive relief or declare it moot." (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982))).[10] Thus, the Court finds that, for now, these voluntary measures satisfy the federal due process concern that has been presented at

---

[10] Furthermore, at oral argument, counsel for Success Academy represented that the school was committed to using this procedure in the future for AG and other students.

this stage of the case, namely, that a charter school student suspended for more than ten school days receive a prompt suspension hearing.[11]

## CONCLUSION

For the reasons stated herein, Plaintiffs' motion for preliminary injunction is denied. The Court expects that in light of the limited factual disputes, this case will proceed with expedited discovery and dispositive motion briefing. The parties should address, at a minimum, the following issues in their subsequent briefing: (1) whether AG, who is entitled to an IAES placement, has been deprived of a property interest so as to sustain a procedural due process claim; (2) what federal due process protections apply to charter school students under *Goss* for suspensions in excess of ten days; and (3) why Plaintiffs should not be required to exhaust their administrative remedies under any remaining IDEA claims. The Court declines to exercise supplemental jurisdiction over the novel state law issue of whether New York Education Law 3214 applies to charter schools.

The parties should seek a conference with the assigned Magistrate Judge, the Honorable Roanne L. Mann, regarding any anticipated discovery. If none is contemplated, the parties shall submit a proposed dispositive motion briefing schedule by January 12, 2018.

SO ORDERED.

/s/Pamela K. Chen  
Pamela K. Chen  
United States District Judge

Dated: December 22, 2017  
Brooklyn, New York

---

[11] While Plaintiffs also argue that federal due process requires that witnesses must be sworn at suspension hearings and that verbatim transcripts of the hearings must be prepared, (Pls.' Br. at 21-22), the Court finds that Plaintiffs have not yet sufficiently demonstrated a substantial question on those issues, so as to warrant preliminary relief.