1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

2

3    ----------------------------------X
                                      :
4    KIM PATRICK,                     :
                   Plaintiff,         :   17-CV-06846 (PKC)
5                                     :
                     v.               :   225 Cadman Plaza East
6                                     :   Brooklyn, New York
                                      :
7    SUCCESS ACADEMY INC., et al.     :   February 28, 2018
                                      :
8                    Defendant.       :
     ----------------------------------X

9

10       TRANSCRIPT OF CIVIL CAUSE FOR INITIAL CONFERENCE
           BEFORE THE HONORABLE ROBERT M. LEVY
11             UNITED STATES MAGISTRATE JUDGE

12
     APPEARANCES:
13
     For the Plaintiff:        SARAH E. DRANOFF, ESQ.
14                             NANCY BEDARD, ESQ.
                               Brooklyn Legal Services, Corp. B
15                             105 court Street, 4th Floor
                               Brooklyn, New York 11201
16
     For the Defendant:        CHRISTOPHER NORMAN LAVIGNE, ESQ.
17                             VANESSA M. BIONDO, ESQ.
                               AARON MICHAEL SAFANE, ESQ.
18                             Success Academy Charter School
                               95 Pine Street, 6th Floor
19                             New York, New York 10005

20

21   Court Transcriber:        SARA WINKELJOHN, CET-808
                               TypeWrite Word Processing Service
22                             211 N Milton Road
                               Saratoga Springs, New York 12866
23

24

25

     Proceedings recorded by electronic sound recording, transcript
     produced by transcription service

2

1  (Proceedings began 3:51 p.m.)

2          THE COURT:  This is Docket No. 17-CV-06846, Patrick

3  v. Success Academy.

4          Can counsel please state their appearances for the

5  record?

6          MS. DRANOFF:  Sarah Dranoff, Brooklyn Legal Services

7  for plaintiff.

8          MS. BEDARD:  Nancy Bedard, Brooklyn Legal Services

9  for plaintiff.

10         MR. LAVIGNE:  Christopher Lavigne for Success

11  Academy and the rest of the defendants.

12         MS. BIONDO:  Vanessa Biondo with Success Academy for

13  defendants.

14         MR. SAFANE:  Aaron Safane, defendants.

15         THE COURT:  Thank you.  Okay.  So I have both of

16  your letters, read them both.  Who would like to start off?  I

17  guess whose motion is it actually?

18         MR. LAVIGNE:  Is it -- I -- we submitted the letter,

19  so we'll start off.

20         THE COURT:  So you can start.  Yeah, sure.

21         MR. LAVIGNE:  Our position is pretty

22  straightforward.  I think we -- and we made some discovery.

23  You -- it's not real discovery but we produced documents

24  pursuant to a preliminary judgment -- a preliminary injunction

25  motion, fairly voluminous.  Judge Chen issued a decision on

1   that and instructed us two things.  One, if discovery, further

2   discovery, is contemplated to see a magistrate judge about it,

3   and if none is further contemplated to make a dispositive

4   motion.

5            Our position, two points on that.  One, plaintiffs

6   have yet to describe what documents they want.  During our

7   first initial conference we asked, you know, give us a list of

8   what sort of documents you want, and, you know, we'll figure

9   out what that means.  And two, we intend to make a motion to

10  dismiss which we think will be dispositive substantively and

11  jurisdictionally.  And we think that, you know, any further

12  discovery on both sides -- you know, they're not the only ones

13  that would like discovery.  It makes sense to, you know, pause

14  that and -- you know, pause that for the teachers for the

15  student and the parents involved pending a decision on that

16  what we think would be dispositive motion.

17           THE COURT:  Okay.  Thanks.

18           MS. DRANOFF:  To respond, first of all, we were not

19  asked for a list of documents that we were -- wanted produced.

20  We didn't get to that place at all.  We simply had the initial

21  conference where we discussed dates and we proposed dates.

22  That's sort of standard in my experience, a discovery

23  schedule.  And the response that we got from counsel, not that

24  day but a week later, was that they thought it was not

25  necessary.  They didn't want to go to that place.  They wanted

4

1   to have settlement discussions.  And then intend at some point

2   in the future to make a -- to file a motion to dismiss.

