UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                             :

KIM PATRICK, and AG, a minor, by and     :
through his Parent and Next Friend, KIM     :
PATRICK,                                     :

                      Plaintiffs,    :   Civil Action No. 17-6846-PKC-RML

    -against-                           :

                                             :   **NOTICE OF MOTION BY SUCCESS**
SUCCESS ACADEMY CHARTER SCHOOLS,   :   **DEFENDANTS TO DISMISS**
INC.; SUCCESS ACADEMY PROSPECT     :   **PLAINTIFFS' COMPLAINT**
HEIGHTS; SYDNEY SOLOMON in her     :
individual and official capacity as Principal of  :
Success Academy Prospect Heights; LAMAE  :
DE JONGH, in her individual and official    :
capacity as Managing Director of Schools,   :
Success Academy Charter Schools; SAMUEL  :
COLE, in his individual and official capacity as  :
Board Chairperson, Success Academy Charter  :
Schools-NYC Board of Trustees; and      :
CATHERINE SHAINKER, in her individual and  :
official capacity as Board Member, Success   :
Academy Charter Schools-NYC Board of    :
Trustees,                                  :
                                           :

                    Defendants.   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      PLEASE TAKE NOTICE that upon the annexed Memorandum of Law the undersigned,

on behalf of Defendants, hereby move this Court, before the Honorable Pamela K. Chen, in the

United States Courthouse for the Eastern District of New York, 225 Cadman Plaza East, Brooklyn,

New York, for an Order dismissing Plaintiffs' claims with prejudice pursuant to Rules 12(b)(1)

and 12(b)(6) of the Federal Rules of Civil Procedure, and granting such other relief as the Court

deems just and proper.

PLEASE TAKE FURTHER NOTICE, that pursuant to the Court's May 10, 2018, Order, Plaintiffs' opposition submission, if any, shall be served by July 23, 2018, and Defendants' reply submission, if any, shall be served by August 13, 2018.

Dated: June 8, 2018 New York, New York

Respectfully submitted,

By: /s/ *Christopher N. LaVigne*  
      Christopher N. LaVigne  
      Partner  
      Pierce Bainbridge Beck Price & Hecht LLP  
      20 West 23rd Street, Fifth Floor  
      New York, NY 10010  
      Tel: (213) 262-9333  
      chris@piercebainbridge.com

By: /s/ *Aaron M. Safane*  
      Aaron M. Safane  
      Vanessa M. Biondo  
      Success Academy Charter Schools, Inc.  
      95 Pine Street, Floor 6  
      New York, NY 10005  
      Tel: (917) 887-1203  
      Fax: (646) 961-4739  
      aaron.safane@successacademies.org  
      vanessa.biondo@successacademies.org

      *Attorneys for Success Defendants*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                                  :
KIM PATRICK, and AG, a minor, by and through                      :
his Parent and Next Friend, KIM PATRICK,                          :
                                                                  :
                                    Plaintiffs,                   :   Civil Action No. 17-6846-PKC-RML
                                                                  :
            -against-                                             :
                                                                  :
SUCCESS ACADEMY CHARTER SCHOOLS,                                  :
INC.; SUCCESS ACADEMY PROSPECT                                    :
HEIGHTS; SYDNEY SOLOMON in her individual                         :
and official capacity as Principal of Success                     :
Academy Prospect Heights; LAMAE DE JONGH,                         :
in her individual and official capacity as Managing               :
Director of Schools, Success Academy Charter                      :
Schools; SAMUEL COLE, in his individual and                       :
official capacity as Board Chairperson, Success                   :
Academy Charter Schools-NYC Board of Trustees;                    :
and CATHERINE SHAINKER, in her individual                         :
and official capacity as Board Member, Success                    :
Academy Charter Schools-NYC Board of Trustees,                    :
                                                                  :
                                    Defendants.                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF SUCCESS DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**…………………………………………………….......ii

**PRELIMINARY STATEMENT**……………………………………………………..1

**BACKGROUND**…………………………………………………………….....…3

I.     **FACTS**……………….....…………………………………………………..3

    A.  AG's IAES Placements……………………………………......………4

    B.  **Plaintiffs' Complaint Focuses on Success' Denial of AG's Access to a FAPE**………………………………………………………………......6

**ARGUMENT**……………………………………………………………….....7

I.     **PLAINTIFFS' FEDERAL CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFFS WERE REQUIRED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES**……………………………………………………..….7

    A.  **Plaintiffs Must Satisfy the IDEA's Exhaustion Requirements Before Bringing Suit in This Court Since the Crux of Their Complaint Concerns FAPE**………..7

    B.  **Plaintiffs Do Not Satisfy Any of the Narrow Exceptions to Exhaustion**……....10

        1.  Plaintiffs Have Not Established that Exhaustion Would be Futile…....10

        2.  Plaintiffs Have Not Alleged Systemic Violations…………….........13

        3.  Plaintiffs Had Notice of Their Administrative Rights Before Filing this Lawsuit……………………………………………………....14

II.    **PLAINTIFFS' DUE PROCESS CLAIMS SHOULD BE DISMISSED ON THE PLEADINGS**……………………………………………………..15

    A.  **Plaintiffs' Have Failed to Plead They Have Been Deprived of a Property Right**...15

    B.  **Plaintiffs' Were Provided Adequate Due Process**…………………………16

    C.  **Plaintiffs Had (and Have) an Adequate Post-Deprivation Remedy**………………17

III.   **PLAINTIFFS' SEARCH AND SEIZURE CLAIMS SHOULD BE DISMISSED BECAUSE THEY HAVE NOT ADEQUATELY PLEADED THIS CLAIM AGAINST SUCCESS ACADEMY**……………………………………………18

IV.    **PLAINTIFFS' CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS MUST BE DISMISSED**……………………………………………………………………21

# TABLE OF AUTHORITIES

## CASES

A.M. ex rel. J.M. v. NYC Dep't of Educ.,
    840 F. Supp. 2d 660, 678 (E.D.N.Y. 2012) .....................................................22

Bradley v. Arkansas Dep't of Educ.,
    301 F.3d 952, 957, n.5 (8th Cir. 2002) ........................................................21

Camac v. Long Beach City Sch. Dist.,
    2011 WL 3030345 (E.D.N.Y. July 22, 2011). ...................................10, 18, 20

Cave v. E. Meadow Union Free Sch. Dist.,
    514 F.3d 240, 245 (2d Cir. 2008). .........................................................7, 9, 10

D.A. v. Houston Independent School Dist.,
    716 F. Supp. 2d 603, 611 (S.D. Tex. 2009) ..................................................21