3           But the case was filed in November.  We have yet to

4   see an answer or a motion.  They've talked a lot about filing

5   a motion to dismiss but haven't produced anything or prepared

6   anything or filed it.  And I don't think it merits staying

7   discovery before we've -- before anything has been filed, you

8   know, pending a theoretical motion to be filed sometime in the

9   future.

10          Secondly, you know, we'll be glad to provide a list

11  of documents once we've entered into a -- you know, put

12  together a report and come up with a basic schedule for

13  discovery which, of course, could be, you know, revised as

14  appropriate over time.  There's no basis for defendants to

15  claim that they would be burdened by discovery when they don't

16  even know what we would be asking for.  Nothing's been asked

17  yet.

18          THE COURT:  Okay.

19          MR. LAVIGNE:  I guess that's the point, though.

20  It's hard for us to blindly enter into a discovery schedule --

21  which one of the dates was March 14th that was originally

22  proposed -- when, one, settlement was going on.  Number two,

23  we don't know what it is that you want.  We don't -- I didn't

24  think it would be appropriate for us to sort of come into

25  court saying, yeah, these are the dates we agreed upon.  We

5

1  don't know what they want.  So, you know, it's hard for us to

2  say we'll get that.  And it's not so easy.  I mean Judge Gold

3  in similar case made a very specific point that, you know, we

4  are bound by FERPA, by other federal and state regulations to

5  sort of undergo this thorough redaction so that information

6  about our students isn't inadvertently disclosed.

7        THE COURT:  Is that what you're most concerned

8  about?  Is -- that's where the burden would be?

9        MR. LAVIGNE:  You know, it's hard to say what we're

10  concerned about.  The main thing we're concerned about is if

11  we're talking about depositions and things like that or

12  medical examinations we just don't think -- we're not saying

13  that that isn't something everybody's entitled to.  We're just

14  saying that it makes sense to sort of key that off a

15  reasonable schedule pending a motion to dismiss decision

16  because we don't think the case is going to be going forward.

17  Regarding document discovery, that's certainly what we're

18  concerned about.

19        THE COURT:  Do you think the case is not going to go

20  forward on any claim or just on certain claims?

21        MR. LAVIGNE:  On any claim.

22        THE COURT:  And is that based on your research or

23  what Judge Chen said or what?

24        MR. LAVIGNE:  Both.  We think substantively sort of

25  the due process claims really focus on two factual issues and

1  we think it -- which are suspensions longer than 10 days.

2  That's sort of how Judge Chen started her opinion.  Those have

3  only happened in two instances, one in February 2017, one in

4  September 2017.  Judge Chen is -- the idea that State Law 3214

5  is no longer in the case, the only issue is whether under GASS

6  [Ph.] and the IDA we provided -- Success provided adequate due

7  process.  That's a fluid concept.  GASS is not specific.  It

8  just says more thorough process is needed.  Several other

9  courts, including EDNY, has said that doing what we did, which

10  was provide an -- a reasonable notice at a quick hearing and

11  an opportunity to be heard, present witnesses, to confront

12  witnesses, and present evidence is sufficient process for

13  these longer-term suspensions.

14          Secondly, more fundamentally, cases say that there's

15  no property right to provide a student alternative with

16  alternative education services or provide it while a student

17  is suspended.  And then sort of the rest of the issues which

18  concern, you know, the Rehabilitation Act, the ADA, those

19  issues concern students free and appropriate public education

20  and we, the defendants, take the position that without

21  exhausting their administrative remedies, the Court just

22  doesn't have jurisdiction to hear those cases -- to hear those

23  claims.

24          THE COURT:  Which claims again?

25          MR. LAVIGNE:  I don't know the exact counts by the

7

1   Rehabilitation Act claims and the ADA claims.

2           THE COURT:  And what kind of exhaustion do you think

3   needs to be done?