DeFabio v. E. Hampton Union Free Sch. Dist.,
    658 F. Supp. 2d 461, 490-91 (E.D.N.Y. 2009) aff'd, 623 F.3d 71 (2d Cir. 2010)...........17

Fry v. Napoleon Cmty. Sch.,
    137 S. Ct. 743, 752-53, 755 (2017) ...............................................................8

Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn,
    280 F.3d 98, 107 (2d Cir. 2001) ...................................................................21

Glass v. Mayas,
    984 F.2d 55, 57 (2d Cir. 1993).....................................................................18

Green v. Bauvi,
    46 F.3d 189, 196 (2d Cir. 1995).....................................................................22

Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.,
    635 F.3d 685, 690 (5th Cir. 2011) ................................................................15

Hope v. Cortines,
    872 F. Supp. 14 (E.D.N.Y. 1995),
    aff'd, 69 F.3d 687, 688 (2d Cir. 1995)…………………………………8, 9, 10, 11, 12, 13

Horton v. Westling,
    284 F. Supp. 3d 213, 220 (N.D.N.Y. 2018) ...................................................................17

J.E. ex rel. Edwards v. Ctr. Moriches Union Free Sch. Dist.,
    898 F. Supp. 2d 516, 546 (E.D.N.Y. 2012) ........................................................... 16, 17

Kajoshaj v. New York City Dep't of Educ.,
    543 F. App'x 11, 16 (2d Cir. 2013), ..........................................................................15

Lennon v. Miller,
    66 F.3d 416, 418 (2d Cir. 1995). ..............................................................................22

Levine v. Greece Cent. Sch. Dist.,
    353 Fed. App'x 461, 465 (2d Cir. 2009) ...................................................................14

Local 342, Long Island Pub. Serv. Employees, UMD, ILA, AFL–CIO v. Town Bd. of
Huntington,
    31 F.3d 1191, 1194 (2d Cir. 1994). ...........................................................................15

Lozada v. Weilminster,
    92 F. Supp. 3d 76, 91 (E.D.N.Y. 2015) ...................................................................20

GM v. Massapequa Union Free Sch. Dist.,
    No. 14-CV-4126 JS ARL, 2015 WL 4069201, at *4 (E.D.N.Y. July 2, 2015) ...............10

Matthews v. City of New York,
    2016 WL 5793414, at *1 (S.D.N.Y. Sept. 30, 2016) .............................................. 19, 20

O.M. ex rel. D.M. v. Bd. of Educ. of the Wayne Cent. Sch. Dist.,
    No. 6:14-CV-06487 MAT, 2015 WL 3952601, at *6 (W.D.N.Y. June 29, 2015) ...........13

Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.,
    288 F.3d 478 (2d Cir. 2002)............................................................................ 10, 12, 13

Tenenbaum v. Williams, .................................................................................. 19, 20
    862 F. Supp. 962, 967 (E.D.N.Y. 1994)

Tenenbaum v. Williams,
    193 F.3d 581, 601 n.13 (2d Cir. 1999) .................................................................. 18, 20

Turley v. Sauquoit Valley Sch. Dist.,
    307 F. Supp. 2d 403, 407-08 (N.D.N.Y. 2003)............................................................15

**STATUTES**

20 U.S.C. § 1412.....................................................................................................................8

20 U.S.C. § 1415.................................................................................................................8, 12

42 U.S.C. § 1983 ............................................................................ 1, 2, 3, 9, 10, 18, 19,21

Americans With Disabilities Act ("ADA")………………………………….......1, 3, 9, 10, 21, 22

Article XI, Section 1, of the New York State Constitution ........................................................7

Fed. R. Civ. P. 12(b)(1) ............................................................................................................1

Fed. R. Civ. P. 12(b)(6).............................................................................................................2

Individuals With Disabilities Education Act ("IDEA"),.....1, 3, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 21

N.Y. Educ. L. § 2853(1)(c),.....................................................................................................22

N.Y. Educ. Law § 4404(1) ........................................................................................................12

Rehabilitation Act of 1973 ...........................................................1, 4, 8, 9, 10, 12, 21

**OTHER AUTHORITIES**

Appeal of A.A.,
    54 Ed. Dep't, Decision No. 16782 (NYCOMMED), 2015 WL 8165878, at *1, 7
    (June 29, 2015)…………………………………………………………………………11

Appeal of Letitia James,
    54 Ed. Dep't, Decision No. 16646 (NYCOMMED), 2014 WL 42577334 (Aug. 18,
    2014)...............................................................................................................................11

Appeal of V.E.,
    Comm'r's Decision No. 14,985, (Nov. 19, 2003)..........................................................16

## PRELIMINARY STATEMENT

This case should be dismissed based on the clear and established rule that Plaintiffs cannot pursue federal claims based on their right to a free appropriate public education ("FAPE") because they did not exhaust their administrative remedies before filing their lawsuit.

Here, Plaintiffs AG, a student at Success Academy Charter Schools, and his mother bring this action against Success Academy and related individual defendants under 42 U.S.C. § 1983, alleging Success deprived AG of property without due process and subjected him to unconstitutional seizures by suspending AG on two separate occasions for more than 10 days without an adequate suspension hearing, and by calling emergency medical services ("EMS") regarding AG without justification.  Plaintiffs also allege Success violated the Individuals With Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act, and the Americans With Disabilities Act ("ADA") by discriminating against AG based on these same purported actions.

*All* of Plaintiffs' federal claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because Plaintiffs have admittedly failed to exhaust their administrative remedies as required by the IDEA before bringing suit in federal court.  The Second Circuit and courts in this District have repeatedly held that federal courts lack subject matter jurisdiction to hear claims brought under any federal statute, including the Rehabilitation Act, the ADA or § 1983, regarding a student's access to a FAPE, when parties do not first exhaust the administrative remedies mandated under the IDEA.  These same courts have held that the IDEA's requisite administrative remedies include an appeal to the New York State Education Department ("SED").  Plaintiffs have admitted in their pleadings and in statements to the Court that they chose not to appeal to the SED before filing a lawsuit in this Court.  Accordingly, Plaintiffs'

federal claims, which all rely on the same factual allegations, should be dismissed for lack of subject matter jurisdiction.

Similarly, Plaintiffs' due process claims must be dismissed independently pursuant to Fed. R. Civ. P. 12(b)(6) because, even assuming Success violated Plaintiffs' constitutional rights, adequate state post-deprivation procedures exist to remedy Plaintiffs' alleged deprivations. The Second Circuit and courts in this District have held that the ability to appeal to the SED and to file an Article 78 proceeding cures any due process defects and thus bars recovery in § 1983 actions brought to enforce constitutional due process. Again, Plaintiffs admittedly did not pursue either of these available post-deprivation remedies, and therefore Plaintiffs' § 1983 due process claims must be dismissed as a matter of law.