4           MR. LAVIGNE:  The Second Circuit and several courts

5   in the EDNY have said that there's two administrative bodies

6   you need to have your claim heard before coming to federal

7   court.  One, an impartial hearing office --

8           THE COURT:  Right.

9           MR. LAVIGNE:  -- subject to part of the DOE, and

10  then, two, a stay review officer from the SED, the State

11  Education Department.

12          THE COURT:  Right.

13          MR. LAVIGNE:  And in this case, the plaintiffs have

14  not gone to the SED and admitted that -- admittedly so they

15  had not gone to the SED, so we don't think those claims stand.

16  There is two other remaining state court claims and

17  substantively we think those should be dismissed for the same

18  reasons that our federal claims would be but also because --

19  for a more fundamental reason.  We were never given notice of

20  claim which is required under state law, and that's something

21  only a state court can hear and excuse.

22          MS. DRANOFF:  Well, first of all, with respect to

23  the property right, the cases that Judge Chen cited to were

24  from the Fifth Circuit, and we don't -- the way that her

25  decision was written indicates that that's not the end of the

1    inquiry.  We have -- you know, obviously disagree about that

2    position and -- that defendants have adopted, and there's much

3    more briefing to be done on that issue in particular.  With

4    respect to exhaustion --

5          THE COURT:  Are there factual issues there?  I'm

6    sorry to interrupt.

7          MS. DRANOFF:  Factual issues with regard --

8          THE COURT:  Uh-huh.

9          MS. DRANOFF:  Not that I believe.

10         THE COURT:  Okay.  Because one of the things I want

11   to clarify is whether there are factual issues for the claims

12   that you're talking about.  So for the due process, the

13   property right, there's no factual issue at this point?  It's

14   more a legal issue?

15         MS. DRANOFF:  That's a legal issue in my opinion.

16         THE COURT:  So you don't need discovery on that?

17         MS. BEDARD:  May I speak?

18         THE COURT:  Sure.

19         MS. BEDARD:  Well, I do believe the discovery on

20   some of the factual issues -- or many of them -- some of the

21   claims there's claims of discrimination and retaliation.

22         THE COURT:  Right, I just meant on the -- on the due

23   process property interest.

24         MS. BEDARD:  On the due process?  Well, right now

25   I'm already hearing a conflict in the facts because I am

1   positive that my client did not actually, in fact, have a

2   hearing.  So the student was suspended for 45 days on the

3   first suspension and there was no hearing whatsoever.  So

4   right there --

5           THE COURT:  I'm sorry.  Is there a dispute about

6   that?

7           MS. BEDARD:  Yeah.

8           THE COURT:  No dispute about that?

9           MR. LAVIGNE:  I mean we disagree.

10          THE COURT:  Okay.

11          MR. LAVIGNE:  We think that basically our bottom

12  line is on the pleadings alone there is -- we do -- we were

13  not -- we don't think there's a factual issue.  We think based

14  on the pleadings alone due process was provided whether a

15  hearing was ever held in the first place, in the first

16  instance in March or not, due process [inaudible] provided for

17  a variety of reasons, including that they sort of appealed

18  that to an impartial hearing officer.  That impartial hearing

19  officer said -- had some issues with our process for issuing

20  an IES.  We changed it.  Then had -- the second time it

21  happened had a full-blown hearing.  We think all of that

22  regarding process is in the pleadings.  The property interest

23  part of it also is in the pleadings.

24          MS. BEDARD:  I --

25          THE COURT:  Is there -- is there more that you need

 1   than what's in the pleadings?

 2           MS. BEDARD:  On the issue of the suspensions, the

 3   two suspensions?  At this point, I'm not positive, but there

 4   -- I would have to think about that for a few moments.

 5           THE COURT:  Okay.

 6           MS. BEDARD:  Because we seem to be having a dispute

 7   about when there was a hearing, if a hearing occurred, and I

 8   don't particularly believe that there was a hearing.  On the

 9   second issue, I think we made clear that the hearing failed to

10   provide due process.  And also the hearing had no recording

11   whatsoever, so there was no opportunity whatsoever to file an

12   appeal in any administrative body.  So --

13           THE COURT:  What I'm trying to look at, and maybe

14   you can help me with this, is whether or not discovery is --

15   the goal is to get this queued up so that -- you say that your

16   client's being prejudiced by delay.  You, I'm sure, would like

17   to get this resolved just as quickly.  So what I'm trying to

18   see is is there a way that we can get this resolved quickly?