Plaintiffs' due process claims must be dismissed for an additional, and fundamental, reason: Plaintiffs have failed to adequately allege that removing AG to an interim alternative educational setting ("IAES") deprived AG of a property right. It is undisputed that in connection with both IAES placements, AG was provided with two hours of alternative education for each day he was out of school. Courts throughout the U.S. and in the Second Circuit have held that a student plaintiff has no property right in a particular educational setting. By contrast, the two hours of alternative instruction Plaintiffs' admit AG received has been recognized by this Court as adequate under the New York Education Law. Therefore, for this additional independent reason, the Complaint fails to adequately allege AG a due process claim.

Plaintiffs also fail to adequately plead an unreasonable seizure claim under § 1983. As an initial matter, it is reasonable, and lawful under the Fourth Amendment, for Success employees to call EMS when AG suffered from extreme emotional and physical tantrums that put himself and his fellows students at risk of harm. More importantly, however, Plaintiffs have failed to

adequately plead this claim *against Success* and the other individual defendants.  There are no allegations that Success somehow conspired with EMS workers to have AG removed from school, and Plaintiffs have not, and cannot, allege that the EMS failed to exercise its independent judgment and make its own determination as to whether AG should be removed from the school to a hospital.  As such, Plaintiffs' § 1983 search and seizure claim must be dismissed.

Finally, Plaintiffs' claims against the individual defendants should be dismissed. Plaintiffs' claims against the individual defendants in their individual and official capacities should be dismissed because (1) these defendants cannot be held personally liable for violations of the ADA, § 504, or the IDEA; (2) they are entitled to qualified immunity; and (3) Plaintiffs' claims against them are merely duplicative of the claims against Success Academy, the real party in interest here.

## BACKGROUND

### I.   FACTS

Plaintiff AG is an 8-year old first grader that started at Success Academy Prospect Heights ("SA Prospect Heights") on October 27, 2016 with an Individualized Education Program ("IEP") that mandated he be provided special education support services, counseling, and a crisis paraprofessional. Cmplt. ¶¶ 55-57.  AG suffers from a blood disorder and since he started attending SA Prospect Heights, he has exhibited social and behavioral deficits.  Id. ¶ 59.  AG has significant difficulty transitioning from task to task and becomes easily frustrated.  Id.  This frustration manifests itself often in the form of frequent violent tantrums or outbursts.  Id. According to the Complaint, AG has been issued short-term suspensions, of fewer than six days, for many of these outbursts.  Id. ¶ 60.

### A. AG's IAES Placements

On two occasions, AG was removed from school to an IAES due to his violent tantruming.  On February 24, 2017, AG was removed from SA Prospect Heights for "*inter alia*, dragging the Assistant Principal down the hall by the hair while using the other hand to hit her, yanking a lanyard around the Assistant Principal's neck, and kicking Defendant Solomon, Principal of SA Prospect Heights, and "inflict[ing] serious bodily injury and extreme physical pain upon [his] para[professional]." Id. ¶ 79.  In response to AG's violent tantruming, Success called EMS and placed AG in an IAES for 45 days.  Id. ¶¶ 71,79.  The EMS workers transported AG to Kings County Hospital.  Id. ¶ 72.  AG was examined by hospital staff, was released the same day.  Id. ¶ 74.  Hospital records show AG was diagnosed as suffering childhood separation anxiety and impulse disorder.  Id.

Plaintiffs appealed AG's IAES placement.  Plaintiffs requested an expedited impartial hearing before the New York City Department of Education ("DOE"), alleging Success' suspension of AG was illegal under the IDEA and Section 504 of the Rehabilitation Act and claiming that Success' account of AG's behaviors on February 24, 2017 were false and exaggerated.  Id. ¶ 81.  In a written decision dated March 29, 2017, the DOE-appointed impartial hearing officer ("IHO") felt that Success failed to provide Plaintiffs with notice and an opportunity to be heard regarding AG's IAES placement and that AG's alleged actions did not rise to the level of serious bodily injury to justify the IAES placement under the IDEA.  Id. ¶¶ 82-83.  The IHO directed that AG be immediately reinstated to SA Prospect Heights.  Id. ¶ 83.  Success immediately reinstated AG, who was educated in an IAES for a total of 24 days.  Id. ¶ 89.  Pursuant to the IAES, AG was provided two hours per day of alternate education, and received vouchers from the DOE for AG's related services, including his speech and

occupational therapy and counseling services.  Id. ¶¶ 87, 88.  Plaintiffs' chose not to appeal the

IHO decision to the SED.  Id. ¶ 86.

  On September 12, 2017, Success notified Plaintiffs that Success had called EMS because

AG had hit his paraprofessional and stabbed his paraprofessional in the eye with a pencil.  Id. ¶¶

102-03.  After the EMS arrived, the EMS workers evaluated AG, took his pulse, and ultimately

decided not to transport AG to the hospital.  Id. ¶ 102.  The paraprofessional separately called

EMS on her own behalf and was transported to the hospital.  Id. ¶¶ 102, 111.  On September 13,

2017, Plaintiffs were informed via letter from Success that AG would be placed in an IAES for

20 days.  Id. ¶ 105.

  The letter also informed Plaintiffs a hearing would be held to determine whether the

IAES placement was appropriate.  Id.  The hearing was held on September 18, 2017, at SA

Prospect Heights.  Id. ¶ 107.  The hearing was convened by La Mae de Jongh, Managing

Director of Schools at Success, and attended by both of AG's parents and Plaintiffs' lawyer.  Id.

¶¶ 107-08.  Success presented two witnesses – Ms. Solomon and AG's teacher – who recounted

the September 12 incident.  Id. ¶¶ 111-12.  Additional facts were presented by Success, including

a statement signed by AG's paraprofessional, attesting that AG had stabbed her in the eye with a

pencil.  Id. ¶ 113.  Plaintiff's lawyer and paralegal questioned AG's father about his observations

when he came to pick up AG after the stabbing incident.  Id. ¶ 115.

  Ultimately, Ms. de Jongh concluded that the evidence presented supported AG's

placement in an IAES for twenty days.  Id. ¶ 117.  Plaintiffs were sent a copy of Ms. de Jongh's

findings and conclusions.  Id. ¶ 118. Plaintiffs appealed Ms. de Jongh's findings to Success'

Board of Trustees by letter to Mr. Cole, Chairperson of the Board.  Id. ¶¶ 125-26.  Ms. Shainker,

a Success Board Member, reviewed the record and confirmed AG's placement in an IAES.  Id. ¶

126.  Plaintiffs also appealed this IAES placement through the DOE's impartial hearing process. Id. ¶ 127.  The IHO determined it was "unlikely" that AG's actions on September 12, 2017 met the IDEA's standard of serious bodily injury required to justify an IAES.  Id. ¶ 128.   Plaintiffs did not appeal the IHO's decision to the SED.