19   And in order to do that which claims, if any, require

20   discovery?

21           MS. DRANOFF:  If I could respond.  On our

22   discrimination claims, we need discovery.

23           THE COURT:  Okay.

24           MS. DRANOFF:  That's really not been fully briefed

25   at all in the preliminary injunction brief, so that's not

1   something that we've had much discussion about.  But we --

2         THE COURT:  Is that the ADA and the 504 claim?

3         MS. DRANOFF:  Yes.  And we'd be looking for document

4   discovery with relation to those.

5         THE COURT:  Uh-huh.  And with respect to what the

6   defendants say about exhaustion being required, is there

7   discovery that's needed on that point or is that not

8   necessary?

9         MS. DRANOFF:  I think that's a --

10        THE COURT:  A legal issue?

11        MS. DRANOFF:  Mainly a legal issue, yes.

12        THE COURT:  Okay.  So the GASS, the idea claim, are

13   there any -- is there any discovery that's needed for that?

14        MS. DRANOFF:  The GASS claim?

15        THE COURT:  Uh-huh.

16        MS. DRANOFF:  Well, yes, there's document discovery

17   that we would like with respect to the suspensions that the

18   school has imposed.  Not only on our client -- and this goes

19   to our discrimination claims, as well.  But based on things

20   that even what counsel said in open court during the argument

21   before Judge Chen, it appears that there's -- that there's

22   very limited circumstances in which long-term suspensions have

23   been imposed by defendants other than on our client, and it's

24   not clear what the criteria are.  There's very little

25   information in terms of guidelines or policies or anything

1  that's provided to parents to indicate when those kinds of

2  punitive measures will be -- or not -- will not be taken.  And

3  to develop the claims we need to see more about that.  I mean

4  I don't know that -- obviously, we're aware that FERPA would

5  be an issue, but it can't be a vast body of documents that

6  would need to be redacted in order to satisfy that.

7         THE COURT:  So if we were to talk about what it is

8  you're looking for in discovery, would you be able to go

9  either by claim or by --

10                   [Pause in proceedings.]

11        THE COURT:  Yeah, he will tell you where to go.

12        So we could either do it by claim or just by

13 categories of discovery that we need.  Then we can try to

14 figure out what makes sense and what doesn't make sense.

15        MS. DRANOFF:  It would be easy for us by categories

16 of discovery that we need.  Does that sound right?

17        THE COURT:  And if you think you need more time than

18 what you have right now to think about it or both sides to

19 talk about, you know, the negotiation as to what it would be

20 if discovery were allowed, you can do that as well.

21        MS. DRANOFF:  I think that would be more fruitful.

22        THE COURT:  Okay.

23        MS. DRANOFF:  But I would say that we are certainly

24 looking for policy statements or guidelines that would be

25 provided to defendant's staff and their -- anyone who might be

1  presiding over hearings such as they are or conferences.

2  We've not seen anything of that nature.

3         THE COURT:  Okay.  So that would not have anything

4  to do with individual student's records or --

5         MS. DRANOFF:  That's right.

6         THE COURT:  -- redactable information.

7         MS. DRANOFF:  That's right.

8         THE COURT:  Okay.

9         MS. DRANOFF:  And also policies and guidelines that

10  are provided to staff regarding calling 911 and bringing EMS

11  in to -- for a student.  Because there was a claim and an

12  issue in our case regarding the threats of sending our

13  plaintiff's child to the hospital emergency room when no

14  medical emergency was present and also he was actually removed

15  to the emergency room when there was no medical emergency.

16         THE COURT:  So you're looking for the discovery --

17  you're looking for policies so far?