### B.   Plaintiffs' Complaint Focuses on Success' Denial of AG's Access to a FAPE

On November 22, 2017, Plaintiffs filed the instant lawsuit alleging Success, through the actions outlined above, has denied AG "educational access and services at [SA] Prospect Heights."  Id. ¶ 2.  The Complaint centers on two issues: (1) Success' removal of AG to an IAES on two occasions, for 45 and for 20 days, for allegedly causing "serious bodily injury"; and (2) by removing AG from school to the emergency room where there was no urgent medical necessity. These two issues form the basis of each of Plaintiffs' federal claims.  See, e.g., id. ¶¶ 139-144, 148-150, 153, 160, 164-65, 171-72, 174.

The entire Complaint focus on how these actions have resulted in Success' denial of a FAPE to AG at SA Prospect Heights:

- Because of these actions, AG has been **denied educational access and services** at Success Academy Prospect Heights. AG has **not received the education** he is entitled to . . . .  Id. ¶ 2.

- In order to safeguard AG's right to attend school and **receive the special education services to which he is entitled**, Plaintiffs brings [sic] this action . . . .  Id. ¶ 4.

- [E]lementary or secondary schools must "**provide a free appropriate public education** to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap."  Id. ¶ 27.

- Schools must make available "**a free appropriate public education** . . . to all children with disabilities residing in the State between the ages of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled from school." Id. ¶¶ 38-39.

- Defendants have **deprived AG of his right to an education** . . . by illegally removing him to an Interim Alternative Education Center [and] forcing him to be removed from school . . . .  Id. ¶¶ 140, 143-145.

- By removing AG from school without providing appropriate notice [or] opportunity to be heard, Defendants **violated AG's . . . entitlement to a public education**.  Id. ¶ 150.

- The **IDEA creates a right for children with disabilities to a free appropriate public education** . . . .  Defendants' failure to follow disciplinary due process requirements is a violation of Plaintiffs' rights.  Id. ¶ 152.

- **AG is qualified to receive a free appropriate public education** in Defendants' school. . . .  By removing AG from his regular school setting rather than providing appropriate support and service in the school, Defendant have excluded Plaintiff AG . . . in violation of the Rehabilitation Act.  Id. ¶¶ 159-60.

- **AG is qualified to receive a free appropriate public education** in Defendants' school. . . . Defendants have failed to allow AG to attend school and have repeatedly illegally barred him from attending school.  Defendants . . . by excluding him from school . . . [failed] to provide him with an appropriate education . . . .  Id. ¶¶ 168-70.

Plaintiffs also claim that Success violated Article XI, Section 1, of the New York State Constitution, which provides students in New York a right to a free education, and New York Education Law § 10, which provides New York students a right to a school environment free from discrimination, by placing AG in an IAES and calling EMS regarding AG's tantrums.  See Cmplt. ¶¶ 175-79, 184-86.[1]

## ARGUMENT

I. **PLAINTIFFS' FEDERAL CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFFS WERE REQUIRED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES**

A. **Plaintiffs Must Satisfy the IDEA's Exhaustion Requirements Before Bringing Suit in This Court Since the Crux of Their Complain Concerns FAPE**

Plaintiffs' failure to satisfy the IDEA's exhaustion requirement before pursuing their federal claims in this Court "deprives the court of subject matter jurisdiction."  Cave v. E.

---

[1] The Court declined to exercise jurisdiction over Plaintiffs' claims under New York Education Law § 3214.  Patrick v. Success Acad. Charter Sch., Inc., No. 17CV6846PKCRLM, 2017 WL 6557478, at *5 (E.D.N.Y. Dec. 22, 2017). Plaintiffs have voluntarily dismissed their remaining state law claims.  See Dkt. no. 33 (stating that at the suggestion of the Court and after consultation with Defendants, Plaintiffs will no longer pursue their state law claims).

Meadow Union Free Sch. Dist., 514 F.3d 240, 245 (2d Cir. 2008).  The Second Circuit has long held that federal courts lack subject matter jurisdiction to hear claims that seek "relief that is also available under IDEA" when parties do not first exhaust the administrative remedies mandated under the IDEA.  Hope v. Cortines, 872 F. Supp. 14, 19, 22 (E.D.N.Y. 1995), aff'd, 69 F.3d 687, 688 (2d Cir. 1995).  Plaintiffs must satisfy IDEA's exhaustion requirement as long as "the crux -- or, in legal-speak, the gravamen -- of the plaintiff's complaint" concerns FAPE or other relief available under the IDEA, regardless of what statute Plaintiffs' claims are brought under.  Fry v. Napoleon Cmty. Sch., 137 S. Ct. 743, 752-53, 755 (2017); 20 U.S.C. § 1415(l) ("Nothing in this chapter shall be construed to restrict or limit the . . . remedies available under . . . the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the [IDEA's administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA].").

It is clear from the face of the Complaint that Plaintiffs' claims seek relief that is available under the IDEA and that the crux of the Complaint concerns FAPE.  The IDEA "ensures that students with disabilities receive a [FAPE]."  Id. at 16.  Federal funding under the IDEA "is conditioned upon state compliance with IDEA's extensive substantive and procedural requirements."  Id. (citing 20 U.S.C. § 1412).  "Primary among the procedural safeguards employed by IDEA is the requirement that states provide parents of disabled students the right to seek review of any decision concerning their children's education."  Id. This includes review of "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A).

8

Here, Plaintiffs' § 1983, IDEA, § 504, and ADA claims are all based on the same allegations: that Success removed AG to a different educational placement without due process and that Success suspended and removed "AG from school to the emergency room" without due process, probable cause, or other lawful justification and therefore denied AG access to a FAPE. Supra Background Section I.B.; Cmplt. ¶¶ 140, 143-145 ("Defendants have deprived AG of his right to an education . . . by illegally removing him to an Interim Alternative Education Center [and] forcing him to be removed from school . . . .").

There is no question that Plaintiffs have not exhausted their administrative remedies under the IDEA. The administrative process contemplated by the IDEA is clear:

> Parents must initially seek review through an 'impartial due process hearing' conducted by either the local school district or state. If the hearing is conducted by a local school district, they may appeal the decision to the state educational agency. Only after exhaustion of these procedures may parents seek review in federal or state court.