18         MS. DRANOFF:  Yes.

19         THE COURT:  What else?

20         MS. BEDARD:  Communications.

21         MS. DRANOFF:  Communications.  We'd like

22  communications between the school and the -- and the

23  Department of Education --

24         THE COURT:  Okay.

25         MS. DRANOFF:  -- regarding A.G., the plaintiff, as

1  well as communications among staff and administrators

2  regarding A.G., much of which I understand that, you know,

3  there are many communications that were produced in -- by

4  defendants regarding the -- you know, in response to the

5  preliminary injunction motion.  But there are other kinds of

6  electronically spread information and other communications we

7  would be seeking.

8          THE COURT:  Would that involve other students or not

9  necessarily?

10          MS. BIONDO:  It might depending --

11          THE COURT:  It might.

12          MS. BIONDO:  -- on the communication.

13          MR. LAVIGNE:  Probably.

14          THE COURT:  Yeah.  So that's something you'd have to

15  check and see, right?

16          MS. BIONDO:  Yes, it would -- it would be a very

17  large undertaking to pull because not every communication that

18  exists is necessarily only about A.G., right.  So for example,

19  somebody on our staff may be communicating with somebody at

20  the DOE about a bunch of different issues involving a bunch of

21  different students.  I'll let Mr. Lavigne continue, but the

22  bottom line is it's a very large undertaking for a case that

23  we think is going to go away.

24          MR. LAVIGNE:  I guess I'm just a little confused

25  because, you know, that's like -- that -- we're basically just

1  talking about full-blown discovery.  And if we wanted to

2  engage in sort of exchange of communications then we would --

3  then we should undertake full-blown discovery.  I think our

4  position is that these communications -- I'm not -- you know,

5  that -- there's, you know, at any given time dozens of

6  employees at the network and at the school level communicating

7  with the DOE regarding students including A.G.

8           It's not as simple as just saying, you know,

9  communications from -- you know, the principal or, you know,

10  X, Y, and Z.  We would -- we would need a list of, like,

11  custodians that we were talking about here.  To me that gets

12  into -- you know, for the policy statements, you know, we're

13  happy to give those over to the extent we have those.  That is

14  not a big [inaudible] at all, and I think, you know, to some

15  extent you have some of that from the preliminary injunction

16  motion, and we can search for the rest of them and give them.

17           THE COURT:  Okay.

18           MR. LAVIGNE:  Yeah, and that -- and that's sort of

19  our position on that.  The -- when we get -- start to delve

20  into communications, you know, if -- I don't -- I don't see

21  how that relates to the legal issues of a motion to dismiss on

22  substantive and jurisdictional grounds.  You know, I would get

23  it if it was a summary judgment.

24           MS. BEDARD:  We have --

25           MR. LAVIGNE:  But it's not.

1          MS. BEDARD:  We have filed a case and we are just

2     trying -- we are engaging in discovery as we believe that all

3     plaintiffs have a right to.  There is no motion to dismiss

4     pending.  We've never --

5          MR. LAVIGNE:  But Judge Chen did instruct us to make

6     dispositive motions, one of which would be a motion to

7     dismiss.

8          MS. BEDARD:  And it has never been filed, so we need

9     to continue discovery, and we need to continue to work on the

10    case so that it has a resolution.  We are working towards a

11    resolution or we're working towards a trial.  And so my point

12    is that I don't understand why we are -- I'm not in agreement

13    that this should be delayed.  I'm feeling that it should be

14    all moving forward and if at any point you would like to file

15    a motion to dismiss I'm sure you will contact the Court and

16    all that can be done.  I'm not clear on why we would not be

17    giving this information to you.  We were happy to give this

18    information to you.  It would have been on Rule 26(f) so we

19    were very prepared to give you a list of the things that we

20    want.

21         MS. BIONDO:  If I may.  I did ask on the initial

22    conference -- I'm not sure, I know Nancy was on it.  I'm

23    positive because I was the one who said it, I asked what you

24    guys were contemplating because I said we're disinclined to

25    give you anything.  Not only did you not articulate at that

1   time what the discovery was.  You can't even articulate it

2   today.  The reason that we believe, Nancy, we -- Ms. Bedard,

3   that we should not go forward is because we are going to file

4   a motion.  We were truly, genuinely hopeful that we were going

5   to settle the case based on the discussions that took place in

6   front of Judge Chen.  We thought we were very close.  When we

7   got your seven-page demands list we realized that we were not

8   so close.  We've worked with you over the past few weeks to

9   try to get closer but unfortunately we're not there yet.