Hope v. Cortines, 872 F. Supp. at 16-17. "New York has opted for a two-tier administrative system for review . . . . First, an impartial hearing officer is . . . appointed by the local board of education or the competent state agency to conduct the initial hearing and issue a written decision. That decision can then be appealed to a state review officer of the [SED]." Cave, 514 F.3d at 245. Plaintiffs have admittedly failed to challenge Success' purported unlawful actions before the SED. Cmplt. ¶ 86.[2]

Therefore, Plaintiffs' § 1983, IDEA, § 504, and ADA claims must dismissed for lack of subject matter jurisdiction. Where "Plaintiffs' claimed procedural due process violation appears to be one and the same as their claim under the Rehabilitation Act and the ADA . . . .

---

[2] Plaintiffs also told the Court on the record that they decided not to appeal to the SED. Dec. 15, 2017 Hearing Tr. 64:9-15. In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider materials beyond the pleadings. GM, 2015 WL 4069201, at *2.

[Plaintiffs'] admitted failure to exhaust the administrative remedies available to [them] through the state education system before [they] filed suit in federal court" deprives this Court of subject matter jurisdiction to hear these claims.  Camac v. Long Beach City Sch. Dist., No. 09 CV 5309 DRH ARL, 2011 WL 3030345, at *9 (E.D.N.Y. July 22, 2011) (quoting Polera v. Bd. of Educ. of the Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 481 (2d Cir. 2002)); see also GM v. Massapequa Union Free Sch. Dist., No. 14-CV-4126 JS ARL, 2015 WL 4069201, at *4 (E.D.N.Y. July 2, 2015) (dismissing plaintiffs' Fourth Amendment unlawful seizure and ADA discrimination claims against school and teacher that purportedly inappropriately disciplined student because plaintiffs failed to satisfy the IDEA's exhaustion requirement); Cave, 514 F.3d at 245 (dismissing plaintiffs' claims under the ADA, the Rehabilitation Act, and § 1983 for failing to comply with the IDEA's exhaustion requirement); Hope, 872 F.Supp. at 19 (dismissing plaintiffs' ADA and § 1983 claims, and holding "there exists no doubt" the IDEA's exhaustion requirement "applies to claims asserted under Section 1983").

**B.  Plaintiffs Do Not Satisfy Any of the Narrow Exceptions to Exhaustion**

Exceptions to these strict exhaustion requirements apply only where: (1) it would have been futile to exhaust remedies; (2) Plaintiffs' allegations concern systemic IDEA violations; or (3) Plaintiffs had no notice of the administrative requirements for exhaustion.  Plaintiffs bear the burden of showing that an exception applies.  See Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 489 n.8 (2d Cir. 2002).

1.  Plaintiffs Have Not Established that Exhaustion Would be Futile

Exhaustion is required where "plaintiffs allege that defendants, and not the state, adopted the discrimination policies of which they complain" because "the purpose of the exhaustion doctrine would be undercut by allowing plaintiffs to seek redress in this tribunal rather than

affording the state (and defendants) the opportunity to rectify any errors." Hope, 872 F. Supp. at 23.  Here, Plaintiffs have alleged that Success – not New York State – has engaged in the misconduct at issue.  Yet they have not given the State (or Success) the opportunity to address and correct the alleged problems, flouting the very reason the exhaustion doctrine exists.

Plaintiffs have argued that exhaustion would have been futile here because Success would not be a party to any SED proceedings.  See Tr. of Dec. 15, 2017, Prelim. Inj. Hearing at 65:24-66:4.  This is simply not true, however.  Success Academy has been and is often a party to SED proceedings.  See, e.g., Appeal of A.A., 54 Ed. Dep't, Decision No. 16782 (NYCOMMED), 2015 WL 8165878, at *1, 7 (June 29, 2015) (SED Commissioner dismissed challenge to co-location of Success Academy charter school with DOE school); Appeal of Letitia James, 54 Ed. Dep't, Decision No. 16646 (NYCOMMED), 2014 WL 42577334, at *5 (Aug. 18, 2014) (same).  Plaintiffs could have simply named Success as a party.  Regardless, Success' counsel has averred on the record before this Court that Success would be bound by any decision of the SED.  See Dec. 15, 2017 Hearing Tr. at 37:25-38:8.  Therefore, Plaintiffs' pursuit of an appeal to the SED would not have been futile, because Success has and will be subject to the SED's jurisdiction and bound by any decision made by the SED.

Furthermore, Plaintiffs are not excused from exhaustion of their administrative remedies because that the administrative process would "not provide a remedy for the things [they] are seeking."  Dec. 15, 2017, Hearing Tr. at 66:21-67:2.  The administrative process in New York provides for the very remedies Plaintiffs seek.  First, as set forth above, the exhaustion requirement applies to claims – brought under any federal law – that seek relief also available under the IDEA.  The IDEA, and New York's administrative process, clearly encompasses the type of due process claims Plaintiffs have brought in this Court:

> Whenever a complaint has been received under subsection (b)(6)[, which encompasses "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a" FAPE,] or (k)[, which encompasses IAES placements], the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency.

20 U.S.C. § 1415(f); see also Hope, 872 F. Supp. at 19 ("There exists no doubt that section 1415(f) applies to claims asserted under Section 1983.").  Indeed, the New York law implementing this IDEA directive confirms this. N.Y. Educ. L. § 4404 (outlining the administrative procedures for review of "any matter relating to the identification, evaluation or educational placement of the student or the provision of a free appropriate public education to the student or a manifestation determination or other matter relating to placement upon discipline of a student with a disability").  Therefore, Plaintiffs' claim that the administrative process does not encompasses the relief they seek here is without merit.

Plaintiffs' argument that the administrative process is too inconvenient[3] does not exempt them from the IDEA's exhaustion requirement.  The Second Circuit flatly rejected such an argument:

> The supposed slowness of the administrative process also does not justify a finding of futility in this case. Under New York State's regulations, a hearing officer must render a decision within 45 days of the receipt by the board of education of a parent's request for a hearing. See 8 N.Y.C.R.R. § 200.5(i)(4). In contrast, Polera's federal case is still pending, more than five years after she filed suit. While the administrative process might not have delivered relief as swiftly as Polera hoped, it certainly could have compensated for the relatively minor delay with additional remedial educational services.

---

[3] Dec. 15, 2017 Hearing Tr. at 64:9-19 ("I could not go to the state education department or anywhere else because there was no transcript.  Your Honor, I would like to say that the process in the state education department is extremely long. We have done research and tried to find out what that process would entail and how long it would take, and it has no deadlines.  So a student could stay out practically indefinitely and, in fact, when one of our colleagues tried that process, they got the results a year after they had filed the appeal to the state education department.").

Polera, 288 F.3d at 490.