10          And it -- unfortunately it looks like we are going

11   to have to go forward with filing a motion to dismiss.  When

12   we file -- so if we start with discovery now and file a motion

13   to dismiss by the end of March all that is going to happen is

14   that whatever discovery schedule you want to enter now is

15   going to be undone because we are going to say when we file a

16   motion to dismiss let's stop.  These basic policy statements

17   we're happy to provide you but to ask us to go through the

18   incredibly onerous task of pulling all the communications,

19   redacting them, and having to do it very carefully or to risk

20   violating FERPA and violating another child's rights is not

21   something that we can, you know, easily agree to.  It just

22   isn't.

23          THE COURT:  Okay.  So let me -- let me make a

24   proposal here.  Two things, number one, if you really want to

25   do -- make a motion to dismiss I think you would need to write

1   up your motion and letter to Judge Chen.

2          MR. LAVIGNE:  Sure.

3          THE COURT:  I think she wants to, you know, review

4   this and get a sense of whether or not she thinks, you know,

5   it make sense to go ahead with these motions.

6          MS. BEDARD:  Okay.

7          THE COURT:  That's number one.  Number two is I

8   think it would be helpful to just get a list from the

9   plaintiffs or the plaintiff as to what it is that you're

10  really looking for, and then we can try to figure out what is

11  onerous, what's not onerous. You know, the policy statements

12  are pretty easy.  I don't think you're going to much --

13         MS. BIONDO:  No.

14         THE COURT:  -- of an objection about that.  And

15  let's find out what it is that you disagree about for the

16  discovery and how it is relevant to the motion as it goes

17  forward.  And if it's relevant to a motion or if a motion to

18  dismiss doesn't make sense on a particular point because of,

19  you know, the potential factual disputes and it's best to move

20  expeditiously to get a summary judgment motion that's what

21  we'll focus on.  Or if a motion to dismiss makes more sense

22  and it doesn't make sense to do -- or at least on some claims

23  but not on other claims it doesn't make sense to do discovery

24  then we'll do that.

25         The third thing is you've talked about settlement.

19

1  And so there are two ways the Court can be helpful.  Number

2  one, we can have a settlement conference.  And number two, we

3  have mediators.  Number three, you can do the mediator first

4  and then come back for a settlement conference, but whatever.

5  Those are the possibilities.  The Court is more than willing

6  to help you with that.  And if you think -- you know, I think

7  you should all maybe take a step back, think about it for 24

8  hours, and then send me a letter and let me know what you want

9  to do about settlement.

10          MR. LAVIGNE:  Okay.

11          THE COURT:  Okay?  Because you don't have to do it

12  on your own.  I mean we've had a lot of [inaudible] cases here

13  and a lot of other cases.  There may be some issues here that

14  are different about this case, but I just don't think it's

15  going to be something that would be impossible at least to

16  discuss.  We also have really great mediators too.  So either

17  way is good.

18          How much time do you need to figure out what

19  discovery you want?

20          MS. DRANOFF:  I think we could get a list to you by

21  Friday.

22          THE COURT:  Friday?  Does that sound fine?  Fine

23  with you?

24          MR. LAVIGNE:  That's fine.

25          THE COURT:  Okay.  And why don't you look at --

20

1   after you get that why don't you meet and confer and see if

2   there's anything that you're willing to provide because we

3   could have targeted -- you know, staged discovery and then

4   targeted towards a motion.

5           MR. LAVIGNE:  Sure.

6           THE COURT:  Or not depending on what the dispute is.

7           MR. LAVIGNE:  Okay.

8           THE COURT:  And I think what we'll do is we'll

9   schedule a conference for early next week I think probably

10  makes the most sense so we don't lose any time on this.

11          MR. LAVIGNE:  Okay.  Great.

12          MS. DRANOFF:  Okay.

13          THE COURT:  Because I think -- I think that it's

14  important to get this case really moving at this point.  Does

15  that makes sense to both sides?