Nor does Plaintiffs' claim for monetary damages pursuant to their non-IDEA claims exempt them from the exhaustion requirement.  Plaintiffs may not "evade the IDEA's exhaustion requirement merely by tacking on a request for money damages."  Polera, 288 F.3d at 487 (citing Hope, 872 F.Supp. at 17).  The exhaustion requirement "allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children."  Polera, 288 F.3d at 487 (citations and quotations omitted).  If plaintiffs were "permitted to . . . spurn the administrative process that could provide the educational services they seek, then later sue for damages," plaintiffs would have no incentive to address and remedy their claims with the help of the expertise of the educational administrators, and courts would be flooded with unripe litigation.  Id. at 490.

## 2.   Plaintiffs Have Not Alleged Systemic Violations

"Systemic violations" involve procedural harms that make the administrative process itself inherently futile, such as where the case includes a large number of plaintiffs or is a class action.  Here, the claims are brought only by one parent on behalf one student.  This is not a class action, and Plaintiffs never formally challenge Success' approach to accommodating other students' disabilities or raise specific issues about Success' accommodation of disabled students at Success schools other than Success Academy Prospect Heights.  See O.M. ex rel. D.M. v. Bd. of Educ. of the Wayne Cent. Sch. Dist., No. 6:14-CV-06487 MAT, 2015 WL 3952601, at *6 (W.D.N.Y. June 29, 2015) (holding exhaustion was required even though parent plaintiff alleged systemic discrimination on behalf of herself and her child, because action was brought "on

[parent's] own behalf and on behalf of her child" and not on behalf of "all other similarly situated students").

In <u>Levine v. Greece Cent. Sch. Dist.</u>, the Second Circuit found the plaintiff had not alleged systemic IDEA violations even when the plaintiff's complaint referenced that the school district had recently been a defendant in a class action lawsuit concerning "fail[ure] to provide FAPEs to students requiring special education services." 353 Fed. App'x 461, 465 (2d Cir. 2009) (citations and quotations omitted). Notwithstanding the separate class action, the complaint at issue only formally "challeng[ed] the Defendants' treatment of [the plaintiff] individually," and the district's accommodation of the plaintiff's disability. The Court found that the plaintiff failed to show that it would have been futile to use the administrative process, and required the plaintiff to exhaust his administrative remedies. <u>Id.</u>

Here, much like in <u>Levine</u>, Plaintiffs' passing references at oral argument that due process must be afforded to "all students"[4] do not change that Plaintiffs are formally challenging Success' purported treatment of one particular student. This is not a class action, and Plaintiffs never formally challenge Success' approach to accommodating other students' disabilities or raise specific issues about Success' accommodation of disabled students at Success schools other than Success Academy Prospect Heights.

3.  <u>Plaintiffs Had Notice of Their Administrative Rights Before Filing this Lawsuit</u>

Plaintiffs cannot avoid exhaustion by claiming they had no notice of their procedural rights. Plaintiffs have not alleged they lacked notice of their procedural rights. To the contrary, Plaintiffs' allegations make clear they had notice of their procedural rights and they twice

---

[4] Dec. 15, 2017, Hearing Tr. at 5:20-23.

undertook part of the administrative process.  Cmplt. ¶¶ 86; Dec. 15, 2017 Hearing Tr. at 64:9-19.

## II.  PLAINTIFFS' DUE PROCESS CLAIMS SHOULD BE DISMISSED ON THE PLEADINGS

### A.  Plaintiffs' Have Failed to Plead They Have Been Deprived of a Property Right

Plaintiffs have failed to adequately plead they were deprived of a property right, which is a prerequisite to bring any constitutional due process claim. To assert a violation of procedural due process rights, Plaintiffs must "first identify a property right, second show that [Success] has deprived [them] of that right, and third show that the deprivation was effected without due process." Local 342, Long Island Pub. Serv. Employees, UMD, ILA, AFL–CIO v. Town Bd. of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994).  While New York law creates a property right in a free public education, Kajoshaj v. New York City Dep't of Educ., 543 F. App'x 11, 16 (2d Cir. 2013), the Second Circuit has held students are not deprived of that property right when schools make decisions to place students in particular educational settings.  Id. (holding that a school's decision requiring a student to repeat fifth grade "affords no basis for claiming a violation of [the student's or parents'] procedural or substantive due process rights").

Therefore, Success Academy's decision to place AG in an IAES did not deprive Plaintiffs of a property right.  See, e.g., Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist., 635 F.3d 685, 690 (5th Cir. 2011) ("Student's transfer to an alternative education program does not deny access to public education, and therefore does not violate the Fourteenth Amendment interest."); Turley v. Sauquoit Valley Sch. Dist., 307 F. Supp. 2d 403, 407-08 (N.D.N.Y. 2003) (holding that transferring students to a woefully inadequate alternative high school for students struggling academically and behaviorally did not violate students' Fourteenth Amendment due process rights).

Furthermore, it is undisputed that in connection with both IAES placements, A.G. was provided with two hours of alternative education for each day he was out of school.  Cmplt. at 35 & ¶ 88. The provision of two hours of alternative education per day during the duration of A.G.'s IAES placement is adequate under New York law.  J.E. ex rel. Edwards v. Ctr. Moriches Union Free Sch. Dist., 898 F. Supp. 2d 516, 546 (E.D.N.Y. 2012) (dismissing plaintiffs' procedural due process claim and noting "two hours of alternative instruction fulfill a [school]'s obligation under the Education Law"); Appeal of V.E., Comm'r's Decision No. 14,985, (Nov. 19, 2003) ("[T]wo hours of alternative instruction fulfill[s] a district's obligation under the Education Law."), available at http://www.counsel.nysed.gov/Decisions/volume43/d14985.

Therefore, Plaintiffs due process claims must be dismissed as a matter of law.

**B.  Plaintiffs' Were Provided Adequate Due Process**

Even taking the allegations as true, there is no dispute regarding what process was provided Plaintiffs pursuant to A.G.'s two IAES placements.  Pursuant to both IAES placements, Success sent a letter notifying Plaintiffs of the charges against A.G. and informing Plaintiffs of their ability to challenge those charges.  With regard to the first IAES in February 2017, instead of meeting with Success to address the IAES placement, Plaintiffs decided to appeal the IAES placement to a DOE impartial hearing officer.  Cmplt. ¶ 81. This demonstrates that Plaintiffs did in fact receive due process through an impartial hearing.