16          MS. DRANOFF:  Thanks.

17          MS. BIONDO:  Yeah.

18          THE COURT:  [Inaudible] next week?

19          MR. LAVIGNE:  Yeah, that's right.  Should -- you

20  mentioned the pre-motion letter.  You know, I agree that it --

21  it's something we should do.  The one reason we hadn't done

22  that yet is in light of her order we sort of -- we took that

23  as an indication that we should move forward.  She had asked

24  for a briefing schedule to be entered.  She, Judge Chen, had

25  asked for a briefing schedule to be entered by January 12th.

1  When -- we wrote the letter to you before that so -- and we

2  considered that --

3             THE COURT:  Right.

4             MR. LAVIGNE:  -- sort of dropping that deadline.

5  We're happy to write the pre-motion letter.  We're just -- I'm

6  just wondering whether that should be something that's done

7  sort of simultaneously or with -- or should we wait for

8  [inaudible] --

9             THE COURT:  Well, [inaudible] and --

10             MR. LAVIGNE:  Yeah, right.

11             THE COURT:  -- [inaudible] want to do the motion.

12             MR. LAVIGNE:  Yeah, right.

13             THE COURT:  Would you -- would that make sense if

14  we're going to try to do settlement that we would try to do

15  that first and then go into the motion practice in their

16  letter?

17             MS. DRANOFF:  That's reasonable.

18             THE COURT:  Okay.  So let's [inaudible] that out

19  next week then.

20             MR. LAVIGNE:  Okay.

21             THE COURT:  I have arraignments.  I mean I have to

22  do some criminal work next week.  So that means that it's hard

23  to actually schedule a time, but we're going to try to do

24  that.  We can do it by phone or in person, whichever is better

25  for you.

22

1          MR. LAVIGNE:  Okay.

2          MS. BIONDO:  We appreciate that.

3          MS. DRANOFF:  Whatever.

4          THE COURT:  Would you rather do it by phone or by --

5  in person?

6          MS. BEDARD:  In person.

7          THE COURT:  In person?

8          MS. BEDARD:  I would prefer.

9          THE COURT:  Okay.

10          MS. BEDARD:  We're right down the block.

11          THE COURT:  Okay.  Okay.

12          MR. LAVIGNE:  That's fine with us.

13          THE COURT:  All right.  So what looks good next

14  week?  I think we have Monday through Thursday.  It gets worse

15  as the week goes on.

16          THE CLERK:  [Inaudible].

17          THE COURT:  With arraignments?

18          UNIDENTIFIED:  [Inaudible]

19          THE COURT:  I have -- well, we'll give it a try.

20          MR. LAVIGNE:  I mean we could do that or --

21          THE COURT:  Okay.  You may have to wait a few

22  minutes.

23          THE CLERK:  Tuesday or Wednesday.

24          THE COURT:  Oh, let's do Tuesday because Tuesday

25  will be less.

23

1          MS. DRANOFF:  Sorry, did you say 11:30 on Tuesday?

2          THE COURT:  What's --

3          THE CLERK:  11:30.

4  (Phone ringing)

5          THE COURT:  Let me take that.

6                    [Pause in proceedings.]

7          THE COURT:  Okay.

8          MS. BIONDO:  Thank you very much.

9          THE COURT:  That's it.  Anything else?

10         MR. LAVIGNE:  I think that's it.

11         THE COURT:  Okay.  But think -- or think really hard

12  about settlement because it sounds like it's something both

13  sides would probably like because motion practice is going to

14  take some time, discovery will take some time, and both sides

15  really need a resolution quickly.

16         MS. BIONDO:  We would be happy -- we would be happy

17  to settle.

18         THE COURT:  All right.

19         MS. DRANOFF:  Thank you.

20  (Proceedings concluded at 4:22 p.m.)

21                    * * * * * *

22

23

24

25

24

1          I certify that the foregoing is a court transcript

2    from an electronic sound recording of the proceedings in the

3    above-entitled matter.

4

5

6    _____

7                Sara Winkeljohn, CET-808

8    Dated:   March 5, 2018

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25