Regarding the second IAES placement in September 2017, there is no dispute that Plaintiffs were provided an opportunity for a hearing within 5 days of the suspension and for an appeal, and in fact did participate in a hearing where both parties presented facts and witnesses, and both parties had the ability to cross-examine those witnesses.  Plaintiffs then appealed the hearing officer's decision to the Success Board of Directors.  Cmplt. ¶¶ 105-118, 125-26. Based

on these pleadings alone, this process satisfies the "more formal procedures" required by <u>Goss</u> for suspensions in excess of ten days.  See <u>DeFabio v. E. Hampton Union Free Sch. Dist.</u>, 658 F. Supp. 2d 461, 490-91 (E.D.N.Y. 2009) (holding that plaintiff failed to state a procedural due process claim when a hearing was held on the fifth day of the child's full-year suspension "in compliance with <u>Goss</u> and state law" and plaintiff "was given ample notice of the pending charge against him and a full opportunity to present his case at a formal hearing" and "was also provided with procedures to [appeal] that decision"), <u>aff'd</u>, 623 F.3d 71 (2d Cir. 2010).

### C.  Plaintiffs Had (and Have) an Adequate Post-Deprivation Remedy

Even if the Court were to conclude Plaintiffs have adequately pleaded that Success' IAES procedures did not satisfy due process requirements, Plaintiffs cannot state a due process claim when "there was an adequate state post-deprivation procedure to remedy plaintiffs' alleged deprivation of property." <u>J.E. ex rel. Edwards</u>, 898 F. Supp. 2d at 546.  Here, it is undisputed that Plaintiffs challenged both IAES placements through the DOE's impartial hearing process, and had the ability to appeal to the SED. <u>See, e.g.</u>, Cmplt. ¶¶ 81, 119. Had they appealed to the SED, Plaintiffs also would have had an opportunity to appeal any SED decision through an Article 78 proceeding.  See <u>DeFabio</u>, 658 F. Supp. 2d at 491 ("Plaintiffs then appealed to the New York State Commissioner of Education, who issued a decision on August 7, 2006, in plaintiffs' favor. . . . plaintiffs also could have resorted to an Article 78 proceeding.").  Therefore, Plaintiffs' due process claims must be dismissed.  <u>J.E. ex rel. Edwards</u>, 898 F. Supp. 2d at 546 (dismissing plaintiffs' procedural due process claims where  plaintiffs were able to appeal to the SED regarding the tutoring services provided to suspended students); <u>Horton v. Westling</u>, 284 F. Supp. 3d 213, 220 (N.D.N.Y. 2018) (holding student plaintiff "failed to state a cause of action under Section 1983 for violation of his procedural due process rights because of the availability

of the procedural safeguards of an Article 78 proceeding to challenge any disciplinary

decision.").

III.  **PLAINTIFFS' SEARCH AND SEIZURE CLAIMS SHOULD BE DISMISSED BECAUSE THEY HAVE NOT ADEQUATELY PLEADED THIS CLAIM AGAINST SUCCESS ACADEMY**

Plaintiffs' claim that Success subjected A.G. to unreasonable searches and seizures under

42 U.S.C. § 1983 must be dismissed because the allegations, on their face, contain no allegations

that Success somehow conspired with EMS to have AG removed or that EMS failed to exercise

its independent judgment when evaluating whether to remove AG from school.

First, it is objectively reasonable for EMS to decide to transport a person to the hospital

in the case of medical or mental emergencies.  Glass v. Mayas, 984 F.2d 55, 57 (2d Cir. 1993)

(upholding as objectively reasonable the seizure and hospitalization of person suffering a mental

health crisis).  Here, the one time AG was transported to the hospital by EMS, the hospital

confirmed AG was suffering from childhood separation anxiety and impulse disorder.  Cmplt. ¶

74.  Therefore, on the face of the Complaint, it was reasonable for EMS to transport AG to the

hospital.

More fundamentally, however, Plaintiffs[5] have not stated an unlawful seizure claim

*against Success*.  The Complaint alleges that Success called EMS, and EMS – not Success –

made the ultimate decision whether or not to remove AG to the hospital.  A Fourth Amendment

seizure claim "will not attach to a defendant who merely seeks police assistance or furnishes

information to law enforcement authorities who are then free to exercise their own judgment as

to whether an arrest should be made."  Camac v. Long Beach City Sch. Dist., 2011 WL 3030345,

---

[5] Ms. Patrick does not have standing to assert a Fourth Amendment claim based upon AG's alleged seizure.  "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." Alderman v. United States, 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); Tenenbaum v. Williams, 193 F.3d 581, 601 n.13 (2d Cir. 1999) (dismissing Fourth Amendment claim of parents resulting from alleged seizure of child from school by social worker).

at *8 (E.D.N.Y. July 22, 2011).  In <u>Tenenbaum v. Williams</u>, a student and her parents sued the

Child Welfare Administration ("CWA"),[6] child welfare workers, and the DOE under § 1983 for

wrongfully seizing the student under the Fourth Amendment and transporting the child to the

hospital.  862 F. Supp. 962, 967 (E.D.N.Y. 1994).  In that case, the teacher believed the student

was being abused by a parent, the teacher reported this to an official at the school, the school

official in turn reported this to the CWA, and CWA social workers removed the student from

school to a hospital for examination.  <u>Id.</u>  The court concluded that the DOE and the teacher were

within their rights to call the CWA, the act of calling the CWA did not constitute a seizure, no

conspiracy was alleged, and the teacher had no right to interfere with ACS once they decided to

seize the student.  <u>Id.</u> at 979.  The court held that any assistance the teacher provided in removing

the student from the classroom did not violate plaintiffs' Fourth Amendment rights:

> Plaintiffs argue that the Board of Education should be held liable because its
> employees conspired with [the CWA]. *To establish a conspiracy to violate a*
> *person's civil rights, however, a plaintiff must establish that defendants 'reached*
> *an understanding to violate [plaintiff's] rights.'* In the present case, there is no basis
> for concluding that the employees of the Board of Education reached an
> understanding with [the CWA] to deprive the Tenenbaums of their rights under the
> Constitution. Rather, the Board of Education's employees merely permitted another
> state official, James, to perform what she believed to be her duties.

<u>Id.</u> (emphasis added).

On appeal, the Second Circuit held the plaintiffs had stated a sufficient search and seizure

claim against the CWA, and did not disturb the district court's dismissal of the Fourth

Amendment claims against the DOE or public school officials as the plaintiffs did not pursue this

claim on appeal.  <u>Tenenbaum</u>, 193 F.3d at 607.

Similarly, in <u>Matthews v. City of New York</u>, the court dismissed Fourth Amendment

claims against defendants who allegedly lied on a 911 call by stating that plaintiff "was out of

---

[6] The CWA was subsequently renamed the Administration for Children's Services.

control, hallucinating, and possibly on drugs." 2016 WL 5793414, at *1 (S.D.N.Y. Sept. 30, 2016). The court reasoned that "[e]ven if they did intend to provide false information to the police, this type of accusation is followed by an independent evaluation by the responding authorities and, thus, undermines a false arrest claim[7] against a private citizen." Id. at *4 (citing Lozada v. Weilminster, 92 F. Supp. 3d 76, 91 (E.D.N.Y. 2015) (even assuming plaintiff was calm and defendants falsely claimed that plaintiff "was behaving irrationally, yelling and cursing, the inaccurate information provided . . . cannot be said to have 'instigated' Plaintiff's arrest . . . Trooper Nolan had the opportunity to observe Plaintiff and make his own determination as to whether her behavior warranted arrest").

Here, like in Tenenbaum and Matthews, the Complaint contains no allegation that Success was conspiring somehow with EMS to remove AG from school or that the EMS agents were unable to make their own independent professional determination that AG should or should be transported to an emergency care facility. To the contrary, the Complaint alleges that Success called EMS regarding AG's tantruming on four occasions, and EMS only decided to transport AG to the hospital on one of those occasions. Cmplt. ¶¶ 64, 71-74, 94, 102. When AG was transported to the hospital, the hospital confirmed that AG was experiencing childhood separation anxiety and impulse disorder. Id. ¶ 74. Furthermore, the Complaint reflects that on three occasions EMS exercised its independent judgment and decided not to transport AG to the hospital. Id. ¶ 94 ("The EMS worker said he would not take the student to the hospital and said he did not believe there was any legitimate reason to do so.").

---

[7] Courts in this District have found false arrest cases "instructive" when evaluating Fourth Amendment seizure claims because "a Section 1983 claim for false arrest rests on the Fourth Amendment right of an individual to be free from unreasonable seizures." Camac, 2011 WL 3030345, at *8.

The allegations that Success sought the assistance of EMS on a few occasions when AG was violently tantruming and the EMS arrived and exercised its own judgment as to whether to transport AG to an emergency care facility are simply insufficient on their face to state an unreasonable seizure claim against Success Academy.  Therefore, Plaintiffs' § 1983 unreasonable seizure claim must be dismissed as a matter of law.

IV.  **PLAINTIFFS' CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS MUST BE DISMISSED**

Even if the Court were to sustain Plaintiffs' claims against Success Academy, the claims against the individual Defendants must be dismissed.

Plaintiffs cannot succeed on their federal claims against Defendants Solomon, De Jongh, Cole, and Shainker in their individual capacities.  Individuals cannot be held personally liable for violations of the ADA, § 504, and IDEA. Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) ("Insofar as Garcia is suing the individual defendants in their individual capacities, neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials."); D.A. v. Houston Independent School Dist., 716 F. Supp. 2d 603, 611 (S.D. Tex. 2009) ("Defendants argue that Plaintiffs cannot properly sue Martinez and Colvin in their individual capacities for violations of IDEA, Section 504, the ADA or the Age Discrimination Act. The Court agrees. It is well-established that these statutes are meant to prevent discrimination by public agencies, not officials acting in their individual capacities."); Bradley v. Arkansas Dep't of Educ., 301 F.3d 952, 957, n.5 (8th Cir. 2002) (stating that the IDEA does not provide a basis for individual liability).

Similarly, Plaintiffs also cannot succeed on these claims against Defendants Solomon, De Jongh, Cole, and Shainker in their official capacities. These official capacity claims are duplicative of the claims against Defendant Success Academy and therefore must be dismissed.

21

A.M. ex rel. J.M. v. NYC Dep't of Educ., 840 F. Supp. 2d 660, 678 (E.D.N.Y. 2012) ("To the extent that the plaintiffs bring claims under these statutes against the individually named defendants in their official capacities, these claims are merely duplicative of the claims against the DOE, the 'real party in interest.' . . . *Therefore, the Section 504 and ADA claims are dismissed sua sponte with prejudice as to the individually named defendants in both their individual and official capacities*.") (emphasis added) (citations omitted).

Furthermore, as agents acting on behalf of a public entity, see N.Y. Educ. L. § 2853(1)(c), Defendants Solomon, De Jongh, Cole, and Shainker are all entitled to qualified immunity on plaintiffs' Constitutional claims.  A public official is qualifiedly immune from suit if (1) his conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for the official to believe his conduct did not violate clearly established constitutional rights.  Lennon v. Miller, 66 F.3d 416, 418 (2d Cir. 1995).  Here, the Complaint alleges that (1) Success provided notice to Plaintiffs pursuant to each IAES placement; (2) there is an existing appeal process for disciplinary placements well known to all parties involved; and (3) Defendants altered their IAES process pursuant to the IHO's decision and provided for a robust hearing and appeal process. See supra Background Section I.A.  Therefore, based on the allegations alone it was "objectively reasonable" for the individual defendants to believe that their actions regarding AG's behavior did not violate plaintiffs' constitutional rights.  See Green v. Bauvi, 46 F.3d 189, 196 (2d Cir. 1995) (dismissing complaint against defendants on qualified immunity grounds because it was objectively reasonable to believe that hearing delays did not violate due process rights).

Dated: June 8, 2018                          Respectfully submitted,
New York, New York


By: /s/ *Christopher N. LaVigne*
        Christopher N. LaVigne
        Partner
        Pierce Bainbridge Beck Price & Hecht LLP
        20 West 23rd Street, Fifth Floor
        New York, NY 10010
        Tel: (213) 262-9333
        chris@piercebainbridge.com


By:  /s/ *Aaron M. Safane*
        Aaron M. Safane
        Vanessa M. Biondo
        Success Academy Charter Schools, Inc.
        95 Pine Street, Floor 6
        New York, NY 10005
        Tel: (917) 887-1203
        Fax: (646) 961-4739
        aaron.safane@successacademies.org
        vanessa.biondo@successacademies.org

        *Attorneys for Success Defendants*

**CERTIFICATE OF SERVICE**

I, Christopher N. LaVigne, declare as follows. I am over the age of 18 years. My address is 20 West 23rd Street, Fifth Floor, New York, NY 10010.

On June 8, 2018, I served the foregoing document described as:

**MEMORANDUM OF LAW IN SUPPORT OF SUCCESS DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**[X] FEDEX:** By placing in sealed envelope(s) designated by FedEx with delivery fees paid or provided for, which I deposited in a facility regularly maintained by FedEx or delivered to a FedEx courier, at New York, New York.

**[X] ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated below.

**Sarah E. Dranoff**
**Nancy Bedard**
Brooklyn Legal Services
Corp. B
105 Court Street, 4th Fl
Brooklyn, NY 11201
718-237-5500
Fax: 718-855-0733
Email: sdranoff@sbls.org
Email: nbedard@sbls.org

*Attorneys for Kim Patrick and AG*

I declare under penalty of perjury under the laws of the United States of America that the information in this certificate of service is true and correct.

Executed on June 8, 2018 at Los Angeles, California.

/s/Christopher N. LaVigne
Christopher N. LaVigne